**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X

ELSA GULINO, MAYLING RALPH, PETER WILDS,   :
and NIA GREENE, on behalf of themselves and all others
similarly situated,   :

                Plaintiffs,   :

          against-   :   96 Cv. 8414 (KMW)

THE BOARD OF EDUCATION OF THE CITY SCHOOL :   **Original filed by ECF**
DISTRICT OF THE CITY OF NEW YORK
   :
                Defendant.

-----------------------------------------------------------------------X

**SUPPLEMENTAL REMAND SUBMISSION BY**
***AMICUS CURIAE* NEW YORK STATE EDUCATION DEPARTMENT**
**PURSUANT TO THIS COURT'S AUGUST 12, 2010 ORDER**

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for *Amicus Curiae*
New York State Education Department

Bruce B. McHale
Charles E. Enloe
Assistant Attorneys General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-6363
(212) 416-8910

Dated: October 13, 2010

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

Preliminary Statement....................................................................... 1

Plaintiffs' Record References Do Not Support Their Argument that BOE
Was Unusually Involved in LAST Development ................................................. 2

BOE Did Not At Any Point Have Access To Information Sufficient To Allow
It To Determine That LAST Violated Title VII................................................. 5

Plaintiffs' "Misuse" Argument is Not Supported by the Record........................................ 7

BOE Could Not Have Chosen To Defy State Law Without Incurring Disparate
Treatment Liability, And Therefore Cannot Be Held Liable On A Disparate Impact
Theory For Choosing To Follow State Law ..................................................... 8

BOE Could Not Have Ignored The LAST Without Violating State Law ........................ 11

BOE Lacked The Capacity To Sue SED For A Declaratory Judgment ......................... 12

The *Mills v. Levy* Lawsuit Established That BOE Was Not Free to Disregard
State Licensing Requirements.................................................................. 13

Title VII Did Not Require BOE To Violate A Facially-Neutral State
Licensing Law................................................................................. 14

Plaintiffs' Arguments that BOE Should Have Disregarded State Licensing
Requirements and Allowed Uncertified Plaintiffs to Continue Teaching Are
Undermined by the Recent *Renee v. Duncan* Decision .................................... 17

Conclusion .................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page**

*Bd. of Educ. of City of N.Y. v. Allen*,
    6 N.Y.2d 127 (1959) ................................................................................................. 13

*Bd. of Educ. of City of N.Y. v. Ambach*,
    88 A.D.2d 1075, 452 N.Y.S.2d 731 (N.Y. App Div. 1982) .................................... 13

*Bd. of Educ. of City of N.Y. v. Nyquist*,
    31 N.Y.2d 468 (1973) ............................................................................................ 13

*Bd. of Educ. of City of N.Y. v. Sobel*,
    161 Misc.2d 393, 613 N.Y.S.2d 792 (N.Y. Sup. Ct. 1993) .................................. 13

*Bloomberg-Dubin v. New York City Board of Education*,
    82 A.D.2d 854 (2nd Dep't 1981), *aff'd*, 56 N.Y.2d 555 (1982) ................................. 8

*Briscoe v. City of New Haven*,
    09-cv-1642, 2010 WL 2794212 (D. Conn. Jul. 12, 2010) ...................................... 10

*City of New York v. State of New York*,
    86 N.Y.2d 286, 631 N.Y.S.2d 553 (1995) ............................................................. 12

*Clissuras v. City Univ. of New York*,
    359 F.3d 7 (2d Cir. 2004) ......................................................................................... 4

*Karp v. Board of Examiners*,
    136 A.D.2d 703 (2nd Dep't 1988) ............................................................................ 8

*Kober v. Westinghouse Elec. Corp.*,
    480 F.2d 24048 (3d Cir. 1973) ............................................................................... 16

*Mills v. Levy, et al.*,
    (Sup. Ct., Kings Co., Index No. 26196/00) ...................................................... 13, 14

*Renee v. Duncan*,
    -- F. 3d --, 2010 WL 3733579 (9th Cir. September 27, 2010) ................................ 17

*Ricci v. DeStefano*,
    557 U.S. ---, 129 S. Ct. 2658 (2009) ................................................................... 9, 10

*Vives v. City of New York*,
    524 F.3d 34653 (2d Cir. 2008) ............................................................................... 15

*Washington v. Davis*,
    426 U.S. 229 (1976) ............................................................................................... 12

*Woodard v. Va. Bd. of Bar Exam'rs,*
   598 F.2d 1345 (4th Cir. 1979)................................................................................. 15

**Federal Statutes**

20 U.S.C. § 6301(3) .............................................................................................. 17
20 U.S.C. § 6311(b)(8)(C) ................................................................................... 18
20 U.S.C. § 7801(11) ............................................................................................ 17
20 U.S.C. § 7801(23)(A)(i) .................................................................................. 18
42 U.S.C. § 1983 ................................................................................................... 15
42 U.S.C. § 2000e-m ............................................................................................... 6
42 U.S.C. § 2000e-2(k) ...................................................................................... 5, 6
42 U.S.C. § 2000e-2(k)(1)(A) ............................................................................... 6
42 U.S.C. § 2000e-2(k)(1)(A)(ii) ..................................................................... 6, 15
42 U.S.C. § 2000e-2(k)(1)(C) ............................................................................... 6
42 U.S.C. § 2000e-7 ............................................................................................. 16
Section 708 of Title VII ...................................................................................... 16

**Federal Regulations**

34 CFR § 200.55(c)............................................................................................... 17

**State Statutes**

Ed. Law § 3006 ................................................................................................... 7, 8
Ed. Law § 3009 ...................................................................................................... 8

**State Regulations**

8 NYCRR § 80.18 .................................................................................................. 7
8 NYCRR § 100.2 ................................................................................................ 13

**Other Authorities**

National Research Council Report "*Testing Teacher Candidates: The Role of Licensure Tests in
   Improving Teacher Quality* (Nat'l Research Council, 2001)................................... 5, 7

iii

**SUPPLEMENTAL REMAND SUBMISSION BY**
***AMICUS CURIAE* NEW YORK STATE EDUCATION DEPARTMENT**
**PURSUANT TO THIS COURT'S AUGUST 12, 2010 ORDER**

Pursuant to the Court's August 12, 2010 order, *amicus* the New York State Education Department (SED) submits this supplemental memorandum.

## Preliminary Statement

Defendant New York City Board of Education (BOE) had no involvement in the development and administration of the Liberal Arts and Sciences Test (LAST), the State teacher licensing test that is the subject of this action.  While some New York City area teachers and administrators participated – along with representatives of school districts, colleges, and other organizations from throughout the State – in the inclusive Statewide process used by SED and a private test company to develop LAST, Plaintiffs are incorrect in claiming that BOE itself was significantly involved. Plaintiffs' assertions that BOE had a significant level of involvement in the development of LAST and thus should be liable under Title VII mischaracterizes the record and incorrectly suggests that the process used by SED and test developer National Evaluation Systems (NES) shows that BOE knew or should have predicted that future administrations of LAST would have a disparate impact.  There is no evidence (or even any claim) of racial bias in the LAST development process, or of biased test questions.  The sole claim is that statistical differences in pass-rates for test administrations established a disparate impact. That LAST development between 1990-1993 embraced a wide array of educators throughout the State does not support Plaintiffs' arguments that BOE should be liable based on differences in pass-rates after LAST administrations began in 1993.

Furthermore, while BOE was eventually aware of claims by Plaintiffs and others about alleged statistical disparities in LAST passage rates, it did not at any point have information

sufficient for it to determine whether LAST violated Title VII, or to take a decision to defy State law.  Plaintiffs' attempt to escape this fact by reasserting their claim that BOE "misused" the test is unavailing, as that claim is completely without merit.

Even if BOE had wanted to ignore LAST, moreover, it would have been constrained from doing so in multiple ways, and cannot be held responsible for taking actions it could not legally avoid.  First, BOE would have exposed itself to Title VII disparate treatment liability if it had taken the intentional, race-conscious action of ignoring LAST results and employing Plaintiffs who had not passed the test, and BOE therefore cannot be held liable pursuant to a Title VII disparate impact theory for not ignoring those results.  Second, BOE was prohibited by State law from hiring teachers who had not passed LAST.  Plaintiffs are wrong that in asserting BOE could have sought a declaratory judgment against SED or simply violated State law. Moreover, even if BOE could have taken either of these actions, they were not obligated by Title VII to do so, as compliance with a facially-neutral State licensing law is a business necessity. Finally, if BOE had begun hiring uncertified teachers the result would have conflicted with the federal No Child Left Behind Act.

**Plaintiffs' Record References Do Not Support Their Argument that BOE Was Unusually Involved in LAST Development**

SED has previously described in detail the LAST development/validation process. *See Remand Memorandum By Amicus Curiae New York State Education Department* (*SED Remand Memo*) at 6-32.  This process was performed by SED and NES without BOE involvement. While Plaintiffs now contend that BOE had some extraordinary level of involvement, *see Plaintiffs' Supplemental Submission Pursuant To This Court's August 12, 2010 Order* (*Pltf. Supp. Sub.*) pp. 4-7, the record evidence they cite does not support their contentions.

First, Plaintiffs state that ". . . the evaluation process [for assessing vendor responses to SED's Request for Proposal] included the input of local school boards, including the BOE. For example, Dr. Gary Kipple, from the BOE's Office of Professional Recruiting, Assessment and Licensing, reviewed and rated submissions from potential developers for the liberal arts and sciences test" and refer in particular to Dr. Kipple's "review and assessment," and "ratings from individuals such as Dr. Kipple . . ." *Pltf. Supp. Sub.* pp. 4-5. Plaintiffs' sole record reference in support of the suggestion of some special involvement by Dr. Kipple and BOE is to Plaintiffs' Exhibit 70. That exhibit is a <u>blank</u> "Reviewer's Rating Sheet for RFP," and makes no reference to Dr. Kipple or BOE.

Second, Plaintiffs claim that "the BOE nominated administrators and educators to serve on the various committees NES intended to use in the development of its exam" and that "'the record reflects that multiple administrators and educators from New York City schools served on the Content Advisory Committee and the Bias Review Committee." *Pltf. Supp. Sub.* p. 5. Plaintiffs' sole references for these claims are:

(a)     Plaintiffs' Exhibit 97, a January 28, 1991 <u>form</u> <u>letter</u> from SED distributed throughout New York State to "Chief Executive Officers of Institutions of Higher Learning, District Superintendents, Superintendents of Public Schools, Principals of Public Schools, Teacher Education Contact Persons, Presidents and Chief Executive Officers of New York State Professional Organizations and other Interested Persons" providing notice that SED had contracted with NES ". . . for the development and administration of a new teacher certification examination in the liberal arts and sciences," and noting " . . . it is the Department's intention to fully involve New York State teacher practitioners and teacher educators in

- 3 -

determining the content, style and fairness of these examinations . . .”

(b)     Plaintiffs' Exhibit 98, an <u>undated</u> and <u>uncaptioned</u> "Dear Colleague" <u>form</u> <u>letter</u>

by SED to be provided to persons "nominated to participate in the development

process for the New York State Teacher Certification Examinations.”

(c)     Plaintiffs' Exhibit 100, a list of twenty-two members of an NES Content Advisory

Committee, six from the New York City area (one high school principal, two high

school teachers, one middle school teacher, one Baruch College (CUNY)

professor and one Medgar Evars College (CUNY)Assistant Dean.[1]

(d)     Plaintiffs' Exhibit 101, a list of twenty-two members of an NES Bias Review

Committee, seven from the New York City area (one Empire State College dean,

one elementary school teacher, one middle school teacher, one high school

teacher, one project assistant at Hunter College (CUNY), one public school

principal and one assistant professor at Lehman College (CUNY).

These exhibits provide no support for Plaintiffs' claim that New York City members were

"nominated" by BOE, or for the broader proposition that BOE, or New York City educators in

general, had some greater involvement in LAST development than warranted by the size of its

public school system.

     Third, Plaintiffs assert that "SED previously boasted that 'a substantial number' of Bias

Review Committee members were 'New York City area teachers and educators,'" referencing

Plaintiffs' Exhibit 53.  *Pltf. Supp. Sub.* p  6.  This exhibit, a four page March 8, 2001 letter from

SED to a professor at Long Island University, is a thorough and cogent description of the LAST

rationale, development and validation process, and provides no factual data or support for

---

[1] CUNY and its constituent colleges are State institutions having no connection with BOE.  *See Clissuras v. City Univ. of New York*, 359 F.3d 79, 82 (2d Cir. 2004) (per curiam).

- 4 -

Plaintiffs' claim that BOE had a special role in that process.

Fourth, Plaintiffs state that trial testimony shows that "BOE also allegedly provided materials to NES as part of the development of the LAST," *Pltf. Supp. Sub.* p. 6 (*citing* Tr. 346-47, 397-98). These transcript pages, Day 3, Trial Date 12/13/02, do not appear to contain any mention of BOE.

Fifth, Plaintiffs state that BOE "nominated New York City Educators to be scorers for the essay portion of the exam," *Pltf. Supp. Sub.* p. 6 (*citing* Tr. 2767-68). These transcript pages, Day 20, Trial Date 1/23/03, do not appear to contain any mention of BOE.

None of the evidence cited by Plaintiffs, nor any other evidence in the record, shows that BOE had a significant involvement in the development of LAST.  Moreover, while Plaintiffs assert in conclusory fashion that BOE was involved in *administration* of LAST, *see Pltf. Supp. Sub.* pp. 1, 4, 7, they do not even attempt to support that contention with any evidence.

**<u>BOE Did Not At Any Point Have Access To Information Sufficient To Allow It To Determine That LAST Violated Title VII.</u>**

No matter what involvement New York City area teachers or administrators may have had in the inclusive test development process used by SED and NES to develop LAST, BOE never had information based on that process sufficient to allow it to determine that LAST violated Title VII.  Plaintiffs assert disparate impact Title VII claims based on analyses of LAST administrations showing statistically significant differences in pass rates between white and minority test takers.[2]  Disparate impact claims address facially neutral employment policies or

---

[2] It should be noted that in reviewing teacher certification tests at the request of the United States Department of Education, the National Research Council found that the pass rates for minority teacher candidates were lower than for white candidates on every test reviewed by the NRC. National Research Council Report "*Testing Teacher Candidates: The Role of Licensure Tests in Improving Teacher Quality* (Nat'l Research Council, 2001), SED Exhibit 123, p. 4.  The NRC observed that tests are nevertheless valid so long as they are measuring actual differences in knowledge and skills. SED Ex. 123, p. 110.  The fact that some minority candidates may not have had

practices that have an adverse impact on a group protected by Title VII, 42 U.S.C. §2000e-2(k),

and involve a three-step analysis: (1) the plaintiff must establish that an identified employment

practice results in a disparate impact on a protected group, 42 U.S.C. § 2000e-2(k)(1)(A);  (2) the

employer may show that the employment practice is "job related for the position in question and

consistent with business necessity;" 42 U.S.C. § 2000e-2(k)(1)(A); 42 U.S.C. § 2000e(m);  (3)

the plaintiff may still prevail by establishing that there is an alternative employment practice

available with less discriminatory impact that still satisfies the employer's business needs. U.S.C.

§ 2000e-2(k)(1)(A)(ii); 42 U.S.C. § 2000e-2(k)(1)(C).

Plaintiffs' assertions that BOE knew or should have known during the development

process that LAST would have a disparate impact are unsupported by the record and cannot be

reconciled with their legal theory.  By definition, Plaintiffs' disparate impact claims assert that

LAST is a facially neutral requirement which might give rise to Title VII claims only by virtue

of post-development, post-administration statistical data; indeed, Plaintiffs' evidence of disparate

impact rested solely on such statistical evidence.  It is undisputed that LAST was developed

between 1990-93, was first administered on March 20, 1993, and that statistical analyses of

administration results were not, and could not have been, generated until after that date.  *SED

Remand Memo*, p. 17.  Thus, even if New York City teachers or administrators reviewed the

NES proposal or served on a committee, BOE could not have know during the development

process that LAST would have a statistically-disparate impact.

Moreover, even if BOE was made aware, after LAST began to be administered, that

Plaintiffs and others were claiming statistical disparities, it still could not have determined

whether LAST was job-related.  That complicated inquiry, which still has not been concluded

---

the same educational or background preparation does not render the tests invalid.  SED Ex. 123, pp. 110-112; Tr.
3270-71. Indeed, it reinforces the need to ensure that minority students have well qualified teachers.

even after fourteen years of litigation in this case, could not have been conducted without access to reams of information that BOE simply did not have.  Accordingly, there is no realistic way that BOE could have known whether LAST had an unlawful disparate impact.

**Plaintiffs' "Misuse" Argument is Not Supported by the Record**

Plaintiffs attempt to avoid the conclusion that BOE could not have known whether LAST violated Title VII by arguing that "the trial record is unequivocal that the BOE was aware that it was misusing both the Core Battery and the LAST."  *Pltf. Supp. Sub.* p.  7.  Plaintiffs claim that the tests were "misused" because BOE allegedly "revoked" the temporary, conditional licenses of teachers who were unable to pass the LAST.  As BOE has explained, Plaintiffs' "misuse" argument is a red herring.  *See The City Board's Submission on Remand Pursuant to This Court's December 8, 2009 Order* (*BOE Rem. Sub.*) at 4-17.  The licenses held by Plaintiffs were temporary and, by their own terms, conditional on fulfillment of all specified requirements within specified time periods.   Ed. Law § 3006; formerly 8 NYCRR § 80.18, renumbered 80-5.10;  Tr. 223-24, 238, 243-44, 248-49, 918, 926, 928-29, 1675-78, 1697-98, 1764, 2319-27; SED Exs. 84, 113(a), *BOE Response to SED Request for Admission* No. 69, 114 (a), *Plaintiffs' Response to SED Request for Admission* No. 69, 218, 812.   It is not disputed that, among these requirements was the passage of the Core Battery tests or the LAST.  For policy reasons - primarily shortages in particular areas - the New York State Board of Regents allowed some individuals to teach while working toward certification. Tr. 3111, 3154-56.  The National Research Council Report "*Testing Teacher Candidates: The Role of Licensure Tests in Improving Teacher Quality* (Nat'l Research Council, 2001), SED Exhibit 123, includes a discussion of other professions which allow unlicensed individuals to practice temporarily, and

notes that it is the role of policy makers to consider the public interest in making such determinations.  SED Ex. 123, pp. 35-37; SED Ex. 801, pp. 5-6.

Plaintiffs mischaracterize the natural expiration of their temporary, conditional licenses as a "revocation" of their licenses, triggering "demotions" to positions as substitute teachers. However, the evidence shows that upon <u>expiration</u> of their conditional licenses and their failure to satisfy State certification requirements within enlarged time periods, rather than their employment being terminated, Plaintiffs were offered, and accepted <u>different</u> positions, under a <u>different license</u>, with <u>different salaries and benefits</u>.  Tr. 199-200, 209; 869, 933-34; SED Ex. 113(a), *BOE Response to SED Request for Admission* No. 150.  Thus, not only was there no "misuse," but Plaintiffs actually continued to be employed by BOE when their inability to obtain State licenses would have warranted termination of their employment.

Moreover, Plaintiffs' argument falsely implies that they had a vested and protected right to conditional and temporary City licenses.  But under New York law and the collective bargaining agreements between districts and teachers' unions, only fully licensed teachers have any employment "rights". SED Ex. 234 - 238; Ed. Law §§ 3006, 3009.  It is well-established that there is no proprietary interest in conditional New York City teaching licenses. *Karp v. Board of Examiners*, 136 A.D.2d 703 (2nd Dep't 1988) (Board of Examiners within its authority to require substitute teachers to take Core Battery tests in compliance with state requirement that City's licensing requirements be substantially equivalent to state requirements); *Bloomberg-Dubin v. New York City Board of Education*, 82 A.D.2d 854 (2nd Dep't 1981), *aff'd*, 56 N.Y.2d 555 (1982) (conditional City licenses not vested absent passage of required examinations).

**<u>BOE Could Not Have Chosen To Defy State Law Without Incurring Disparate Treatment Liability, And Therefore Cannot Be Held Liable On A Disparate Impact Theory For Choosing To Follow State Law</u>.**

Even if BOE had been inclined to ignore LAST results, it would not have been able to do so.  BOE did not have a "strong basis in evidence" to believe that its compliance with State laws prohibiting the hiring of unlicensed teachers would expose it to Title VII disparate impact liability.  Thus, pursuant to *Ricci v. DeStefano*, 557 U.S. ---, 129 S. Ct. 2658 (2009), BOE would have been, and still could be, subject to Title VII disparate treatment liability if it had taken the intentional, race-conscious action of ignoring LAST results and employing minority teachers who were unable to pass, and BOE cannot now be held liable on a disparate impact theory for not choosing to take such an action.  *See City Board's Supplemental Submission On Remand Pursuant to The Court's August 12, 2010 Order* (*BOE Supp. Sub.*) at 8-11; *BOE Rem. Sub.* at 20; *SED Remand Memo* at 38-40; *City Board's Sur-Reply Remand Submission Pursuant To This Court's December 8, 2009 Order* (*BOE Sur-Rep. Sub.*) at 3-4; *Sur-Reply Remand Memorandum by* Amicus Curiae *New York State Education Department* (*SED Sur-Rep. Memo*) at 7-8. Plaintiffs' attempts to avoid this conclusion are unavailing.

First, Plaintiffs are incorrect that *Ricci* "has no bearing on Title VII liability for the BOE." *Pltf. Supp. Sub.* p. 21.  Plaintiffs attempt to distinguish *Ricci* from this case by noting an obvious factual difference:  *Ricci* was a disparate treatment case brought against an employer who had ignored test results, while this case involves a disparate impact claim against an employer who did not ignore test results.  *See id.* p. 20; *Plaintiffs' Reply Remand Submission Pursuant To This Court's May 28, 2010 Order* (*Pltf. Rep. Sub.*) pp. 5-6.  This attempted distinction completely misses the point.  If BOE had chosen to ignore the LAST, a step that Plaintiffs now forcefully advocate, *Pltf. Supp. Sub.* pp. 14-18, it would have been and still may be subject to disparate treatment liability for the same reason the *Ricci* defendants were, *see BOE Sur-Rep. Sub.* pp. 3-4; *SED Sur-Rep. Memo*  p. 8.

The fact that BOE could not have defied state law without being subject to disparate treatment liability, moreover, necessarily leads to the conclusion that it cannot now be held liable pursuant to a disparate impact theory for choosing to follow state law. Otherwise, BOE would have been subject to Title VII liability no matter what choice it made, a situation clearly foreclosed by the *Ricci* Court's emphasis that its holding was intended to "resolve any conflict between the disparate-treatment and disparate-impact provisions of Title VII." *Ricci*, 129 S. Ct. at 2676. Indeed, the Court held that because the *Ricci* defendants violated Title VII's disparate treatment provisions by refusing to certify test results, they could not be held liable under a disparate impact theory once they certified those same results. *Id.* at 2681; *see also Briscoe v. City of New Haven*, 09-cv-1642, 2010 WL 2794212, at *8 (D. Conn. Jul. 12, 2010) (dismissing post-*Ricci* disparate impact lawsuit on that basis).

Perhaps recognizing the weakness of their attempted distinction of *Ricci*, Plaintiffs also suggest that BOE did in fact have a strong basis in evidence to "question[] the validity of the LAST." *Pltf. Supp. Sub.* p. 21. Plaintiffs' argument misconstrues the "strong basis in evidence" test. An employer who chooses to ignore the results of a test for race-related reasons may escape disparate treatment liability only if it had a strong basis in evidence to believe that: (1) there was "a significant statistical disparity" in passage rates among racial groups, *Ricci*, 129 S. Ct. at 2678; (2) the test "[was] not job related and consistent with business necessity, or if there existed an equally valid, less-discriminatory alternative that served [BOE's] needs but that [BOE] refused to adopt," *id.*; and (3) it would be held liable for a disparate impact violation if it did not ignore the results, *id.* at 2664. BOE did not have a strong basis in evidence with regard to these requirements.

Plaintiffs incorrectly assert that BOE had a strong basis in evidence to believe that the

LAST was not job related simply because it could choose to observe teachers who had failed the LAST to see if they "caused harm." *See Pltf. Supp. Sub.,* pp. 21-22.  SED has addressed this argument at some length in the past, noting the substantial body of empirical evidence that unlicensed teachers have worse student outcomes than certified teachers, especially as regards minority and underprivileged students. *See SED Remand Memo* at 30; *SED Sur-Rep. Memo* at 6-7.  BOE cannot be required to ignore such evidence, and should not be compelled to hire uncertified teachers for permanent full-time positions and to place them in classrooms in the hope that they would not cause harm.  It also strains credulity to suggest that such casual, subjective observations of individual teachers could meet the "strong basis in evidence" standard when the *Ricci* defendants' much more formal consideration could not.[3]

Furthermore, even if BOE somehow had a strong basis in evidence to believe that the LAST itself was not job related, it still would have no basis to conclude that it could be held liable for complying with State law regarding the test.  Given that a state's licensing activities are generally not subject to Title VII challenge, *see BOE Rem. Sub.* p. 19; *SED Remand Memo* pp. 35-36, and that BOE has a business-necessity defense based on the fact that it was following state law, *see infra*, BOE would not have had a strong basis in evidence to believe that it risked Title VII liability by complying with State law.

Accordingly, Title VII's disparate treatment provisions did not permit BOE to ignore the results of the LAST, and BOE therefore cannot be held liable pursuant to Title VII's disparate impact provisions for choosing not to ignore those results.

**BOE Could Not Have Ignored The LAST Without Violating State Law**

BOE was prohibited from ignoring the LAST not only by Title VII's disparate treatment

---

[3] BOE's employment of individuals who had not passed the LAST as substitute teachers does not mean that BOE must have concluded that the LAST was invalid.  The record reflects that BOE considered that it had no other choice due to a critical teacher shortage.

provisions, but also by State law, which explicitly required that BOE hire only licensed teachers and that teachers could only be licensed if they passed the LAST.  If BOE had begun hiring individuals who had failed the LAST, it would have been in clear violation of the law, and would have faced a lawsuit by SED.  *See BOE Supp. Sub.* at 8.  Plaintiffs contend that BOE should have sought a declaratory judgment against SED, and argue that because SED had sued BOE in the past for not complying with State teacher certification requirements, BOE should have refused to comply in this instance.  *Pltf. Supp. Sub.* pp. 15-18.  These assertions are wrong and, more importantly, irrelevant.  Even if BOE conceivably could have refused to abide by State law or sought a declaratory judgment, it was not obligated by Title VII to do so, as compliance with facially-neutral state licensing requirements is a business necessity.

<u>BOE Lacked The Capacity To Sue SED For A Declaratory Judgment</u>

As BOE has correctly noted, it was precluded from seeking a declaratory judgment against SED in relation to the LAST requirement.  *See BOE Supp. Sub.* p. 8.  Municipal entities such as BOE "are merely subdivisions of the State," and therefore "lack the capacity to bring suit to invalidate State legislation."  *City of New York v. State of New York*, 86 N.Y.2d 286, 290, 631 N.Y.S.2d 553, 555 (1995); *see also id.* at 295, 631 N.Y.S.2d at 558 (noting "the general rule that municipalities lack capacity to sue the State").

Plaintiffs contend that a suit by BOE against SED would have fit within the exception for cases in which "the municipal challengers assert that if they are obliged to comply with the State statute they will by that very compliance be forced to violate a constitutional proscription" and argue that Title VII claims actually assert constitutional violations.  *Pltf. Supp. Sub.* p. 18 (*quoting City of New York*, 86 N.Y.2d at 292, 631 N.Y.S.2d at 556).  But it is well-established that a practice that has a disparate impact on a racial group, even if it violates Title VII, does *not*

violate the Constitution.  *See, e.g.*, *Washington v. Davis*, 426 U.S. 229 (1976).  Thus, there is no way in which BOE's obligation to comply with state law regarding the LAST could have forced it to "violate a constitutional proscription."  Accordingly, BOE could not have sued SED for a declaratory judgment.

<u>The *Mills v. Levy* Lawsuit Established That BOE Was Not Free to Disregard State Licensing Requirements</u>

Plaintiffs refer to the *Mills v. Levy* lawsuit in support of their claim that the BOE should have chosen to violate the State's teacher certification requirements, describing it as an example of an instance where BOE, and other school districts, "allowed themselves to be sued, to protect the best interests of their students and teachers." *Pltf. Supp. Sub.* p. 15.[4]  In fact, this lawsuit demonstrates that SED would take action to ensure that BOE complied with the law, and that BOE was not free to disregard State teacher certification requirements.

*Mills v. Levy* was a lawsuit by State Education Commissioner Richard Mills against New York City's Education Chancellor and others based on the City Board's failure to abide by the State Board of Regents' prohibition of the City Board's assignment of uncertified teachers to "SURR schools." Schools Under Registration Review ("SURR schools") were schools which the Commissioner had identified as being farthest below state standards for student academic performance.  These schools were closely scrutinized by SED and school districts were required to submit a corrective action plan for each such school to SED, and promptly address

---

[4] Plaintiffs also argue that BOE should have defied the law because BOE has sometimes sued SED or the Commissioner of Education.  *Plaintiff's Supplemental Submission* at 15 n.52.  These pre-*City of New York v. State of New York* cases are irrelevant, however, as none involved BOE willingly ignoring its legal obligations.  *See, e.g.*, *Bd. of Educ. of City of N.Y. v. Allen*, 6 N.Y.2d 127 (1959) (affirming Commissioner's decision overturning BOE's suspension and firing of employees for refusal to identify Communist colleagues); *Bd. of Educ. of City of N.Y. v. Nyquist*, 31 N.Y.2d 468 (1973) (challenge to Commissioner's decision ordering BOE to give permanent title to long-time acting principal); *Bd. of Educ. of City of N.Y. v. Sobel*, 161 Misc.2d 393, 613 N.Y.S.2d 792 (N.Y. Sup. Ct. 1993) (affirming Commissioner's invalidation of BOE resolution regarding abstinence-based AIDS education); *Bd. of Educ. of City of N.Y. v. Ambach*, 88 A.D.2d 1075, 452 N.Y.S.2d 731 (N.Y. App Div. 1982) (affirming order requiring BOE to reimburse parent of disabled student).

deficiencies or risk having their registration revoked. 8 NYCRR § 100.2;  Tr. 2426-27, 3346-47.
As of the year 2000, 58 of the 81 schools on the Statewide SURR list were located  in New York
City.   All of the New York City SURR schools were high-minority schools and all had high
percentages of uncertified teachers. Tr. 1598, 2426-27, 3347-49; SED Ex. 322, p. 13722.   In
contrast, Statewide, the schools with the highest student achievement scores also had high
percentages of certified teachers. Tr. 3349-50.

In 1999, the Regents adopted a regulation requiring that SURR schools be staffed only by
certified teachers.  Tr. 1602-03; SED Exhibit 100. When the New York City Board of Education
failed to comply with an administrative order requiring the City to staff SURR schools only with
certified teachers, Commissioner Mills sued New York City Board of Education Chancellor
Harold Levy, William Thompson, President of the New York City Board of Education, and the
City Board of Education, to enjoin the employment of uncertified teachers in New York City
SURR schools. *Mills v. Levy, et al.*, (Sup. Ct., Kings Co., Index No. 26196/00). Tr. 3325-26,
3351, 2330-32.  As a result of the State's lawsuit, the City Board agreed to a court-ordered
settlement which changed its recruitment and hiring practices, and mandated its compliance with
the requirement that SURR schools be staffed by certified teachers. Tr. 3354-55. A copy of the
Consent Order effecting this settlement is attached as Exhibit 1 to the *Declaration of Eamonn
Foley*, submitted with the City Board's supplemental remand submission. SED monitoring of
student performance in the City SURR schools subsequent to the settlement showed that student
academic performance improved as the numbers of certified teachers increased. Tr. 3356.

*Mills v. Levy* does not stand for the proposition that BOE has the authority to ignore
State law, in particular as regards teacher certification matters.

Title VII Did Not Require BOE To Violate A Facially-Neutral State Licensing Law

Whether BOE could have defied state law or sought a declaratory judgment, it was not required by Title VII to do so. An employer cannot be held liable for a disparate impact violation if the challenged practice is warranted by business necessity, 42 U.S.C. § 2000e-2(k)(1)(A)(ii), and BOE's compliance with a mandatory and facially-neutral state licensing requirement was just such a business necessity. *See BOE Rem. Sub.* at 19-20; *SED Remand Memo* at 36; *see also Vives v. City of New York*, 524 F.3d 346, 353 (2d Cir. 2008) (holding that a city cannot be liable pursuant to 42 U.S.C. § 1983 for enforcing state laws it is required to enforce).

Plaintiffs' insistence that BOE was legally required to violate State law is incorrect and would set a dangerous precedent. Plaintiffs' logic, for example, would lead to the conclusion that a private law firm could be held liable under Title VII for hiring only attorneys who had passed the bar examination or otherwise obtained licensure, if it was later shown that the bar examination had an unlawful disparate impact on a protected group. This absurd conclusion is objectionable for three reasons. First, such an outcome would be unfair to the law firm, which bears no responsibility for the examination, did not know that the examination violated Title VII, and would have been subject to severe penalties and lawsuits had it hired unlicensed attorneys. Second, this outcome would incentivize reckless behavior – clients and the judicial system would be hurt if law firms began to hire unlicensed attorneys in derogation of applicable law based on their independent judgments of the bar examination. Third, imposition of liability in this situation would amount to a back-door attack on an examination that could not be directly challenged by way of a suit against the state bar examiners. *See, e.g.*, *Woodard v. Va. Bd. of Bar Exam'rs*, 598 F.2d 1345, 1346 (4th Cir. 1979).

These objections apply with equal force to Plaintiffs' contention that BOE could be held

- 15 -

liable for following state law with regard to the LAST.  First, BOE bears no responsibility for the LAST, did not have the information necessary to determine whether the LAST violated Title VII, and would have been subject to suit had it chosen to defy state law by ignoring the LAST. Second, students and the educational system would be hurt if school districts began to ignore the State's licensing requirements based on their own independent judgments of the LAST.  Third, the Second Circuit has held in this case that Plaintiffs cannot directly attack the LAST through a suit against SED, and imposing liability on BOE for complying with SED requirements would allow Plaintiffs to circumvent that holding.

The conclusion that BOE was not obligated by Title VII to defy state law is completely consistent with Section 708 of Title VII, which provides in relevant part that:

> [n]othing in [Title VII] shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under [Title VII].

42 U.S.C. § 2000e-7.  While Section 708 may provide a defense to a claim brought pursuant to a state law that conflicts with Title VII, it does not impose an affirmative duty on employers to independently investigate whether every facially-neutral state law may in fact have an unlawful disparate impact.  Indeed, even when an employer acts in compliance with a state law that explicitly mandates intentional discrimination, courts have been reluctant to impose Title VII backpay liability.  *See, e.g.*, *Kober v. Westinghouse Elec. Corp.*, 480 F.2d 240, 248-50 (3d Cir. 1973) (affirming denial of backpay when employer complied with state "female protective statute" that had not been judicially or quasi-judicially invalidated).  Liability is even less appropriate to this case, because even if the LAST did violate Title VII, it would have been impossible for BOE to make that determination.

- 16 -

In summary, BOE was bound to follow state law, and therefore could not have ignored the LAST by hiring unlicensed teachers.  More importantly, even if it could have refused to comply with State law, Title VII did not obligate it to do so.

**Plaintiffs' Arguments that BOE Should Have Disregarded State Licensing Requirements and Allowed Uncertified Plaintiffs to Continue Teaching Are Undermined by the Recent *Renee v. Duncan* Decision**

The September 27, 2010 decision by the Ninth Circuit in *Renee v. Duncan*, -- F. 3d --, 2010 WL 3733579 (9th Cir. September 27, 2010) bears on the claims made by Plaintiffs that BOE was free to, and should have, disregarded State teacher certification requirements and permitted uncertified Plaintiffs to continue teaching beyond the date established for obtaining State certification.  In that case plaintiffs, parents of California public school students, challenged federal and state regulations permitting teachers who were participating in alternative teacher training programs, but who had not obtained full State certification, to be characterized as "highly qualified teachers" under the federal No Child Left Behind Act (NCLB) and to thus teach in the public schools.

The Court discussed the NCLB rationale for requiring state certification of public school teachers: "NCLB seeks to close the "achievement gap between high and low-performing children, especially the achievement gaps between minority and non-minority students, and between disadvantaged children and their more advantaged peers.'" (2010 WL 3733579 at *2, citing 20 U.S.C. § 6301(3)).  The Court noted that "[a] premise of NCLB is that good-teachers, defined by Congress as 'highly qualified' teachers-are crucial to educational success . . ." and that "only highly qualified teachers should instruct core academic classes . . ." *Id.*[5]  The Court

---

[5] "Core academic subjects" are "English, reading or language arts, mathematics, science, foreign languages, civics and government, economics, arts, history and geography'" *Id.*, citing 20 U.S.C. 7801(11) and 34 CFR § 200.55(c). These generally correspond to broad agreement among higher education professionals about the liberal arts and sciences, which include the ability to read, write and think across-the-board about such subjects  as English,

further observed that "To receive funds under Title I of the Statute, NCLB requires states to identify steps they will take to ensure that 'poor and minority children are not taught at higher rates than other children by inexperienced, unqualified or out-of-field teachers." *Id*., citing 20 U.S.C. 6311(b)(8)(C).[6]   The Court noted that the NCLB definition of a "highly qualified teacher" includes a requirement that "the teacher has obtained full State certification as a teacher." *Id.* at *3, citing 20 U.S.C. § 7801 (23)(A)(i).

The Ninth Circuit held that the California and federal regulations effectively granted waivers or permits to teachers who had not satisfied state certification requirements, contravened the NCLB requirement that to be "highly qualified" teachers must be state-certified, and that any waivers, temporary permits, emergency permits or other authorization permitting uncertified teachers to teach in the public schools violate federal law. *Id.* at 4-7.   Plaintiffs' arguments herein that BOE not only should have, but was obligated to, employ uncertified teachers are not only contrary to New York State law, but also conflict with applicable federal law.   Plaintiffs cannot prevail on a theory that would obtain a result which violates federal law.

## Conclusion

The Court should find that LAST was valid and job related.   The Court should also hold that Plaintiffs cannot challenge this State licensing test under Title VII, and that the relief sought by Plaintiffs is not otherwise available under Title VII.   Plaintiffs' claims should be dismissed.

---

mathematics, the sciences, the social sciences and the humanities. Tr. 2002-07, 2009-14, 2018-19, 2982-84, 3395-3400, 3403-3404, 3412, 3422-25.
[6] The Board of Regents made an identical determination in establishing teacher licensing requirements. Data showing that minority children were stuck in a cycle of being poorly educated by under-qualified teachers was a significant factor in the decision by the Regents to impose uniform minimum teacher licensing standards. Tr.1582, 1594, 1597, 2427-28, SED Exs. 299-322. The Regents were concerned that the State's neediest children would have little hope of meeting increasingly rigorous learning standards if they were taught by unqualified teachers. Tr. 1586.

Dated:      New York, New York
            October 13, 2010

                               Respectfully submitted,

                               ANDREW M. CUOMO
                               Attorney General of the State of New York
                               <u>Attorney for New York State Education Department</u>
                               By:

                               /s/ *Bruce B. McHale*
                               Bruce B. McHale
                               Assistant Attorney General
                               120 Broadway, 24th Floor
                               New York, New York 10271
                               (212) 416-6363

                               /s/ *Charles E. Enloe*
                               Charles E. Enloe
                               Assistant Attorney General
                               120 Broadway, 24th Floor
                               New York, New York 10271
                               (212) 416-8910

To:
Joshua S. Sohn
DLA Piper US LLP
1251 Avenue of the Americas
New York, N.Y. 10020-1104
Attorney for Plaintiffs

Eamonn F. Foley
Office of the Corporation Counsel
of the City of New York
100 Church Street, Room 2-197
New York, NY 10007
Attorney for Defendant
New York City Board of Education

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 13, 2010, I caused a true and correct copy of the

*Supplemental Remand Submission By Amicus Curiae New York State Education Department*

*Pursuant To This Court's August 12, 2010 Order* to be filed through the Court's ECF system and

to be served on counsel for plaintiffs and defendant the New York City Board of Education

enclosed in pre-paid envelopes, deposited in a United States Postal Service box regularly

maintained at 120 Broadway, New York, New York 10271, directed to the addresses listed

below:

Joshua S. Sohn
DLA Piper US LLP
1251 Avenue of the Americas
New York, N.Y. 10020-1104
Attorney for Plaintiffs

Eamonn F. Foley
Office of the Corporation Counsel
of the City of New York
100 Church Street, Room 2-197
New York, NY 10007
Attorney for Defendant
New York City Board of Education

        ANDREW M. CUOMO
        Attorney General of the State of New York
        <u>Attorney for New York State Education Department</u>

        By:

        /s/ *Bruce B. McHale*
        Bruce B. McHale
        Assistant Attorney General
        120 Broadway, 24th Floor
        New York, New York 10271
        (212)416-6363

- 20 -