

MICHAEL A. CARDOZO
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

EAMONN F. FOLEY
Labor & Employment Law Division
Phone: 212-788-0781
Fax: 212-788-8877
efoley@law.nyc.gov

October 28, 2011

**BY FAX**
Honorable Kimba M. Wood
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re:      Gulino, et al. v. Board of Education,
                  Docket No. 96 Cv. 8414 (KMW)

Dear Judge Wood:

        I am the Assistant Corporation Counsel representing defendant City School Board of the City of New York ("City Board") in the referenced action.

        By Order dated October 3, 2011, the Court directed Plaintiffs to: (1) specify exactly what injunctive relief they are seeking; (2) specify exactly what monetary damages they are seeking; (3) specify the procedures they believe should be followed to effectuate their suggestion that injunctive/declaratory relief can be separated out from any monetary relief pursuant to Federal Rule of Civil Procedure ("Rule") 23(c)(4); and (4) state whether all relief will be accorded on a class-wide basis or will back pay or any other form of individualized monetary relief be adjudicated on an individual basis.

        On October 14, 2011, Plaintiffs submitted a letter pursuant to the October 3, 2011, Order. The City Board submits this letter, pursuant to the Court's October 3, 2011, Order, in reply to Plaintiffs' October 14, 2011, letter to the Court.

        As discussed more fully below, the answers provided by Plaintiffs to the Court's October 3, 2011, inquiries (a) clarify that the LAST is not properly subject to Plaintiff's Title VII challenge, (b) establish that this case is inappropriate for adjudication against the City Board, even for injunctive relief, (c) demonstrate that the City Board should have been permitted on remand to introduce evidence of the 2000 - 2004 revalidation process for the LAST, (d) further

support the City Board's business-necessity defense, and (e) confirm that *Wal-Mart v. Dukes*, 564 U.S. ___, 131 S. Ct. 2541 (June 20, 2011) requires decertification of the class.[1]

Plaintiffs' Requested Injunctive Relief

Plaintiffs argue that they are entitled to three forms of injunctive relief: (1) an order directing the City Board to "provide a regular certificate" to plaintiffs who want to be considered for employment as a teacher by the City of New York; (2) appointment of an independent expert, paid by the City, to act as a monitor "to confirm that Defendant's current testing procedure does not violate Title VII and is not being misused"; and (3) an order directing the City Board to adjust the seniority rights and other non-monetary benefits of plaintiffs who are still teachers to place them in the position they would have been in if they had passed the teacher certification examination the first time they took the exam.

Plaintiffs' first request is for an order that the City Board be directed to "provide a regular certificate" to plaintiffs who want to be considered for employment as a teacher by the City of New York.[2] Of course, as Plaintiffs know, any such certificate would be anything but "regular." The City Board does not issue public school teacher certificates and is not authorized to do so under New York State law. Only New York State, the legally mandated teacher licensing authority, can issue teaching certificates and the State is no longer a party to this proceeding. Although not specifically articulated by Plaintiffs, such a "regular" certificate presumably would permit the holder to be considered for employment in any public school in New York State or in any other state with reciprocity with New York State.

Plaintiffs' request for the issuance of certificates makes clear, as the City Board and SED have previously argued, that allowing Title VII claims directed at a State licensing function has no less of an impact on the State than a direct challenge to its licensing authority in teaching or in any other occupation or profession, which are not permitted under Title VII. In addition, an employer's compliance with a mandatory and facially neutral state licensing requirement is a business necessity to which there is no reasonable alternative. As the City Board has previously argued, a Title VII action against an employer that challenges a State licensing law cannot be reconciled with an employer's statutory business-necessity defense under 42 U.S.C. 2000e-2(k)(1)(A)(ii). S*ee Remand Memorandum by Amicus Curiae New York*

---

[1] As the City Board has previously argued, the Supreme Court's decision in *Wal-Mart* (a) requires decertification the class in this action and (b) does not permit use of Rule 23(c)(4) as a mechanism to salvage the current class for purposes of determining liability and injunctive relief. *See City Board's Memorandum Pursuant to the Court's July 18, 2011, Order Concerning the Effect of Wal-Mart v. Dukes and in Support of Its Motion to Decertify the Class*, and *City Board's Reply Memorandum Pursuant to the Court's July 18, 2011, Order Concerning the Effect of Wal-Mart v. Dukes and in Support of Its Motion to Decertify the Class*.

[2] Plaintiffs do not seek front pay or instatement of these plaintiffs as teachers in the New York City public school system.

2

*State Education Department*, at 35-36, and *City Board's Post Remand Submission Pursuant to This Court's December 8, 2009, Order*, at 2 n.1. Plaintiffs' first request for injunctive relief, therefore, is not properly addressed to the City Board.

Plaintiffs' second request is for the appointment of an independent expert to act as a monitor "to confirm that Defendant's current testing procedure does not violate Title VII and is not being misused." This request ignores the fact that the City Board does not have its own testing procedures for teacher certification. Rather, the LAST, which is one component of the State's public school teacher licensing program, is jointly developed by SED and National Evaluation Systems, Inc. ("NES") pursuant to an agreement between SED and NES. The City Board, which is not a party to the agreement between SED and NES, has no role whatsoever in the development or oversight of the LAST. Moreover, the agreement between SED and NES contains a confidentiality provision. Consequently, appointment of a monitor would be meaningless as the City Board has no role in the creation of the LAST, is not privy to all information concerning its development, and lacks the ability to change the test.

In addition, a monitor would be inappropriate here as there is nothing in the record to support a conclusion that the version of the LAST that is currently in use by the State of New York has an unlawful disparate impact on minority test takers. Indeed, in the Court's December 8, 2008, Order rejecting the City Board's request to reopen the record on remand to introduce evidence relating to the redevelopment of the LAST between 2000 and 2004, the Court noted that the description of the redevelopment and revalidation process contained in the Declaration of Jeanne W. Clayton, a director of NES, "indicates that the New LAST is different from the Old LAST." December 8, 2009, Order, at 4. The Court concluded that "evidence related to the revalidation process for the New LAST is not relevant to whether the Old LAST was properly validated, which is the issue before the Court." *Id.* The corollary to the Court's conclusion that the Old LAST and the New LAST are so different that the validity of the New LAST is not probative as to the validity of the Old LAST, is that the deficiencies in the Old LAST are not probative of any deficiency in the New LAST.

Moreover, despite the fact that the City Board argued that the validity of the New LAST would be relevant to the scope of any injunction, plaintiffs opposed reopening the record to permit the Court to receive additional evidence about the 2000-2004 revalidation process. *See Parties' Joint Letter to the Court, dated November 9, 2009*, at 12-13. The Court should not now grant plaintiffs' request to appoint an expert to "monitor" the validity of the New LAST when plaintiffs previously opposed City Board's efforts to demonstrate its validity to the Court.

In sum, because the City Board has no role in the creation or implementation of the New LAST and because there is nothing in the record to show that the New LAST has an unlawful disparate impact on minority test-takers, appointment of a monitor would be inappropriate.

Plaintiffs' third request is for an order directing the City Board to adjust the seniority rights and other non-monetary benefits of plaintiffs who are still teachers to place them in the position they would have been in if they had passed the teacher certification examination the first time they took the exam. This relief would adversely affect the rights of non-parties, specifically, currently employed teachers (both minority and non-minority) who would lose relative seniority. Title VII in such circumstances requires that those non-parties be given actual

notice of the proposed judgment, prior to entry, and a reasonable opportunity to present objections to such a judgment. *See* 42 U.S.C. § 2000e-2(n); *Briscoe v. City of New Haven*, 2011 U.S. App. LEXIS 16834 (2d Cir. Aug. 15, 2011). If the Court is inclined to grant relief impacting the relative seniority of currently employed teachers, the City Board would request leave to move for an order directing that affected non-parties be afforded notice and an opportunity to be heard prior to entry of an order granting adjusted seniority rights or to join all interested parties, including the teachers union, under Rule 19.

Therefore, the injunctive relief sought by Plaintiffs (a) demonstrates that the LAST is not properly subject to Plaintiff's Title VII challenge, (b) demonstrates that this case is inappropriate for class adjudication, (c) highlights that City Board should have been permitted on remand to introduce evidence of the 2000 - 2004 revalidation process for the LAST; and (d) further supports the City Board's business-necessity defense.

Plaintiffs' Requested Monetary Relief

Plaintiffs seek monetary relief in the form of back pay and, acknowledging some of the impact of *Wal-Mart v. Dukes*, advise the Court that they will seek certification of a money damages class under Rule 23(b)(3) during the remedial phase of the litigation. As previously argued by City Board, however, *Wal-Mart* does not permit use of Rule 23(c)(4) as a mechanism to salvage the current class for purposes of determining liability and injunctive relief.

Plaintiffs further argue that the calculation of back pay should have two components: (1) money for the period in which any plaintiff was a employed by the City Board other than as a permanent public school teacher, which they argue can be determined on an individual basis; and (2) money for the time period that each plaintiff worked outside the New York City public school system, which they argue should be calculated on a class-wide basis.

First, the end date for any back pay award should be February 14, 2004. As argued above, there is no evidence that the New LAST has an unlawful disparate impact. Nor is there any limit on the number of times a person can take the LAST. The operational administration of the New LAST was conducted on February 14, 2004. Consequently, because all plaintiffs had an opportunity to take a bias-free examination on that date, any award of back pay should be calculated only until February 14, 2004. This limitation applies across the board, without regard to whether the plaintiff remained employed by City Board or not. Moreover, if a class member took and failed the New LAST, that plaintiff would not be entitled to any award of back pay. A test taker who failed a bias-free version of the LAST would have failed any version of the LAST, including the Old LAST. That test taker, therefore, would not be able to show that he or she suffered any damages as a result of anything improper in the Old LAST and, consequently would not be entitled to any award of back pay.

Plaintiffs' proposed back pay calculation plan is a prohibited "Trial by Formula" that violates *Wal-Mart* and is defective in myriad ways. "When the plaintiff seeks individual relief such as . . . back pay after establishing a pattern or practice of discrimination, 'a district court must usually conduct additional proceedings . . . to determine the scope of individual relief.'" *Wal-Mart*, 131 S. Ct. at 2561, citing *Teamsters v. United States*, 431 U.S. 324, 361

4

(1977). The *Wal-Mart* plaintiffs' attempt to replace such individualized proceedings and awards with a back pay award determined by formula based upon a sample was squarely rejected by the Supreme Court:

> The Court of Appeals believed that it was possible to replace such proceedings with Trial by Formula. A sample set of the class members would be selected, as to whom liability for sex discrimination and the backpay owing as a result would be determined in depositions supervised by a master. The percentage of claims determined to be valid would then be applied to the entire remaining class, and the number of (presumptively) valid claims thus derived would be multiplied by the average backpay award in the sample set to arrive at the entire class recovery – without further individualized proceedings. 603 F.3d at 625-627. We disapprove that novel project. Because the Rules Enabling Act forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b); see *Ortiz*, 527 U.S., at 845, 119 S. Ct. 2295, a class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims. And because the necessity of that litigation will prevent backpay from being "incidental" to the classwide injunction, respondents' class could not be certified even assuming, *arguendo*, that "incidental" monetary relief can be awarded to a 23(b)(2) class.

*Wal-Mart*, 131 S.Ct. at 2561.

As discussed further below, the plaintiffs' proposed back pay calculation plan violates *Wal-Mart* in that it deprives that City Board of it right to fully and fairly litigate the scope of individual relief available to the plaintiffs.

<u>The First Component of Plaintiffs' Back Pay Calculation Plan</u>

The first component of plaintiffs' back pay calculation plan relates to the period in which any plaintiff was employed by the City Board other than as a permanent public school teacher. With regard to this component of plaintiffs' back pay calculation, plaintiffs incorrectly assert that the process of making the calculation "will be a mechanical, mathematical process of interpreting the collective bargaining agreements."

The first component of plaintiffs' plan improperly denies the City Board of the ability to litigate the availability and scope of monetary relief available to each plaintiff and violates *Wal-Mart*. First, plaintiffs' model assumes that remaining employed by DOE in whatever position a particular plaintiff chose to work at a lower salary was an appropriate form of mitigation by that plaintiff. The City Board, however, is entitled to individualized discovery concerning what steps, if any, each plaintiff took following his or her failures of the LAST to obtain comparable employment, perhaps in private schools or other public school systems. Second, while seniority is the primary determinant of a teacher's pay under the collective bargaining agreements, teachers receive additional pay when they complete additional

educational levels beyond the Masters degree, requiring individualized assessments of each plaintiff's education. Third, back pay would not be available during any period in which there were lapses in a plaintiff's employment at the DOE or disruptions in his or her pay, for example during periods of leave or discipline. Fourth, to the extent a plaintiff had additional employment that he or she would not have had if he or she been a permanent teacher, back pay should be reduced by that amount. Fifth, to the extent any plaintiff has released any claims against the City Board in some other matter, back pay would not be available. Consequently, individualized discovery and numerous plaintiff specific determinations would be required in order to make plaintiffs' first component calculation. Without individualized discovery and determinations, to which City Board is entitled, there would surely be inaccurate payments to plaintiffs and undue financial harm to the City Board.

## The Second Component of Plaintiffs' Back Pay Calculation Plan

The second component of plaintiffs' proposed back pay calculation plan, covering the time period that each plaintiff worked outside the New York City public school system, has two parts, both of which would deprive the City Board its right to fully and fairly litigate the scope of individual relief available to the plaintiffs and violate *Wal-Mart*.

The first step in the second component of plaintiffs' proposed back pay calculation plan involves a determination of the value of the salary and benefits each plaintiff would have earned if they had remained a New York City public school teacher from the time the plaintiff left employment by the City Board to the present. Plaintiff incorrectly states that this calculation can be made solely based upon City Board's personnel records and salary and benefit schedules.

Plaintiffs incorrectly assume that each plaintiff would have stayed employed by the City Board as a teacher during this entire period. While some plaintiffs may have remained in the workforce and employed by City Board, others may have pursued other fields of work, died, moved from the New York City, retired, or become unable to work for other reasons, including disability. The City Board, therefore, is entitled to discovery and individualized determinations concerning the actual behavior of each plaintiff, including whether they have engaged in different careers, retired, become disabled and unable to work, died, or remain in the work force. Clearly, the City Board does not have this information in its records; only the individual plaintiffs possess this information and have access to relevant documentation.

For example, the City Board would be entitled to full discovery regarding each plaintiff's employment history, both before and after the plaintiff's employment at the City Board, in order to determine how likely that plaintiff would have been to remain employed at the City Board. Similarly, City Board would be entitled to full discovery and individualized determinations concerning any period in which each plaintiff was not in the workforce for whatever reason, including death, incarceration, disability, retirement, and family or medical leave. City Board would also be entitled to discovery and individualized determinations with regard to each plaintiff's criminal conviction history so as to determine if the plaintiff remains an appropriate candidate for employment as a teacher in the New York City school system consistent with Article 23-A of the New York State Correction Law and, if not, when he or she ceased to be permitted to work in the New York City school system, as this would cut off back pay. As noted above, City Board would also be entitled to discovery concerning whether the

6

plaintiff took the New LAST and the results and individualized determinations about whether they are eligible for back pay. Plaintiffs' proposed back pay calculation plan violates Wal-Mart because the first step in its plan would deny the City Board its right to fully and fairly litigate the eligibility and amount of back pay for each plaintiff on an individual basis.

The second step in the second component of plaintiffs' proposed back pay calculation, concerning the income and benefits actually earned by plaintiffs after they left employment with the City Board, also runs afoul of *Wal-Mart v. Dukes* in that it denies the City Board the opportunity to litigate its defenses to each individual plaintiff's claim. Plaintiffs suggest that due to plaintiffs' places of residence, work schedules, record keeping, and a "variety of other potential issues," it is necessary to make this determination using a class-wide approach. Plaintiffs, however, provide no specific information about where the plaintiffs live and work or the state of their record keeping.

Specifically, plaintiffs suggest that (a) an unspecified "statistically appropriate random sample of class members be selected as the 'model' for income and benefits earned outside the New York City public school system," (b) the Court or a special master take evidence of income and benefits earned by the sampled plaintiffs and calculate an average, and (c) this average be used to calculate the second component back pay to be paid to the plaintiffs. This methodology would entirely strip the City Board of its right to litigate how much the actual plaintiffs made after leaving employment with the City Board. By virtue of the very structure of plaintiffs' plan, City Board would be required to overcompensate any plaintiffs who in reality earned more after they left City Board employment than the average of the sampled group.

Even with regard to the sampled class members, plaintiff's plan allows the City Board no role in analyzing, probing, and disputing the quality of the proof to be obtained from the sampled class members. For example, plaintiffs' proposal would appear to deny the City Board an opportunity to serve document requests and interrogatories or to depose the sampled plaintiffs. Rather, even the plaintiffs' sampling proposal cuts out the City Board, requesting instead that special master on his or her own make this calculation, without the benefit of defendant's input.

As with its first step, the second step of the second component of plaintiffs' back pay calculation plan deprives the City Board of the right to litigate the amount of back pay to each plaintiff and to individualized determinations in violation of *Wal-Mart*. The City Board is entitled to full discovery and individualized determinations concerning the actual salary and benefits earned by the actual plaintiffs after they left the employment of the City Board. Anything short of that violates *Wal-Mart*.

Plaintiffs' Proposal for City Board to Object

Plaintiffs argue that their plan does not violate *Wal-Mart* because their proposal permits the City Board "the opportunity to interpose valid objections to individual claims." Plaintiffs' proposal is two-fold: (1) there can be "administrative adjustments" to account for retirement or death that "can be agreed-on by parties and so-ordered by the Court," and (2) City Board can object to an individual plaintiff receiving any award by establishing by a preponderance of the evidence that an individual plaintiff would have been denied a regular license for a non-discriminatory reason, provided City Board can make a prima facie showing that the "objection is well-founded" before a hearing where the plaintiff is present.

Plaintiffs' proposal fails for the following reasons. First, it would provide City Board with no ability to challenge the amount of back pay to an individual plaintiff unless that plaintiff has died or retired. It would strip City Board of the right to litigate any of the other factors that would require a reduction of a back pay award, which are discussed above. Second, even to the extent plaintiffs' proposal would permit City Board to object, plaintiffs' plan has no provisions to provide City Board with sufficient discovery in order to make such objections. In particular, because City Board would be entitled to virtually no discovery from individual plaintiffs, it is difficult to imagine how the City Board would be able to gather sufficient information to demonstrate at a hearing that the plaintiff would have been denied employment at the City Board for some other reason. Plaintiffs' proposal, which is cramped in scope and provides no meaningful way for City Board to challenge an individual award, does not save this class from decertification following *Wal-Mart*.

Conclusion

For the foregoing reasons, and those stated in its previous submissions, the City Board respectfully requests that the Court grant its motion to decertify the class. Finally, the City Board reserves all of it rights to interpose any additional objections it may have to any proposed judgment the Court may enter in this case.

Respectfully,

Eamonn F. Foley
Assistant Corporation Counsel

cc:   Joshua S. Sohn, Esq.
      DLA Piper, LLP
      Attorneys for Plaintiffs

      Charles E. Enloe
      Assistant Attorney General
      Attorney for *Amicus* SED