UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X

GULINO, ET AL.,

               Plaintiffs,                          96 CV 8414 (KMW)
                                                                             <u>OPINION & ORDER</u>

       -against-

THE BOARD OF EDUCATION OF THE
CITY SCHOOL DISTRICT OF THE CITY
OF NEW YORK,


               Defendant.
----------------------------------------------------X

WOOD, U.S.D.J.:

       Plaintiffs, a group of African-American and Latino teachers in the New York City public

school system, filed the above-captioned action in 1996. Plaintiffs alleged that Defendant, the

Board of Education of the City School District of the City of New York ("the Board"), violated

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII") by requiring

Plaintiffs to pass certain racially discriminatory standardized tests in order to obtain a license to

teach in New York City public schools. Judge Constance Baker Motley, to whom the case was

originally assigned, certified the plaintiff class on July 13, 2001, pursuant to Federal Rule of

Civil Procedure 23(b)(2). *Gulino v. Bd. of Educ. of the City Sch. Dist. of City of N.Y.*, 201 F.R.D.

326 (S.D.N.Y. 2001) (Motley, J.). On December 5, 2012, this Court decertified the Plaintiff

class to the extent it sought damages and individualized injunctive relief in light of the Supreme

Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). *Gulino v. Bd. of*

*Educ. of the City Sch. Dist. of the City of N.Y.*, 907 F. Supp. 2d 492, 504-05, 507 (S.D.N.Y.

2012) (Wood, J.). The class survived, however, to the extent Plaintiffs sought relief that may be

awarded under Rule 23(b)(2), including a declaratory judgment regarding liability and classwide injunctive relief. *Id.* at 507-09.

Plaintiffs now move to certify a "remedy-phase class," seeking classwide backpay and other individualized relief, pursuant to Rule 23(b)(3). [Dkt. No. 328]. For the following reasons, the Court GRANTS Plaintiffs' motion to certify a remedial phase class pursuant to Rule 23(b)(3).

## I.    BACKGROUND

The Court addresses only those facts relevant to the instant motion. The facts and complex procedural history of this case are set out in this Court's prior opinions, familiarity with which is assumed.[1]

### A.  Liability Issues

Plaintiffs alleged that the Board and the New York State Education Department ("SED")[2] discriminated against them by requiring teachers to pass a licensing exam that had a disparate impact on minorities. Class members were initially awarded New York City teaching licenses between 1986 and 1991. *Gulino*, 201 F.R.D. at 328. In 1991, in accord with state legislation, SED began requiring prospective teachers and licensed teachers seeking full-time employment to pass a generalized liberal arts exam, initially administering the National Teacher Core Battery ("Core Battery") and then phasing in the Liberal Arts and Sciences Test ("LAST-1") in 1993. *Id.* at 328-29. After being notified that they must pass the Core Battery or LAST-1 in order to retain their licenses, thousands of experienced teachers took and failed the exams. *Id.* at 329. Rather

---

[1] *See Gulino*, 907 F. Supp. 2d 492 (opinion finding Board liable under Title VII on remand); *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 372 (2d Cir. 2006) (partially affirming and reversing Judge Motley's original liability decision); *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 96 Civ. 8414, 2003 WL 25764041 (S.D.N.Y. Sept. 4, 2003) (Motley, J.) (original liability opinion); *Gulino*, 201 F.R.D. 326 (certifying class under Rule 23(b)(2)).

[2] Although SED was originally named as a defendant in this case, the Second Circuit dismissed Plaintiffs' claims against SED and held that it could not be subject to Title VII liability because it was not Plaintiffs' "employer." *Gulino*, 460 F.3d at 372. Accordingly, the Board is the only remaining defendant.

than terminate these teachers, however, the Board retained them in the same teaching positions and assigned the same course load, but revoked their licenses, demoted them to substitute status, reduced their salaries, froze their pensions, and revoked their seniority rights. *Id.*

After sixteen years of litigation, including an eight-week bench trial and a remand from the Second Circuit, this Court held that the Board's use of LAST-1 violated Title VII. *Gulino*, 907 F. Supp. 2d at 525. The Court found that LAST-1 had a disparate impact on minority test-takers, and that the Board failed to prove that the test was had been properly validated as job-related (an affirmative defense to Title VII liability).[3] *Id.* Accordingly, the Board violated Title VII by requiring Plaintiffs to pass LAST-1 in order to obtain a permanent teaching license. *Id.* However, on January 28, 2013, this Court granted the Board's motion to certify its liability ruling for immediate interlocutory appeal. *See id.* at 525-26. Specifically, the Court certified the question of whether an employer can be liable under Title VII for complying "with a facially neutral state licensing requirement for teachers that allegedly has a disparate impact on members of a protected class." *Id.* at 526.

### B. Class Certification Issues

Judge Motley certified the original Plaintiff class on July 13, 2001 pursuant to Federal Rules 23(a) and 23(b)(2). The class was defined as:

> All African-American and Latino individuals employed as New York City public school teachers by Defendants, on or after June 29, 1995, who failed to achieve a qualifying score on either the [Core Battery] or the [LAST-1], and as a result either lost or were denied a permanent teaching appointment.

*Gulino*, 201 F.R.D. at 330. Three named plaintiffs—Elsa Gulino, Mayling Ralph, and Peter Wilds—represented the class. *Id.* Judge Motley found that the proposed class satisfied the requirements

---

[3] Although the Core Battery also had a disparate impact on minority test-takers, Judge Motley found that it was job-related, *Gulino*, 2003 WL 25764041, at *30 ¶ 161, and the Second Circuit affirmed this holding on appeal, *Gulino*, 460 F.3d at 385-86.

of Rule 23(a), in that the class was sufficiently numerous; that there were legal issues common to the class members' claims; that the class representatives' claims were typical of those of the other members of the class, and that the named plaintiffs would adequately represent the other members of the class. *Id.* at 331-333. Judge Motley also found that the proposed class satisfied Rule 23(b)(2), which authorizes class actions where a defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole." *Id.* at 333 (quoting Fed. R. Civ. P. 23(b)(2)). Judge Motley found that Plaintiffs' claims for monetary damages did not predominate over their claims for injunctive and declaratory relief, but did not consider whether the class action was the superior method of adjudication because Rule 23(b)(2) did not require such a determination. *Id.* at 333-34.

On June 20, 2011, the Supreme Court held that courts could no longer use Rule 23(b)(2) to certify class actions where plaintiffs sought non-incidental monetary relief or individualized injunctive relief. *Wal-Mart*, 131 S. Ct. at 2557. Rather, classes may be certified under Rule 23(b)(2) only where the plaintiffs seek "an indivisible injunction benefitting all its members at once"; if each plaintiff would be entitled to an individualized injunction or backpay, the class must be certified under Rule 23(b)(3). *Id.* at 2557-58. On July 18, 2011, the Board moved to decertify the plaintiff class in light of this decision. [Dkt. No. 306].

The Court granted in part and denied in part the Board's motion to decertify the plaintiff class in light of *Wal-Mart*. *Gulino*, 907 F. Supp. 2d at 503-09. First, the Court explained that the Second Circuit encourages courts to birfucate class proceedings into two phases pursuant to Rule 23(c)(4). Under this approach, courts certify a "liability" class under Rule 23(b)(2), and then certify a "remedial" class under 23(b)(3). Applying these principles, the Court found that Plaintiffs'

4

request for declaratory relief and classwide injunctive relief—such as the appointment of a monitor—could proceed as a liability phase class action under Rule 23(b)(2).[4]  The Court agreed with the Board, however, that Plaintiffs' claims for backpay and individualized injunctive relief must be de-certified in light of *Wal-Mart*.  However, the Court explained that Plaintiffs would be able to move to re-certify a damages class under Rule 23(b)(3) in order to "promote judicial flexibility in managing complex class actions." *Id.* at 507 (citing *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 167-69 (2d Cir. 2001), *reversed on other grounds by Wal-Mart*, 131 S. Ct. at 2559).

Plaintiffs now request that the Court certify a remedial class under Rule 23(b)(3). Plaintiffs proposed class consists of:

> All African-American and Latino individuals employed as New York City public school teachers by Defendant, on or after June 29, 1995, who failed to achieve a qualifying score on the [LAST-1], and as a result either lost or were denied a permanent teaching appointment.

(Pls.'s Mem. of Law in Supp. 1 [Dkt. No. 329]).  The proposed class is identical to the class certified by Judge Motley, except that it confines its membership to those teachers who failed LAST-1 (it eliminates those who failed the Core Battery).

Peter Wilds, one of the original class representatives, submitted a declaration indicating his willingness to continue representing the class.  Mr. Wilds is an African-American man who has been employed by the Board since 1985. (2013 Wilds Decl. ¶1 [Dkt. No. 332]).  In 1988, he received a full-time license to teach special education and was hired into a full-time position. (*Id.*).  In 1994, the Board notified Mr. Wilds that he must pass either the Core Battery or LAST-1 in order to retain his teaching license.  (*Id.*).  After Mr. Wilds failed to achieve a passing score on

---

[4] The Court has thus been addressing Plaintiffs' requests for classwide injunctive relief, including that the Court appoint a monitor and order the Board to cease using LAST-1 in its hiring decisions, while the motion for certification of a remedial class has been pending.  (*See* Pls.'s Order to Show Cause for Injunctive Relief [Dkt. No. 367]).

either test, the Board revoked his license, demoted him to a substitute teaching position, cut his salary, froze his pension benefits, and revoked his seniority rights. (*Id.*). Mr. Wilds continued in his previous full-time job as a substitute until 1997, and then began working as a guidance counselor. (*Id.* at ¶2).

The Board opposes Plaintiffs' motion to certify a class under Rule 23(b)(3). (*See* Am. Mem. of Law in Opp. [Dkt. No. 341]).

## II.     LEGAL STANDARD

Class actions must first satisfy the four elements of Rule 23(a), which requires that a proposed class action "(1) be sufficiently numerous, (2) involve questions of law or fact common to the class, (3) involve class plaintiffs whose claims are typical of those of the class, and (4) involve a class representative or representatives who adequately represent the interests of the class." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). In addition, Plaintiffs must satisfy Rule 23(b)(3), which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "class treatment would be superior to individual litigation." *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). Rule 23 "does not set forth a mere pleading standard." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Wal-Mart*, 131 S. Ct. at 2551-52). Rather, parties seeking class certification must "satisfy through evidentiary proof" that there are "*in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Id.* Courts must apply the same "rigorous analysis" to ensure the two requirements of Rule 23(b)(3) are met, and are cautioned that "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)). "[T]he preponderance of the evidence standard applies to evidence

proffered to establish Rule 23's requirements." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

## III.   DISCUSSION

### A.   Requirements Under Rule 23(a)

In her opinion certifying the class under Rule 23(b)(2), Judge Motley determined that Plaintiffs' proposed class satisfied the four requirements of Rule 23(a).  *See Gulino*, 201 F.R.D at 331- 33. "[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (internal citations and quotation marks omitted).  The law of the case doctrine, however, "does not rigidly bind a court to its former decisions, but is only addressed to its good sense." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (internal quotation marks omitted).  Although the Court defers to Judge Motley's prior findings under the law of the case doctrine, given the intervening passage of time, the Court finds it prudent to reevaluate the 23(a) factors in order to determine that they are still satisfied.

#### 1.   Numerosity

A proposed class satisfies the numerosity requirement if it is "so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), which is "presumed at a level of 40 members," *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (quoting 1 *Newberg on Class Actions 2d* § 3.05 (1985 ed.)). "Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

Plaintiffs' expert, Whitman Soule, analyzed personnel data from June 29, 1995 through October 2001 and asserts that the proposed remedial class has at least 1,438 members.  (Soule

7

Decl. ¶ 2-3 [Dkt. No. 331]; *see also* Pls.'s Mem. in Supp. 5).  Mr. Soule identified two groups of class members: (1) "teachers who had a regular appointment and lost that appointment or failed to regain a regular appointment due to a failure to pass [LAST-1]," (Group 1) and (2) "teachers who held a regular substitute appointment for longer than three years and failed the [LAST-1]" (Group 2).  (*Id.* at ¶ 5, 8).  Based on the data provided, Mr. Soule identified 236 teachers in the Group 1 and 1,202 in Group 2, but believes that he may identify an additional 1,018 members once the Board and SED provide additional personnel data.  (*Id.* at ¶ 6, 9).  According to Mr. Soule, there is a "high probability" that the 1,438 teachers he identifies in the two groups are members of the class.  (*Id.*).

The Board argues that Soule's analysis is flawed.  The Board supports its contentions with a declaration from economist Dr. Christopher Erath, who claims that "the vast majority" of the class members in Group 1 do not meet the class definition, and none of the members of Group 2 meet the definition.  (Erath Decl. ¶ 6).  Dr. Erath notes that half of the Group 1 teachers failed LAST-1 after being demoted, which the Board argues precludes a finding that the adverse employment action was caused by the failure.  (Def.'s Mem. of Law in Opp. 4).  Dr. Erath also questions Soule's findings with respect to Group 2, explaining that Soule failed to account for all of the additional requirements potential teachers must satisfy before obtaining a license.  These other requirements could be independent reasons preventing teachers from obtaining licenses.  (Erath Decl. ¶ 21-22).

The Court finds that Plaintiffs have shown numerosity by a preponderance of the evidence.  Although Plaintiffs must show that there are "in fact" sufficiently numerous parties, *Wal-Mart*, 131 S. Ct. at 2551-52, they need not provide "evidence of exact class size or identity of class members," *Robidoux*, 987 F.2d at 935, and may "rely on reasonable inferences drawn from

the available facts in order to estimate the size of the class." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 103 (S.D.N.Y. 1999) (Sweet, J.).  Moreover, a determination of whether a class action is appropriate because joinder is impracticable "depends on all the circumstances surrounding a case, not on mere numbers." *Robidoux*, 987 F.2d at 936.

Applying this standard, the Court finds that Plaintiffs have established that there are more than 40 class members.  First, even accepting all of Dr. Erath's critiques and disregarding half of Group 1 and all of Group 2, the class would still have more than 100 members.  Second, with respect to Group 1, the Court agrees with Plaintiffs that failing LAST-1 after losing a permanent appointment does not necessarily mean that an individual's failure did not cause the loss: an individual may have held a permanent appointment, been demoted, and then failed to have their appointment restored when they subsequently failed LAST-1.  The Court also rejects the Board's arguments that teachers who failed the LAST should be excluded from the class because they failed to retake the exam as quickly as they could have.  With respect to Group 2, the Court agrees with Dr. Erath that some factor other than failing LAST-1 may have been the reason that some members of Group 2 could not obtain a permanent license.  However, given that Soule was working with limited data, (Soule Reply Decl. ¶1 [Dkt. No. 347]), the Court finds that Soule's analysis is enough to satisfy Rule 23(a).  The exact composition of the class may be established through the notification process, *see* Fed. R. Civ. P. 23(c)(2)(B), and through hearings in which individual plaintiffs bear the burden of showing their adverse employment action was the result of failing LAST-1, *see infra* Part III.A.2.

The Court rejects the Plaintiffs' proposed class definition, however, to the extent it seeks damages relating to liability that was not proved at trial.  Plaintiffs appear to include within the proposed class all teachers who suffered an adverse employment action as a result of LAST-1,

even if they took and failed LAST-1 subsequent to trial.  Judge Motley's ruling that LAST-1 had

a disparate impact, and this Court's ruling that the Board violated Title VII by using LAST-1, was

based on data from approximately 1993 through the end of the 2001/2002 school year.  *See*

*Gulino*, 2003 WL 25764041, at *30 ¶¶ 46-47; (Gill Decl. in Supp. of Order to Show Cause Ex. A ¶

18-24 (2002 DiPrete Report)).  Accordingly, the Board's liability for its use of the LAST is

limited to what was established at trial; the Court has made no findings regarding the disparate

impact or job-relatedness of new iterations of the LAST exam used after this time period.  The

Court thus limits the Plaintiff class to those teachers who failed LAST-1 before the end of the

2001/2002 school year and, as a result, lost or were denied permanent teaching positions.

## 2.  Commonality

To establish commonality, Plaintiffs must show that class members "have suffered the

same injury." *Gen. Tel. Co. of the Sw. v. Falcon*, 102 S. Ct. 2364, 2366 (1982).  This element

requires the existence of both at least one *question* common to the class, *Wal-Mart*, 131 S. Ct. at

2556, and also that a class action "has the capacity to generate common *answers* apt to drive the

resolution of the litigation," *id.* at 2551 (emphasis added) (quoting Richard Nagareda, *Class*

*Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).  A question is

common to the class if "it is susceptible to generalized, class-wide proof." *In re Nassau Cnty. Strip*

*Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) ("*In re Nassau Cnty.*").  Plaintiffs contend that

there are two types of questions shared by the class: (1) common questions relating to the Board's

liability, and (2) common questions relating to the remedial phase, including the calculation of

backpay, pension benefits, and seniority.  The Court agrees that these questions establish

commonality.

First, with respect to common liability issues, the Board correctly notes that the Court has conclusively resolved questions regarding liability in Plaintiffs' favor.[5]  However, the Board is incorrect in stating that these questions no longer factor into the Court's analysis of whether a class action is appropriate.  Rather, the Court's analysis is animated by "*all* factual or legal issues that are common to the class."  *In re Nassau Cnty.*, 461 F.3d at 228; *see also Amchem*, 521 U.S. at 621 (explaining that the "focus" of Rule 23(a) is "whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives").  The Second Circuit, addressing the predominance element under Rule 23(b)(3), explained that "even resolved questions" should factor into the Court's predominance analysis.  *In re Nassau Cnty.*, 461 F.3d at 227.  "Eliminating conceded issues . . . would undermine the goal of efficiency by requiring plaintiffs who share a 'commonality of the violation and the harm' nonetheless to pursue separate and potentially numerous actions because, ironically, liability is so clear."  *Id.* at 228.  These concerns are equally applicable to the Court's commonality analysis.  Accordingly, the Court finds that the common questions of liability under Title VII are enough to satisfy the commonality question.

Second, with respect to questions at the remedial phase, the Court agrees with Plaintiffs that the class shares common questions (and answers) relating to the calculation of appropriate remedies.  Plaintiffs propose a two-stage remedial phase.  The first stage will address classwide issues, including calculation of backpay, pension benefits, and seniority; the second stage will address individual issues, including mitigation and the amount of backpay to which each claimant is entitled.  The Court agrees with Plaintiffs that class members harmed by the Board's Title VII violations are entitled to backpay.  *See Cohen v. West Haven Bd. of Police Comm'rs*,

---

[5] The Board also notes that, as discussed above, the Court's ruling is currently being considered by the Second Circuit on an interlocutory appeal.  Although a reversal is one possible outcome of this appeal the Court denied the Board's request for a stay given the age of the case, and sees no reason to revisit that ruling.  *See* 907 F. Supp. 2d at 527.  Remedial proceedings will proceed in order to facilitate the resolution to this decades-old litigation.

638 F.2d 496, 502 (2d Cir. 1980).  The Court also agrees that, given the large number of

vacancies for full-time teachers during the time period at issue, class members who failed LAST-

1, but satisfied all other requirements, would have received a full teaching license and would

have been hired as a full-time teacher.  (*See* Gill Decl. Ex. 2).

　　　　Salaries for teachers in the New York City school system are established by tables listed

in collective bargaining agreements negotiated by the teachers' union.  Plaintiffs propose using

these salary tables to create a database to determine what salary each class member would have

received had they obtained a regular teaching appointment after failing LAST-1.  To do this,

Plaintiffs intend to divide the class into cohorts based on what year they would have been

eligible to receive a full-time appointment.  Given that different class members were deprived of

a full-time teaching appointment for varying amounts of time, the Court finds that using cohorts

to calculate backpay on a periodic basis, as opposed to an aggregate basis, is appropriate to

balance procedural fairness with efficient administration.  Plaintiffs propose a similar method to

calculate pension benefits and health insurance, although Plaintiffs note that it is an open

question whether to determine health care costs based on premium payments the employer would

have paid or based on out-of-pocket expenses that would have been covered.  *See United States*

*v. City of New York*, 847 F. Supp. 2d 395, 409 (E.D.N.Y. 2012).  The Court agrees that this issue

should also be resolved on a classwide basis at the first stage of remedial proceedings.

　　　　However, the Court finds that Plaintiffs' proposal to use an expert to adjust the backpay

calculation "to account for the probability that a teacher would have earned more or less money

throughout their career as a result of various opportunities and circumstances set forth in the

collective bargaining agreements" is not suitable for classwide resolution.  (Pls.'s Mem. in Supp.

11).  These issues are not susceptible to common proof for the class as a whole and are better

addressed individually at the second stage of the proceedings.  Only the baseline amount of backpay owed with respect to a particular cohort year should be resolved on a classwide basis. Further, the Court finds Plaintiffs' description of procedures to allocate in-system seniority for eligible class members is inadequate to determine whether this is appropriate for classwide resolution.  Procedures for allocating in-system seniority should be set on a class-wide basis, but eligibility for in-system seniority should be determined at the second stage of the remedial proceedings.

At the second stage, the Board will have an opportunity to present other, non-discriminatory reasons why a class member would not have received a regular teaching license and permanent teaching appointment.  The Board will also have an opportunity to demonstrate that an individual plaintiff's damages should be reduced by the actual amount of his or her earnings from interim employment, or from any interim employment that was available to him or her through reasonable efforts to mitigate damages.  *See* 42 U.S.C. § 2000e-5(g)(1) ("Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.").  Although this stage will primarily concern individualized determinations, common questions are still present with respect to the list of non-discriminatory reasons for which the Board may have refused to license or hire an individual, and with respect to procedures for gathering information for and conducting individual hearings.

Although the Board is correct that some aspects of the remedial stage are necessarily individualized, the Court finds that the remedial proceedings are governed by common questions. Indeed, because "even a single common question" is enough to satisfy Rule 23(a), *Wal-Mart*, 131 S. Ct. at 2556, the classwide calculation of backpay for each cohort satisfies the commonality

requirement.  Plaintiffs also raise other common questions, including (1) non-discriminatory

factors the Board may assert for not hiring a particular plaintiff; (2) procedures for mitigation

hearings; (3) how to calculate appropriate compensation for Plaintiffs' additional health care

costs; (4) how to calculate pension benefit backpay; and (5) how to calculate seniority for each

cohort.  (*See* Pls.'s Reply Mem. 5 n.24; Pls.'s Mem. in Supp. 11-13).  Accordingly, the Court finds

that Plaintiffs have established commonality.

### 3.  Typicality

To satisfy typicality, Plaintiffs must show that the class representative's claims or

defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a).  Typicality "is

satisfied when each class member's claim arises from the same course of events, and each class

member makes similar legal arguments to prove the defendant's liability." *Brown v. Kelly*, 609

F.3d 467, 475 (2d Cir. 2010) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).

Plaintiffs assert that Judge Motley's ruling that Mr. Wilds's claims are typical of the class

remains true.  Mr. Wilds is an African-American who obtained a full-time teaching license, and

subsequently had that license revoked because he failed to pass LAST-1.  The Court agrees that

Mr. Wilds's claims are typical of the class's claims, and that he has the necessary incentive to

obtain the relief that would be sought "by the individual members of the class were they initiating

individualized actions" on their own behalf.  *Ligon v. City of N.Y.*, 288 F.R.D. 72, 80 (S.D.N.Y.

2013) (Scheindlin, J.) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493,

510 (S.D.N.Y. 1996) (Sweet, J.)).

The Court is not convinced by the Board's argument that Mr. Wilds's claims are not

typical of the class.[6]  The Board first argues that Mr. Wilds' claims were based on his failure to

---

[6] Although the Board addresses these concerns as challenges to the adequacy of representation, these arguments are properly directed toward typicality.

pass the Core Battery, not LAST-1.  Contrary to the Board's assertion, however, Mr. Wilds has

claimed throughout the litigation that his license was revoked because he failed LAST-1.  He

also claims to have exhausted his administrative remedies before bringing his claim with respect

to LAST-1.  (*See* Gill Decl. Ex. B [Dkt. No. 346]).   The Board also argues that Mr. Wilds'

demotion was a result of his long-term plan to become a guidance counselor, and not because of

his failure to pass LAST-1.  This argument is without merit.  Mr. Wilds took, and failed to pass,

LAST-1 five times after being demoted to substitute status, and as a consequence was unable to

regain his license and work as a full-time teacher.  The fact that Mr. Wilds managed to find

another position does not absolve the Board of liability under Title VII for demoting Mr. Wilds

based on his failure to pass an exam that was not properly validated.  It simply means that his

damages will be mitigated by his earnings at an alternative position.

Finally, the Board argues that Mr. Wilds is not entitled to the remedies sought by the

class.  The Board contends Mr. Wilds is not eligible for backpay because he has been paid more

in salary as a guidance counselor than he would have received as a teacher.  (*See* Aloia Decl. ¶¶ 4-5

[Dkt. No. 339]).  Because Plaintiffs calculate backpay on a periodic, rather than aggregate, basis,

however, Mr. Wilds may still be eligible for backpay.  Using a periodic method is appropriate in

this case because more data should make clear which specific plaintiffs suffered adverse

employment consequences because they failed LAST-1.  *See, e.g.*, *Schroer v. Billington*, No. 05-

1090, 2009 WL 1543686, at *1-2 (D.D.C. Apr. 28, 2009) (explaining that "the law is well-settled

in favor of the period method" because "aggregation would give employers the incentive to delay

reinstatement for as long as possible" (quoting *Harman v. Duffey*, 8 F. Supp. 2d 1, 6 (D.D.C.

1998))).  Although the aggregate method may be appropriate to compensate victims of

discrimination where "it is impossible to reliably determine exactly which []class members' would

have received some employment benefit absent discrimination, the periodic method is more appropriate where, as here, it is clear that class members would have received permanent licenses and teaching positions absent use of LAST-1. *United States v. City of N.Y.*, 276 F.R.D. 22, 47 (E.D.N.Y. 2011) ("*Vulcan Soc'y*").

The Board also argues that Mr. Wilds is not eligible for retroactive seniority because he has no interest in returning to teaching, and may not be eligible for pension-related benefits because of the benefits he obtained while working as a guidance counselor. The Court finds these circumstances do not defeat typicality. "[A] representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him or her that would not impact other class members." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 179 (S.D.N.Y. 2008) (Sullivan, J.) (internal quotation marks omitted). Although class certification may be inappropriate where "a putative class representative is subject to unique defenses which threaten to become the focus of the litigation," the Court finds that Mr. Wilds's potential defenses likely represent circumstances common to many class members and are thus not unique enough to defeat typicality. *Id.* (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)). Accordingly, as Judge Motley held in 2001, the Court finds Mr. Wilds's claim to be typical of that of the other class members.

4.  Adequacy of Representation

To determine whether a putative class satisfies the adequacy requirement, the Court must make sure (1) that there are no "conflicts of interest between named parties and the class they seek to represent," *Amchem*, 521 U.S. at 625, and (2) that "plaintiffs' attorneys are qualified, experienced and able to conduct the litigation," *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). The Court finds that both inquiries are satisfied. First, Mr. Wilds has reaffirmed

that he "remain[s] committed to achieving a successful resolution of this case and relief for all class members," and the Board does not allege any conflict of interest between Mr. Wilds and the remaining class members.  (Wilds Decl. ¶ 9).  Second, Plaintiffs have been represented by the Center for Constitutional Rights and Stephen Seliger since 1996, with DLA Piper serving as co-counsel since 2000.  This long history of zealous advocacy is enough to assure the Court that Plaintiffs' attorneys are "qualified, experienced and able to conduct the litigation." *In re Flag Telecom*, 574 F.3d at 35.

### B.  Requirements Under Rule 23(b)(3)

For certification under Rule 23(b)(3), Plaintiffs must affirmatively demonstrate that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The Board argues that class certification is inappropriate because individual issues—with respect to both liability and damages—predominate over common issues.  Because these issues will require multiple individual proceedings, the Board argues, a class action would be unmanageable.  Although the Court agrees that some individualized issues exist in the remedial phase of this litigation, it nonetheless concludes that the predominance and superiority elements are satisfied.  Accordingly, the Court certifies the putative class pursuant to Rule 23(b)(3), but narrows the issues eligible for classwide resolution.

#### 1.  Predominance

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to

17

individualized proof." *Myers*, 624 F.3d at 547 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).  This requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623, and its purpose is to "ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results," *Myers*, 624 F.3d at 547 (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007)).

As discussed above, although liability has been resolved, the Court must nonetheless consider it when assessing predominance because "resolved issues bear on the key question that the analysis seeks to answer: whether the class is a legally coherent unit of representation by which absent class members may fairly be bound." *In re Nassau Cnty.*, 461 F.3d at 227-28;[7] *see also Easterling v. Conn. Dep't of Corr.*, 278 F.R.D. 41, 48 (D. Conn. 2011) (considering liability in predominance analysis where it had been resolved at summary judgment); *Vulcan Soc'y*, 276 F.R.D. at 47 (using liability in predominance analysis where court had already found defendant liable).

Although common issues frequently dominate the liability phase, the remedial phase, by contrast, "is typically dominated by individualized proof." *Easterling*, 278 F.R.D. at 48.  First, "[e]ach class member must show that he or she was among those adversely affected by the challenged policy or practice." *Robinson*, 267 F.3d at 161-62.  If a plaintiff successfully makes

---

[7] The Court rejects the Board's attempt to distinguish *In re Nassau County*.  (Def.'s Mem. in Opp. 13-14).  Contrary to the Board's characterization, the Second Circuit conclusively held that courts must consider *all* issues, including resolved issues, in determining whether the a putative class satisfied the predominance criterion.  *In re Nassau Cnty.*, 461 F.3d at 228.  Moreover, the ruling specifically acknowledged that individualized issues were still present in the case, but nonetheless concluded that the district court erred by failing to find that common issues predominated.  *Id.* at 229-30.

that showing, then "the class member is entitled to individual relief" unless the Board can "establish by a preponderance of the evidence that a legitimate non-discriminatory reason existed for the particular adverse action." *Id.* at 162.  In resolving these questions, the court must "as nearly as possible recreate the conditions and relationships that would have been had there been no unlawful discrimination." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 372 (1977) (internal quotation marks omitted).

 The Court agrees with the Board that the remedial phase of this litigation necessarily involves some individualized issues: individual claimants will bear the burden of proving that they suffered an adverse employment action as a result of failing LAST-1, and the Board will have the opportunity to establish various mitigation defenses with respect to each individual claimant.  However, the Court disagrees with the Board's assertion that these individualized issues justify denying Plaintiffs' motion for certification.  Classes certified under Rule 23(b)(3) necessarily involve some individual issues; the question before the Court is whether those *predominate* over common issues, or vice versa.  Fed. R. Civ. P. 23(b)(3); *see also Wal-Mart*, 131 S. Ct. at 2558 (acknowledging that Rule 23(b)(3) classes should accommodate "individualized monetary claims"); *Int'l Bhd. of Teamsters*, 431 U.S. at 372 (establishing framework for Title VII cases wherein individual claims are evaluated at a second phase once liability is established); *see also Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 539 (N.D. Cal. 2012) (collecting cases to support proposition that "[t]he need for individualized hearing does not, on its own, defeat class certification").  The Court finds that common issues predominate over individual issues at the remedial phase, and that "resolution of . . . individual questions is of relatively minimal significance [relative] to the litigation as a whole." *Vulcan Soc'y*, 276 F.R.D. at 48.

The Court agrees with Plaintiffs that resolving common questions on a classwide basis will "achieve economies of time, effort and expense, and promote uniformity of decision."[8] *Myers*, 624 F.3d at 547.  Such common questions include:

1. Classwide calculation of baseline backpay on a year-by-year basis;[9]
2. Classwide calculation of baseline pension benefits on a year-by-year basis;
3. Classwide determination of how to calculate compensation for medical benefits;
4. Classwide establishment of what non-discriminatory bases the Board may use to claim a plaintiff would not have been hired; and
5. Classwide process to collect information from plaintiffs regarding mitigation.

Contrary to the Board's argument, this methodology is not a "Trial by Formula," but rather a way to isolate common questions "susceptible of measurement across the entire class," *Comcast*, 133 S. Ct. at 1433, in order to streamline individual proceedings.  *See, e.g.*, *Easterling*, 278 F.R.D. at 49-50 (finding individual issues to be "less substantial than the issues that will be subject to generalized proof"); *Vulcan Soc'y*, 276 F.R.D. at 48-49 (explaining that greater economies of scale will be achieved by "adjudicating common claims in a class proceeding" even if resolution of individual questions is also required).  "In deciding whether class certification will achieve substantial efficiencies, the proper comparison is not between class litigation and no litigation at all, but between class litigation and actions conducted separately by individual class members." *Id.* at 49.  Here, the Court finds that resolving common issues with respect to damages at a classwide proceeding will save substantial time and prevent the relitigation of common claims.  Because the putative class is a cohesive unit and common questions predominate over

---

[8] Plaintiffs' proposal for structuring the remedial phase is addressed in more detail in the Court's discussion of commonality.  *See supra* Part III.A.2.

[9] As noted in the Court's discussion of commonality, only the baseline amount of backpay owed to a particular cohort year should be resolved on a classwide basis.  Issues regarding "the probability that a teacher would have earned more or less money throughout their career" should be addressed in the second stage of the remedial proceedings.

individual questions, the Court finds that Plaintiffs have established predominance for the purposes of Rule 23(b)(3).

### 2.  Superiority

The Court also finds that a class action is the superior method of adjudicating Plaintiffs' claims.  To assess whether a class action is the superior method, courts should consider:"(1) the interest of class members in maintaining separate actions; (2) 'the extent and nature of any litigation concerning the controversy already commenced by or against members of the class'; (3) 'the desirability or undesirability of concentrating the litigation of the claims in the particular forum'; and (4) 'the difficulties likely to be encountered in the management of a class action.'" *In re Nassau Cnty.*, 461 F.3d at 230 (quoting Fed. R. Civ. P. 23(b)(3)).  The Board challenges the fourth of these elements, arguing that 'resolution of plaintiffs' individual remedial claims simply 'break[s] down into an unmanageable variety of individual legal and factual issues.'" (Def.'s Mem. in Opp. 20 (quoting *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997)).[10]

The Court finds that a class action is the superior method of adjudicating Plaintiffs' remaining claims.  Class members have been relying on this litigation proceeding as a class action for more than seventeen years, and thus have little interest in maintaining separate actions– indeed, forcing members to initiate separate actions at this late stage would be unfair.  Moreover, centralizing the litigation in this Court will expedite compensating Plaintiffs in this case where,

---

[10] The cases cited by the Board are not binding authority and, moreover, do not support its position.  In *Jackson*, the Eleventh Circuit addressed predominance and found that it was not satisfied where proving liability would have required "distinctly case-specific inquiries into the facts surrounding each alleged incident of discrimination."  *Jackson*, 130 F.3d at 1006.  Similarly, in *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001), the Third Circuit determined that a class action was not superior because proving liability would require analyzing "hundreds of millions of transactions executed over several years" and individual reliance claims.  *Id.* at 191.  In this case, liability does not require individualized determinations, but rather rests on the use of one exam, and a discrete number of other factors.  Accordingly, these cases are inapposite.

despite clear evidence of the Board's liability, the victims of the Board's discrimination have yet

to obtain any relief.  This Court and class counsel are already familiar with the evidence

regarding liability and damages, which will make argument and resolution of common issues

easier in this forum than any other.  As to the Board's arguments regarding case management, the

Court finds that "any difficulties likely to arise in managing this class action . . . are far less

daunting than the difficulties involved in litigating over a hundred separately captioned actions."

*Easterling*, 278 F.R.D. at 50; *see also Vulcan Soc'y*, 276 F.R.D. at 49.  Plaintiffs continue to

actively litigate this case, and have identified more than 1,000 individuals who have been harmed

by the Board's use of LAST-1.  Redressing the Board's Title VII violation on a case-by-case basis

would sacrifice the efficiencies that could be obtained by resolving common issues together and

using those determinations to streamline individual proceedings.  Accordingly, the Court finds

that a class action satisfies Rule 23(b)(3)'s superiority requirement.

IV.     **CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' motion to certify a damages

class pursuant to Rule 23(b)(3).  The members of the class include:

> All African-American and Latino individuals employed as New York City public
> school teachers by Defendant, on or after June 29, 1995, who failed to achieve a
> qualifying score on LAST-1 before the end of the 2001/2002 school year, and as a
> result either lost or were denied a permanent teaching appointment.

Plaintiffs are permitted to send notice and consent documents to members of this class pursuant

to Rule 23(c)(2)(B).  The parties shall confer regarding the proper form of this notice, and shall

submit to the Court their agreed-upon notice or, if they cannot agree, their respective proposed

forms of notice by September 16, 2013.  The Court also anticipates decisions regarding

classwide damages calculations and individual hearings to be managed by a special master

pursuant to Rule 53.  The parties are to submit a joint letter by September 16, 2013 addressing

(1) potential candidates to serve as special master in the proceedings, and (2) a proposed

schedule for providing notice under Rule 23(c)(2)(B), resolving classwide issues, and conducting

individual hearings.  The Court will address these issues at the conference that will be scheduled

during the week of September 23, 2013.

        SO ORDERED.

DATED:        New York, New York
              August 29, 2013


                                        /s/_____
                                            KIMBA M. WOOD
                                            United States District Judge