# ROGERS & HARDIN

June 19, 2014

Phillip S. McKinney
Direct: 404.420.4618
Direct Fax: 404.230.0956
Email: pmckinney@rh-law.com

**VIA ECF**

Honorable Judge Kimba M. Wood
United States District Judge
United States Courthouse
500 Pearl Street, Room 15B
New York, NY 10007

Re:   *Gulino, et al. v. Board of Education*, 96-CV-08414 (KMW)

Dear Judge Wood:

On behalf of non-party NCS Pearson, Inc. ("Pearson"), I am responding to the joint letter submitted to Your Honor on Friday, June 13, 2014, by Plaintiffs and Defendant Board of Education of the City School District of the City of New York (the "BOE"). Pearson is the developer and administrator, under contract with the New York State Education Department ("SED"), of the numerous examinations comprising the New York State Teacher Certification Examinations ("NYSTCE"), among which is the Liberal Arts and Sciences Test ("LAST") at issue in this case. I write to point out to the Court a number of facts that the parties' joint letter of June 13 fails to disclose, and to explain Pearson's numerous objections to the subpoena, none of which were explained (or even stated) in that letter.

On May 12, 2014, I received via email a subpoena issued by Joshua S. Sohn, counsel for Plaintiffs, and directed to my client Pearson (the "Pearson Subpoena"). The Pearson Subpoena is attached as Exhibit 1 to this letter. Exhibit "A" to the Pearson Subpoena demanded production of copies of a number of the actual test instruments used in operational and ongoing administrations of many of the NYSTCE test fields, none of which have ever been claimed to be at issue in this case. Specifically, the Pearson Subpoena demanded copies of the Elementary Assessment of Teaching Skills – Written, the Secondary Assessment of Teaching Skills – Written ("ATS-W"), and the Content Specialty Tests ("CST"), in each case demanding copies of the test forms "that are representative of the examination as it has been administered between 2004 and the present." See Exhibit 1 (Pearson Subpoena Exhibit A, page 5).

The two ATS-W tests are designed to assess pedagogical skills that New York educators determined to be important to the adequate performance of the job of elementary and secondary New York public school teachers, respectively. The various CST's assess the specific knowledge and skills needed to teach specific subject matter in New York public schools, such as mathematics, physics, chemistry, American Sign Language, Cantonese, Japanese, etc. Currently there are 38 different CST's offered under the NYSTCE program.

# ROGERS & HARDIN

Honorable Judge Kimba M. Wood
June 19, 2014
Page 2

  The Pearson Subpoena was accompanied by a brief email from Plaintiffs' counsel, explaining only that Dr. Outtz "has asked the parties for copies of the ATS-W and CST exams." See Exhibit 2. No further explanation of their relevance to this lawsuit was offered, nor was any explanation given as to Dr. Outtz's authority to seek information having no apparent relationship to the LAST or the issues in this lawsuit. Upon receipt of the Pearson Subpoena, I contacted counsel for Plaintiffs, seeking clarification for "why the requested tests are needed by Dr. Outtz, as their relevance to Dr. Outtz's inquiry [concerning the validation of LAST] is not self-evident." See Exhibit 3. Plaintiffs' counsel's response (see Exhibit 4) offered no explanation whatsoever, other than that Dr. Outtz had asked for the tests. I made a similar inquiry to counsel for BOE (see Exhibit 5), and received (orally) essentially the same response. Having received a subpoena for highly secure information on test fields that have no evident relevance to the validity of the test at issue in this case, or to any other issue in this case, having been given no explanation for why this information was being requested, and having been given no protection from the burden and expense (not to mention the risk of compromise to the test integrity of these unrelated test fields), Pearson was left with no choice but to object under FRCP 45 and rely upon this Court for the protection of its interests, as required by FRCP 45. The objection served by Pearson is attached as Exhibit 6.

  On June 4, 2014, the Plaintiffs, BOE, SED and Pearson held what the June 13 letter describes as a "meet-and-confer session", but it was hardly that. Again, counsel for Plaintiffs and BOE declined to give any explanation whatsoever for why Dr. Outtz claimed to need ATS-W and CST test forms, tests that no one has claimed are in any way related to LAST. Instead of presenting a rational explanation for the request or for any legitimate need for this information, or engaging in a genuine discussion concerning the evident (and unexplained) expansion of Dr. Outtz's mission as authorized by this Court, counsel for Plaintiffs and BOE terminated the phone call minutes after it began by simply asserting that if Pearson and SED did not comply with the demands, the parties would take the matter up with the Court. To this date, no explanation has been given for this demand, beyond the bare assertion that Dr. Outtz has asked for it.

  Pearson would welcome the opportunity to discuss with Dr. Outtz the reason for this request and the information that he may legitimately need to conclude the assignment actually given to him by the Court. If legitimate reasons are given and legitimate concerns are explored, perhaps some acceptable compromise can be agreed upon. But the parties issuing the Pearson Subpoena have made no such effort, nor has Dr. Outtz. Without such efforts, the Pearson Subpoena should be quashed.

  Pearson objects to each of the requests contained in the Pearson Subpoena on several grounds, none of which the parties have been willing to discuss with Pearson to date.

   1. The information sought is not relevant to the validation of LAST. The Pearson Subpoena seeks actual operational test forms for two pedagogical skills tests and

ROGERS & HARDIN

Honorable Judge Kimba M. Wood
June 19, 2014
Page 3

dozens of specific subject matter tests. In the entire 18-year history of this case, no one to my knowledge has ever claimed that these tests are relevant to the central question of whether another entirely different test (LAST) was properly validated. The parties have given no explanation for why this information is relevant, or even why Dr. Outtz thinks it is (if indeed he does). If relevance and actual need for this information cannot be shown, Pearson should not be put to the trouble and expense (not to mention the risk to test security) of producing its operational test forms.

2. The information sought is outside the legitimate scope of the assignment given by this Court to Dr. Outtz. At the April 29 hearing at which Dr. Outtz was selected as the Court-appointed expert, the Court made it clear that Dr. Outtz's mandate was to "look at both what we've been calling the LAST2 and the ALST." April 29, 2014 Transcript, at p. 9:

> MR. SOHN: Well, what we understood the Court's plan to be was to appoint an expert to look at that test, and if that expert came back and said that what we're calling colloquially as the LAST2 was OK and was valid and was job-related, that would be the end of the inquiry. If on the other hand what our -- if our suspicions are confirmed that the LAST2 is effectively the same thing as the LAST1, then we would seek relief from the Court and either certify a second class or get relief in that way.

> THE COURT: I understand. I believe, then, that the experts should look at both what we've been calling the LAST2 and the ALST.

Neither the Court nor counsel in any way suggested that Dr. Outtz would be authorized to review any other test fields. Given the clearly stated and limited mission of Dr. Outtz, Pearson should not be put to the trouble and expense (not to mention the risk to test security) of producing its operational test forms without a clear and compelling showing of need. This request appears to be a clear case of "mission creep", and should be stopped in its tracks unless and until a compelling need can be shown.

3. The information sought (i.e., the very test questions themselves for dozens of teacher certification tests used throughout the State of New York) is highly confidential, proprietary, trade secret and commercially important information, the compromise of which (regardless of whether intentional or accidental) would jeopardize the test integrity of an enormously expensive New York State certification program. While there is a confidentiality order in place in this case, no order is fool-proof. Such highly sensitive and plainly tangential information should not be required to be

ROGERS & HARDIN

Honorable Judge Kimba M. Wood
June 19, 2014
Page 4

>   disclosed without a compelling showing of need, and without additional safeguards appropriate to the program-wide risk that disclosure would entail.
>
> 4. Compliance with the Pearson Subpoena would impose upon Pearson undue burden and expense, from which the parties have failed to protect Pearson, as required by FRCP 45(d). Pearson is not a party to this lawsuit, nor has it ever been. Pearson stands in the position of a non-party witness. Accordingly, Pearson is subject to the mandatory protections of FRCP 45(d), among which is entitlement to protection from undue burden and expense. The Pearson Subpoena should be quashed in its entirety, absent a compelling showing of need. And even if that showing could be made, Pearson is entitled to fair compensation for the substantial expense and dislocation to which it would be put if compelled to comply. Pearson cannot just push buttons and produce anything that the parties or Dr. Outtz decide they would like to see. It would require Pearson to assign real employees with real salaries to stop their normal assignments, put on hold other time-sensitive projects, and turn to the task of complying with this request. Even if the parties and Dr. Outtz can show a real need (which they have not done to date), the parties should be required to compensate Pearson for this disruption, expense, and dislocation.
>
> 5. While the parties have refused to disclose to Pearson the reason for this request, if it involves information concerning the structure and design of the ATS-W and CST tests, that information is publicly available, to the parties, to Dr. Outtz, and to everyone else. The NYSTCE website contains numerous documents that describe in detail the structure and content of these tests, preparation guides, practice tests, and sample questions. See, e.g., http://www.nystce.nesinc.com/NY_viewobjs_opener.asp; http://www.nystce.nesinc.com/NY_viewSG_opener.asp; http://www.nystce.nesinc.com/NY_PracticeTests.asp. Production of the actual operational test questions and test forms should not be required.
>
> 6. Finally, the Pearson Subpoena demands that Pearson produce test forms that are "representative of the examination as it has been administered between 2004 and the present." But this qualifier is vague and ambiguous in the context of a request for which no rationale has been given. "Representative" of what? And for what purpose? In one sense, each test form is representative of others in that all forms within a specific field cover the topics described in the test framework. But each different test form has questions that are different from the questions on other test forms in the same field. Which one (or more) is "representative" of all? Without knowing the purpose of the request, Pearson has no contextual basis to determine what is "representative" enough.

ROGERS & HARDIN

Honorable Judge Kimba M. Wood
June 19, 2014
Page 5

      The Pearson Subpoena was served upon Pearson out of the blue. No explanation has been given, no meaningful discussion has taken place among counsel (or with Dr. Outtz), and no compensation or enhanced protections have been offered to Pearson. As stated earlier, Pearson would welcome the opportunity to discuss with Dr. Outtz the reason for this request and the information that he may legitimately need to conclude the assignment actually given to him by the Court. If legitimate reasons are given and Pearson's legitimate concerns are explored and addressed, perhaps some acceptable compromise can be agreed upon. But the parties issuing the Pearson Subpoena have made no such effort, nor has Dr. Outtz. Without such efforts, the Pearson Subpoena should be quashed. Unless and until the foregoing issues have been fully addressed and this Court has determined that, in fact, this request is based upon a legitimate need in support of the properly constrained inquiry authorized by the Court, Pearson should be relieved of any obligation to comply.

Respectfully submitted,

Phillip S. McKinney

PSM/tc
cc:    Eamonn F. Foley (via ECF filing and email)
        John Schowengerdt (via ECF filing and email)
        Joshua S. Sohn (via ECF filing and email)
        Anthony D. Gill (via ECF filing and email)
        Shannon L. Tahoe (via email)