UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------X
GULINO, ET AL.,

Plaintiffs,

96-CV-8414 (KMW)
OPINION & ORDER

-against-

THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK,

Defendant.
---------------------------------------------------X
WOOD, U.S.D.J.:

Plaintiffs, who represent a class of African–American and Latino teachers in the New York City public school system, brought the above-captioned action in 1996. They currently allege that the Board of Education of the City School District of the City of New York (the "BOE") discriminated against Plaintiffs in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*, by requiring Plaintiffs to pass certain discriminatory certification exams in order to secure a teaching license. Without that teaching license, Plaintiffs are not eligible for employment as New York City public school teachers.

Currently before the Court is a letter from the New York State Education Department (the "SED"), a non-party, asserting their opposition to the Court's March 30, 2015 Order, [ECF No. 575]. That Order established a timeline for assessing the validity of the Academic Literacy Skills Test ("ALST"), a current teacher certification exam. For the reasons that follow, the Court is unpersuaded by the SED's letter. The Court's March 30, 2015 Order, as amended by the Court's April 3, 2015 [ECF No. 579] and April 7, 2015 Order, [ECF No. 583], shall stand.

## I. BACKGROUND

In order to teach in New York City public schools, teachers must be certified by the State. *Gulino v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 907 F. Supp. 2d 492, 498 (S.D.N.Y. 2012) (Wood, J.) ("*Gulino III*"), *aff'd sub nom. Gulino v. Bd. of Educ. of N.Y. City Sch. Dist. of N.Y.*, 555 F. App'x 37 (2d Cir. 2014). The SED, which is responsible for providing that certification, requires prospective teachers to pass several licensing exams before they can become certified. *Id.*

Prior to 2014, the SED required applicants seeking certification to pass three exams: (1) the Assessment of Teaching Skills – Written, which tested knowledge of education pedagogy; (2) a Content Specialty Test ("CST"), which tested proficiency in the particular subject the applicant intended to teach; and (3) the Liberal Arts and Science Test ("LAST"), which tested an applicant's understanding of liberal arts and sciences knowledge. *See* (Oct. 3, 2014 BOE Ltr., Attach. A [ECF No. 504-1]). In 2014, the SED phased out those three exams and phased in a new set of tests: The Educating All Students ("EAS") exam and the Teacher Performance Assessment ("edTPA") test knowledge of education pedagogy; revised versions of the CSTs test specific subject matter expertise; and the Academic Literacy Skills Test ("ALST") examines an applicant's literacy skills. (*Id.*)

Plaintiffs initially contended that the LAST was discriminatory pursuant to Title VII.[1] The Court ultimately agreed. *See Gulino III*, 907 F. Supp. 2d at 523. Plaintiffs have since asked the Court to assess whether the ALST is similarly discriminatory. *See* (Pls.' Mem. of Law [ECF No. 369] at 22–23); (Aug. 26, 2014 J. Ltr. [ECF No. 483] at 1–5). On March 30, 2015, the Court

[1] *See Gulino v. Bd. of Educ. of City Sch. Dist. of N.Y.*, No. 96-CV-8414, 2003 WL 25764041, at *1 (S.D.N.Y. Sept. 4, 2003) (Motley, J.). In their original suit, Plaintiffs also challenged the Core Battery exam, a licensing test the SED administered prior to the LAST/ATS-W/CST testing regime described above. *See id.* On September 4, 2003, Judge Motley held that the Core Battery was not discriminatory under Title VII. *See id.* ¶ 67.

established a schedule for assessing the validity of the ALST. (March 30, 2015 Order [ECF No. 575]). Several days later, the SED submitted a letter to the Court objecting to the entirety of the March 30, 2015 Order, specifically arguing that the Court lacks the authority to assess the ALST.

## II. ANALYSIS

The SED offers three arguments as to why the Court does not have the authority to review the validity of the ALST. First, it argues that the Court has no authority to enjoin the SED from requiring New York teachers seeking certification to pass the ALST because the SED is a non-party. Second, it argues that facially neutral state licensing requirements are not actionable under Title VII. And third, it argues that the Court lacks jurisdiction over the ALST because the ALST is not a "subsequent exam" pursuant to the Second Circuit's decision in *Guardians Association of New York City Police Department, Inc. v. Civil Service Commission of the City of New York* ("*Guardians*"), 630 F.2d 79 (2d Cir. 1980). The Court finds none of these arguments persuasive.

### A. The Court Is Not Seeking to Enjoin the SED

The SED asserts that, pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court may not enjoin it because it is not a party to this suit, and because a previous Second Circuit decision in this case allegedly established that the SED is not "in active concert or participation with anyone" whom the court can otherwise enjoin. *See* (SED Apr. 1, 2015 Ltr. at 2–3) (citing *Gulino II*, 460 F.3d at 371–80; Fed. R. Civ. P. 65(d)(2)). The SED claims that because the Court may not enjoin the SED from including the ALST as a requirement for teacher certification, the Court lacks authority to review the exam's validity. (*Id.*)

Whether or not it is true that Rule 65 precludes the Court from enjoining the SED, the Court has no plans to do so. The Court has already enjoined the BOE, the defendant in this case,

from requiring class members to pass the LAST. *See* (Mar. 31, 2015 Order [ECF No. 576]). Should the Court determine that the ALST is similarly discriminatory, it may decide to enjoin the BOE from following the SED's requirement that prospective New York City teachers to pass the ALST, but it has no plans to enjoin the SED.

The BOE, whom the Court has full authority to enjoin pursuant to Rule 65, continues to follow the SED's requirement that passage of the ALST is a prerequisite to employment as a New York City public school teacher. Because the Court has authority to enjoin the BOE, the Court's supposed inability to enjoin the SED does not preclude the Court from examining the ALST.

**B. State Licensing Requirements Are Actionable Under Title VII**

Next, the SED asserts that "facially neutral state licensing requirements should not be actionable under Title VII." (SED Apr. 1, 2015 Ltr. at 3). However, this argument has already been dismissed by the Second Circuit. *See Gulino v. N.Y. State Educ. Dep't* ("*Gulino II*"), 460 F.3d 361, 380 (2d Cir. 2006) ("BOE argued in the district court that it should not be held liable for an employment practice required by state law. . . . [T]he district court was correct in holding that the mandates of state law are no defense to Title VII liability. As this court has previously held, 'Title VII explicitly relieves employers from any duty to observe a state hiring provision 'which purports to require or permit' any discriminatory employment practice.'" (quoting *Guardians*, 630 F.2d at 105)). Accordingly, the Court need not consider it further.

**C. The ALST Is a "Subsequent Exam"**

The SED's final argument is that the Court lacks jurisdiction to consider the ALST because it "is not . . . the subject of this litigation and is not the subject of any allegation in the complaint." (SED Apr. 1, 2015 Ltr. at 4).

In *Guardians*, the Second Circuit held that "[o]nce an exam has been adjudicated to be in violation of Title VII, it is a reasonable remedy to require that any subsequent exam or other selection device receive court approval prior to use." 630 F.2d at 109. The SED attempts to diminish the force of this holding by arguing that the ALST is not a "subsequent exam" within the meaning of *Guardians*. According to the SED, the ALST cannot be considered a "subsequent exam" until the old and new tests are "analyzed to determine how [they] contribute[] to the overall inference [they were] designed to inform. . . . If the [new] exam serves the same function in the overarching system [as the old exam], only then could it be deemed a subsequent exam." (SED Apr. 1, 2015 Ltr. at 4). It is unclear from where the SED draws this conclusion, because it cites no authority for the proposition.

The SED contends that the ALST is not a subsequent exam under this framework because "the [c]onstruct and [d]omains" of the LAST and the ALST are fundamentally different. (*Id.* at 5). They claim that the LAST was designed to measure "general knowledge of math, science, and technological processes, historical and scientific awareness, artistic expression and the humanities, communication and research skills," while the ALST was designed to measure literacy, defined as "a candidates [sic] skill at reading and writing." (*Id.*)

*i. Defining "Subsequent Exam"*

As an initial matter, it appears that the SED reads *Guardians*' discussion of a "subsequent exam" to mean "successor exam." *See* (*id.*) ("[T]he new [testing] program and the exam requirements of the certification system were neither intended nor designed to be 'successor exams' or aligned with the individual requirements of the old certification system."). Yet this is by no means an obvious reading. Webster's Third New International Dictionary defines "subsequent," in relevant part, as "following in time," "coming or being later than something

else," "following in order of place," and "one that follows after in time or in position."[2] Webster's Third New International Dictionary of the English Language 2278 (1976). In other words, "subsequent," at least as it is defined by these dictionaries, is concerned solely with timing, not with content.

Applying that definition to the Second Circuit's holding in *Guardians*, all that is required for the ALST to fall within the Court's remedial authority is for the ALST to be an exam that follows the LAST in time.[3] That requirement is readily met here. The ALST was phased in at the same time that the LAST was phased out. Under this reading of *Guardians*, it is clear that

---

[2] Similarly, the New Oxford American Dictionary defines "subsequent" to mean "coming after something in time; following." New Oxford American Dictionary 1735 (3d ed. 2010).

[3] This understanding of a court's remedial authority pursuant to Title VII also conforms to the historical context in which Congress initially passed Title VII. In *South Carolina v. Katzenbach*, 383 U.S. 301 (1966), *abrogated by Shelby Cnty., Ala. v. Holder*, 133 S. Ct. 2612 (2013), the Supreme Court recounted the Department of Justice's difficulty in eradicating the discriminatory laws and practices that persisted in the South at the time. Although *Katzenbach* was focused primarily on the Voting Rights Act of 1965 (the "VRA") and its efforts to protect minority voting rights, the Court's discussion of the historical context in which the VRA was passed also helps inform this Court's understanding of the Civil Rights Act of 1964, passed just a year before the VRA. The *Katzenbach* Court noted that litigation was often an ineffective means of remedying discriminatory practices because "[e]ven when favorable decisions [were] obtained, some of the States affected . . . merely switched to discriminatory devices not covered by the federal decrees or . . . enacted difficult new tests designed to prolong the existing disparity between white and Negro registration." *Id.* at 314. The VRA sought to solve this problem by creating a pre-clearance system which "required States to obtain federal permission before enacting any law related to voting." *Shelby Cnty., Ala. v. Holder*, 133 S. Ct. 2612, 2618 (2013). This pre-clearance system stopped jurisdictions covered by § 4 of the VRA from implementing a new discriminatory barrier as soon as a prior barrier was struck down by the courts.

Congress enacted Title VII, a part of the Civil Rights Act of 1964, to eliminate similar discriminatory practices. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 429–30 (1971) ("The objective of Congress in the enactment of Title VII is plain from the language of the statute. It was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees. Under the Act, practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices."). It therefore makes sense that the remedial authority of a court pursuant to Title VII should extend to subsequent exams that "follow in time" from earlier discriminatory exams, even if unrelated in content; doing so prevents parties from circumventing a court's ability to effectively eliminate discriminatory practices when those parties implement new discriminatory practices on the heels of prior practices that the court held to be impermissible.

This is not to suggest that the SED's implementation of the ALST was an attempt by the SED or any other actor to circumvent this Court's authority, or to intentionally create discriminatory barriers to employment. It is simply to say that a court's remedial authority to investigate subsequent exams that "follow in time" from previous, discriminatory exams is consonant with the purposes of Title VII. Therefore it is reasonable to read "subsequent exam" to mean, not "successor exam," but any exam that follows in time from a previous, discriminatory exam.

the ALST is an exam "subsequent" to the LAST, and therefore, assessing its validity is within the Court's remedial authority.[4]

*ii. The ALST is a Successor Exam to the LAST*

Even if the Court accepts the SED's more narrow reading of *Guardians*, the ALST is also a "successor" of the LAST. First, Stephanie Garnett-Wood, the Assistant Commissioner for the New York State Education Department testified at a hearing before this Court that "the replacement for the LAST is the ALST, the Academic Literacy Skills Test." (Aug. 28, 2013 Hearing Tr. [ECF No. 483-3] at 36). The remainder of her testimony confirms the direct link between the two exams. *See* (*id.* at 36–59) (describing the ALST solely in reference to the LAST, and outlining the ways in which the ALST revised or altered the approach of the LAST).

Second, on a website maintained by the SED, titled "Update on New Exams for Initial Certification of Teachers and School Building Leaders," the SED provides a chart to inform prospective teachers about the certification exams they must pass in order to receive their teaching license from the State. This chart compares what it describes as "current exams" with "new exams." That chart clearly depicts the ALST as being a replacement for the LAST. The chart is reproduced below:

[4] The Court pauses here to note that there must be some limit on a court's remedial authority over "subsequent" exams. Surely, if hypothetical Exam E is implemented fifty years after hypothetical Exam A, and Exams B, C, and D have been implemented in the interim, Exam E would not fall within a court's remedial authority as a subsequent exam to Exam A. Stated differently, it seems possible to read into "subsequent" not just the idea of "following in time," but the idea of following *closely* in time. However, precisely defining a limiting principle with respect to "subsequent" exams is unnecessary here, because the ALST easily falls within any potential definition of "subsequent."

| Current Exams for Initial Certificate | New Exams for Initial Certificate | Current Exams for Professional Certificate | New Exams for Professional Certificate |
|---|---|---|---|
| Assessment of Teaching Skills – Written (ATS-W) | Teacher Performance Assessment (Portfolio) | Assessment of Teaching Skills – Written (ATS-W) | Teacher Performance Assessment (Portfolio) |
| | Educating All Students Test | | Educating All Students Test |
| Liberal Arts And Science Test (LAST) | Academic Literacy Skills Test | Liberal Arts And Science Test (LAST) | Academic Literacy Skills Test |
| Content Specialty Test in the area of the Certificate (CST) | Revised Content Specialty Test in the Area of the Certificate (CST) | Content Specialty Test in the area of the Certificate (CST) | Content Specialty Test in the Area of the Certificate (CST) |

*Update on New Exams for Initial Certification of Teachers and School Building Leaders*, nysed.gov (Sept. 4, 2014), http://www.highered.nysed.gov/tcert/certificate/certexamsnew2014.html.

Third, the function of the ALST within the SED's certification scheme is similar to that of the LAST. Since the SED first began administering the LAST in 1993, the SED continually has required applicants to demonstrate three areas of aptitude before they become certified: (1) pedagogy (which was originally tested by the ATS-W and is now tested by the EAS and edTPA); (2) subject matter expertise in the subject the teacher intends to teach (which was originally tested by the various CSTs and is now tested by revised versions of those same CSTs); and (3) a more generalized area of knowledge. This third area originally required applicants to demonstrate knowledge of the liberal arts and sciences, including, but not limited to, literacy skills, and was tested by the LAST. The SED now requires applicants to demonstrate solely literacy skills through use of the ALST. While the domains of these two exams are not identical, it is clear that they both fulfill the similar functions within the SED's certification regime.

For all of these reasons, the Court holds that (1) the ALST is a successor of the LAST, and (2) the Court has remedial authority, pursuant to Title VII, as interpreted by *Guardians*, to assess the validity of the ALST.

## III. CONCLUSION

The Court's March 30, 2015 Order, as amended by the Court's April 3, 2015 and April 7, 2015 Order, remains in effect, notwithstanding SED's opposition thereto.

SO ORDERED.

DATED: New York, New York
April 13, 2015

/s/
KIMBA M. WOOD
United States District Judge