UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
GULINO, ET AL.,

                      Plaintiffs,                              96-CV-8414 (KMW)
                                                               **OPINION & ORDER**

-against-

THE BOARD OF EDUCATION OF THE
CITY SCHOOL DISTRICT OF THE CITY
OF NEW YORK,

                      Defendant.
------------------------------------------------------X

KIMBA M. WOOD, U.S.D.J.:

      Plaintiffs originally filed a class action complaint on November 8, 1996, alleging that the LAST-1 exam violated Title VII.  (Complaint, [ECF No. 1]).  After sixteen years of litigation,[1] this Court ruled that (1) the LAST-1 had a disparate impact on African-American and Latino test-takers; and (2) Defendant failed to prove that the test was properly validated as job-related.[2] *Gulino v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 907 F. Supp. 2d 492, 525 (S.D.N.Y. 2012)

---

[1] The case was initially assigned to the Honorable Constance Baker Motley in 1996.  In 2003, following "an epic bench trial that lasted more than eight weeks and filled over 3,600 pages of trial transcript," *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 96-CV-8414, 2003 WL 25764041 at *1, (S.D.N.Y. Sept. 4, 2003), Judge Motley ruled that the Board of Education of the New York City School District ("BOE") had not violated Title VII by adopting the New York State Education Department's requirement that teachers pass the LAST-1 in order to receive permanent licenses. *Id.* at *30-31.  Although Judge Motley held that Plaintiffs had established a prima facie case of disparate impact, *id.* at *30, she ultimately found that the LAST-1 was not unfairly discriminatory because it qualified as job-related.  *Id.* at *30-31.  On appeal, the Second Circuit affirmed in part and reversed in part.  Relevant to the instant proceedings, the panel held that Judge Motley had erred by not assessing the LAST-1's job-relatedness under the standard established in *Guardians Association of New York City Police Department, Inc. v. Civil Service Commission of the City of New York*, 630 F.2d 79 (2d Cir. 1980), and remanded so that the district court could apply that standard.  *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 380 (2d Cir. 2006).

[2] Defendant notes that it is not an intentional discriminator and that it simply followed a neutral state law.  (Defendant's Objections to the Special Master's Report and Recommendation ("Def. Objs.") at 9-10, [ECF No. 658]).  Although the Court is sympathetic to the position in which the BOE has been placed as result of the Second Circuit's decision, *see Gulino*, 460 F.3d at 370-79, that does not absolve the BOE of responsibility or compel any change in the Court's analysis.

1

(Wood, J.). On August 29, 2013, the Court certified a remedy-phase class pursuant to Rule 23(b)(3). *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 96-CV-8414, 2013 WL 4647190, at *12 (S.D.N.Y. Aug. 29, 2013) (Wood, J.). The Court appointed Special Master John S. Siffert to oversee the two-stage remedial phase, which includes resolution of both classwide and individual issues. *See* (May 20, 2014 Order of Appointment, [ECF No. 435]); (November 12, 2014 Seconded Amended Order of Appointment, [ECF No. 524]).

On July 17, 2015, Special Master Siffert issued an Interim Report and Recommendation (the "Report"), which recommends granting Defendant's motion to dismiss with respect to individuals employed as paraprofessionals and denying the motion in all other respects. The Report further recommends denying Defendant's motions to permit classwide calculation of attrition and to cut off damages for claimants who failed to obtain a teaching position after ultimately passing the LAST-1. On July 31, 2015, Defendant Board of Education of the New York City School District ("BOE") filed objections to the Report's recommendations on the Defendant's motion to dismiss and motion to permit classwide calculation of attrition. After *de novo* review of all objections, the Court agrees with the Special Master. For the reasons stated below and the reasons stated in the Report, the Court ADOPTS the Special Master's recommendations. What follows is a summary; even though the Court does not repeat here all of the Report's reasoning, the Court is in agreement with the Report in its entirety.

I.     **BACKGROUND**

After the Special Master convened several meetings with the parties in order to resolve classwide issues and legal and factual issues with the claims process, it became clear that the parties disagreed about the composition of the class, how to account for attrition, and how to treat claimants who ultimately passed the LAST-1. Report at 3-4. Defendant filed motions with

the Special Master on each of these issues, seeking to exclude certain categories of claimants and impose classwide limitations on damages.

Because neither party objects to the Report's factual background statement, *see id.* at 2-4, and the Court assumes familiarity with the Report, the Court adopts that portion of the Report in full.

## II.   STANDARD OF REVIEW

As set forth in the Second Amended Order of Appointment and consistent with Federal Rule of Civil Procedure 53(f), the Court reviews *de novo* all objections to conclusions of law made or recommended by the Special Master. (November 12, 2014 Second Amended Order of Appointment at 3, [ECF No. 524]); Fed R. Civ. P. 53(f)(4). The Court also reviews *de novo* all objections to findings of fact made or recommended by the Special Master. (November 12, 2014 Second Amended Order of Appointment at 3, [ECF No. 524]); Fed R. Civ. P. 53(f)(3).

Both the final Report and Defendant's filed objections are the products of an iterative process. The Special Master submitted two draft reports to the parties and allowed for two rounds of draft objections by both parties before issuing his final Report. Although the final Report incorporates and responds to most of Defendant's objections, Defendant's final submission raises some new arguments that are discussed below. Plaintiffs did not file objections to the final Report.

The Court has conducted a careful *de novo* review of the Report, the submissions made to the Special Master, and all related material. As explained below, the Court agrees with the Special Master's recommendations and does not find Defendant's objections persuasive.

## III.     ANALYSIS

### A.  Motion to Dismiss

Defendant has moved to dismiss certain categories of claimants on the ground that those claimants do not qualify as part of the class.  Report at 5.  In its motion to dismiss, Defendant seeks to exclude:

1. Claimants who were not employed by the BOE at the time they failed the LAST-1;

2. Claimants who were employed only as *per diem* substitute teachers or only as paraprofessionals[3] during the class period; and

3. Claimants whose LAST-1 failure(s) occurred only prior to June 29, 1995.

*Id.*  For the reasons stated below and the reasons stated in the Special Master's Report, the Court grants Defendant's motion to dismiss with respect to claimants employed only as paraprofessionals during the class period and denies Defendant's motion with respect to all other categories of claimants.

---

[3] Neither party objects to the exclusion of paraprofessionals from the class.  Paraprofessionals are defined as "teaching assistants who provide instructional services to students under the general supervision of a certified teacher."  Report at 12-14 (quoting Schools: Paraprofessionals, N.Y.C. Department of Education, http://schools.nyc.gov/Careers/Schools/Paraprofessionals.htm (last visited Sept. 21, 2015)).  A paraprofessional's responsibilities include, but are not limited to: one-on-one or small group instruction as outlined by the teacher; reinforcing behavior through the use of positive behavior support; teaching daily living skills such as independent feeding, dressing, toileting; aiding occupational therapists, physical therapists, speech therapists and adaptive physical education providers during instruction; guiding and assisting students in small group instruction settings with class routines and in transitioning from one activity to the next; teaching students, under direction of teacher in the following areas: recreation, motor, vocational, socialization and communication; assisting students with ambulation within the school premises and on class trips; lifting, feeding, toileting and diapering after receiving appropriate training; collecting data documenting student behavior for instructional purposes; writing anecdotal information concerning student behavior; and providing language assistance for bilingual students.  Careers in NYC Schools: Substitute Paraprofessionals, N.Y.C. Department of Education, http://schools.nyc.gov/Careers/SubPara (last visited Sept. 21, 2015).  Because paraprofessionals are "teaching assistants" who are not responsible for advancing student learning, they do not qualify as class members.  Report at 13.

1. Claimants Not Employed by the BOE at the Time They Failed the LAST-1

   a. *Defendant's Arguments*

Defendant asserts that the plain reading of the class definition makes clear that a claimant must have been employed by the BOE at the time s/he failed the LAST-1 because (1) the class definition uses the phrase "employed as;" and (2) excluding claimants who do not meet this criterion is consistent with the original class certification decision and with Plaintiffs' submissions in support of class certification.  (Defendant's Objections to the Special Master's Report and Recommendation ("Def. Objs.") at 1-6, [ECF No. 658]).

Defendant argues that the class definition includes only claimants who were employed by the BOE at the time they failed the LAST-1.  According to the definition, the class consists of:

> All African-American and Latino individuals employed as New York City public school teachers by Defendant, on or after June 29, 1995, who failed to achieve a qualifying score on an administration of the LAST-1 given on or before February 13, 2004, and as a result either lost or were denied a permanent teaching appointment.

(Order to Amend Class Definition at 8, [ECF No. 447]).  Defendant states that the class definition would not include the phrase "employed as New York City public school teachers by Defendant" unless claimants needed to be BOE teachers *at the time* they failed the LAST-1. Def. Objs. at 2-3.

Defendant also cites language from Judge Motley's original decision certifying the class and Plaintiffs' memorandum of law in support of the original motion for class certification to argue that the class should consist only of teachers employed by the BOE at the time they failed the LAST-1 exam.  *Id.* at 4-5.  According to Judge Motley, class members are those "teaching in the City's public schools" whose licenses have been terminated or who have been demoted to the position of *per diem* substitute teachers as a result of failing the LAST-1.  *Id.* at 4 (citing *Gulino*

5

*v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 201 F.R.D. 326, 332 (S.D.N.Y. 2001) (Motley, J.)). Plaintiffs' brief describes the class as "experienced teachers" who suffered injuries such as loss of their teaching credentials, loss of appointed positions, loss of seniority and retention rights, and reduced salary.  *Id.* at 4-5 (citing (Plaintiffs' Memorandum of Law in Support of Class Certification at 1, 2, 21, [ECF No. 34])).  According to Defendant, this description of the injuries suffered by "experienced teachers" indicates that the class definition contemplates only claimants who were already teachers at the BOE when they failed the LAST-1.  *Id.* at 5-6.

b. *Report's Recommendation*

The Court agrees with the Special Master that claimants need not have been employed by the BOE at the time they failed the LAST-1 in order to qualify as part of the class because (1) Defendant misreads the plain text of the class definition and the phrase "employed as;" and (2) Defendant's selective quotations from Judge Motley's decision and from Plaintiffs' submissions do not support its interpretation of the class definition.

Defendant's interpretation of the class definition contradicts the plain reading of the definition by reading in an additional timing requirement that a claimant must have been employed as a New York City public school teacher at the time the claimant failed the LAST-1. The two provisions of the class definition are most naturally read as independent of each other: (1) "All African-American and Latino individuals employed as New York City public school teachers by Defendant, on or after June 29, 1995;" and (2) "who failed to achieve a qualifying score [on] the LAST-1 given on or before February 13, 2004."  As the Special Master's Report states:

> [Defendant's] formulation contradicts the plain text of the class definition, and Defendant offers no compelling reason why its reading controls.  Defendant's justification for its interpretation of the class definition is that the phrase "employed as New York City public school teachers by Defendant" is superfluous

6

> unless the timing of the employment is linked to failing the LAST-1. See Def.'s Mem. of Law in Support of Its Mot. to Dismiss Certain Categories of Claimants 3. In fact, the phrase "employed as New York City public school teachers by Defendant" serves the purpose of excluding all potential teaching applicants who took and failed the LAST-1, but were never hired as teachers by BOE.

Report at 7. Rather than impute a new timing requirement to the phrase "employed as," the Court simply reads the phrase to mean what it says: a claimant must have been employed by the BOE as a teacher on or after June 29, 1995.[4]

The Court does not find Defendant's selective quotations of Judge Motley's decision and Defendant's citations of Plaintiffs' previous filings persuasive. At the outset of her opinion, Judge Motley defines Plaintiffs as "teachers in the New York City public school system who have either lost their teaching licenses or *have been prevented from obtaining a teaching license*." *Gulino*, 201 F.R.D. at 328 (emphasis added). Despite Defendant's claims to the contrary, it seems clear that Judge Motley did not limit the class to only those who were employed by the BOE at the time they failed the LAST-1. Similarly, as the Report notes, Plaintiffs' submission in support of the original class certification motion does not limit the class in the manner that Defendant advocates. *See* Report at 8. According to Plaintiffs' brief, the class includes claimants "entering the New York City Public School System after January 1991 [who were precluded] from gaining a City license and a regular appointment." (Plaintiffs' Memorandum of Law in Support of Class Certification at 19, [ECF No. 34]). Although some parts of Judge Motley's decision and Plaintiffs' brief focus on claimants who lost their position at the BOE because they failed the LAST-1, those sections should not be read to exclude claimants who failed the LAST-1 before obtaining employment at the BOE.

---

[4] As the Report notes, this lawsuit seeks recovery for the harm caused to teachers in the BOE system. Report at 9 n.8.

7

For substantially the same reasons stated in the Report and described herein, the Court agrees with the Special Master that a claimant need not have been employed by the BOE at the time s/he failed the LAST-1.

### 2. Claimants Who Were Employed Only as *Per Diem* Substitute Teachers

Defendant objects to including *per diem* substitutes in the class, arguing that (1) an individual must have an expectation of continuing in the classroom as a permanent teacher in order to qualify as part of the class; and (2) Plaintiffs' previous submissions do not contemplate the inclusion of *per diem* substitutes. Def. Objs. at 6-7. Defendant contends that the lack of an ongoing expectation of employment, in addition to the fact that *per diem* substitutes need not hold a teaching license, compels exclusion of *per diem* substitutes from the class. *Id.* Defendant also cites Plaintiffs' reply memorandum in support of the original class certification motion for the proposition that the class includes "only those who would have had a permanent appointment and license rights in New York City *but for* their failing of these tests." *Id.* at 7 (quoting (Plaintiffs' Reply Memorandum in Support of Class Certification at 3-4, [ECF 40])). Defendant points to this passage to conclude that Plaintiffs did not contemplate *per diem* substitutes as class members. *Id.*

The Court agrees with the Special Master that *per diem* substitutes can be included in the class because (1) the primary role of *per diem* substitutes is to further student learning; and (2) Plaintiffs' previous submissions are consistent with the inclusion of *per diem* substitutes.[5]

The primary responsibility of *per diem* substitute teachers is to advance student learning. Report at 11. A *per diem* substitute teacher is responsible for planning lessons, teaching

---

[5] As the Report notes, the question is not whether *per diem* substitutes or paraprofessionals can avail themselves of Title VII's protections—they certainly can—but whether they are part of the certified class. *Id.* at 10.

8

students, managing the classroom, and promoting positive student behavior.  *Id.* (citing Substitute/Per Diem Teachers, N.Y.C. Department of Education, http://schools.nyc.gov/Offices/DHR/SubTeachers.htm (last visited Sept. 21, 2015)).  A *per diem* substitute is required to have a bachelor's degree and either have a valid teaching certificate or complete a series of assessments and workshops.  Substitute/Per Diem Teachers, N.Y.C. Department of Education, http://schools.nyc.gov/Offices/DHR/SubTeachers.htm (last visited Sept. 21, 2015).  The only difference between a *per diem* substitute and a permanent substitute—whose inclusion in the class is not challenged—is that a *per diem* substitute teacher does not have the long-term planning and evaluation duties of a permanent substitute.  Report at 11.  But since the primary role of both permanent substitutes and *per diem* substitutes is "to continue student learning," and since both types of substitutes could have desired to become full-time permanent teachers—only to be denied the opportunity because they failed the LAST-1—both should qualify as part of the class.[6]  *Id.* at 11-12.

Plaintiffs' statement in their reply memorandum in support of the original class certification motion is consistent with the inclusion of *per diem* substitutes in the class.  *But for* failing the LAST-1, some *per diem* substitutes would have obtained permanent appointment and license rights in New York City.  *See* (Plaintiffs' Reply Memorandum in Support of Class Certification at 3-4, [ECF 40]).  Therefore, the inclusion of *per diem* substitutes is consistent with both the inclusion of permanent substitute teachers and with Plaintiffs' previous statements.[7]

---

[6] It is likely that some *per diem* substitutes would have become permanent teachers if they had not been required to pass the LAST-1.  *Id.* at 12 n.11.

[7] Including *per diem* substitutes is also consistent with the Court's previous reference to the topic.  (Order to Amend Class Definition at 4 n.1, [ECF No. 447] (the class likely includes individuals who "worked for Defendant as a public school teacher or as a *per diem* substitute.")).

For substantially the same reasons stated in the Report and described herein, the Court agrees with the Special Master that *per diem* substitutes can be part of the class if they establish that they intended to become, and would have become, permanent teachers, but for failing the LAST-1.

### 3. Claimants Whose LAST-1 Failure(s) Occurred Only Prior to June 29, 1995

Defendant asserts that the plain reading of the class definition precludes claimants who failed the LAST-1 prior to June 29, 1995 from qualifying as class members. Def. Objs. 3-4. To support its assertion, Defendant points to the first part of the definition: "All African-American and Latino individuals employed as New York City public school teachers by Defendant, on or after June 29, 1995." *Id.* Defendant argues that this phrase limits the class to claimants who failed the LAST-1 only *on or after* June 29, 1995. *Id.*

The Court agrees with the Special Master that the plain reading of the class definition allows claimants who failed the LAST-1 prior to June 29, 1995 to recover if they experienced the discriminatory effects of the BOE's policy after that date. Report at 15. Despite Defendant's assertions to the contrary, the temporal limitations in the class definition do not preclude recovery for those who failed the LAST-1 before June 29, 1995. *Id.* As long as claimants failed the LAST-1 on or before February 13, 2004, they are eligible to be part of the class. *Id.* The "on or after June 29, 1995" date refers only to the time on or after which a claimant must be employed by the BOE. Because the class definition contains no limitation excluding claimants who failed the LAST-1 only after a certain date, the Court declines to read such a limitation into the definition.[8]

---

[8] An additional ground for this holding is the law of this case. Judge Motley held that "plaintiffs may challenge the on-going conduct related to [the] LAST, including that on-going conduct that would not have been actionable within the 300 day period prior to filing with the Equal Employment Opportunity Commission (EEOC)."

For substantially the same reasons stated in the Report and described herein, the Court agrees with the Special Master that claimants who failed the LAST-1 prior to June 29, 1995 may seek recovery if discriminatory effects of the test were felt on or after June 29, 1995.

B. <u>Motion to Permit Classwide Calculation of Attrition Claims</u>

Defendant has moved to reduce monetary damages on a classwide basis. Defendant asserts three rationales for classwide calculation of attrition: (1) some claimants would not have been hired even if they passed the LAST-1; (2) some claimants would have left the BOE or opted for early retirement even if they passed the LAST-1 and were hired; and (3) individual hearings will overcompensate Plaintiffs. *See* Report at 15. For the reasons stated below and the reasons stated in the Special Master's Report, the Court denies Defendant's motion for classwide reductions and holds that disputes concerning hiring decisions and attrition should be resolved by individual hearings. *Id.*

1. <u>Reducing Damages Based on Hiring Decisions</u>

Defendant claims that any award of damages should be reduced to reflect the average hiring rate during the class period. *Id.* at 16. Although Defendant claims that a classwide 25% reduction is warranted because only 75% of applicants who passed the LAST-1 and fulfilled all other requirements were hired as full-time teachers, Def. Objs. at 7-8, the Court has found that qualified class members would have gone on to be permanent teachers, *Gulino*, 2013 WL 4647190, at *6 ("given the large number of vacancies for full-time teachers during the time period at issue, class members who failed LAST-1, but satisfied all other requirements, would

---

*Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, 236 F. Supp. 2d 314, 327 (S.D.N.Y. 2002) (Motley, J.).

have received a full teaching license and would have been hired as a full-time teacher."). That finding precludes any claim for a classwide reduction of 25%.

Given the Court's previous statements on this issue, the Court finds no reason to grant Defendant's motion for a classwide reduction based on hiring decisions. To the extent that Defendant believes that a specific claimant would not have been hired for some non-discriminatory reason, Defendant will have the opportunity to raise its arguments at that claimant's individual hearing. *See* Report at 17.

### 2. Reducing Damages Based on Post-Hiring Attrition

Defendant also argues that any damage award should be reduced to reflect the reality that not all teachers employed by the BOE remain in that position until retirement. *Id.* at 18. Defendant argues that a teacher may resign for any number of reasons, including relocation, illness, or a change in profession. *Id.* Defendant asserts that damages should be adjusted on a classwide basis to account for the statistical outcomes of non-class comparators. *Id.* The Court agrees with the Special Master that a classwide reduction of damages based on attrition is inappropriate. Classwide calculations would undercompensate some claimants, and overcompensate others. Individualized determinations will best recreate what would have occurred absent discrimination. *See Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 372 (1977).

This conclusion is consistent with the Court's previous ruling that additional earnings should not be determined on a classwide basis. *See* Report at 19-20. As the Report notes, Plaintiffs have argued that additional pay—such as income from teaching summer school—should be calculated on a classwide basis. *Id.* In rejecting that argument, the Court explained that "[t]hese issues are not susceptible to common proof for the class as a whole and are better

12

addressed individually at the second stage of the proceedings." *Gulino*, 2013 WL 4647190, at *7. Similar to additional income determinations, decisions about attrition and early retirement are best addressed at the individual hearing stage.[9]  *See* Report at 20.

### 3. Individual Hearings

Defendant argues that individual hearings will result in a "windfall" to Plaintiffs and a punitive backpay award against the BOE. Def. Objs. at 8-9 (citing *Iannone v. Frederic R. Harris, Inc.*, 941 F. Supp. 403, 411-12 (S.D.N.Y. 1996) (Francis, Mag. J.)). However, Title VII's goal of restoring Plaintiffs to the position they would have achieved absent discrimination can be reached here only by examining each claimant's circumstances, and estimating that claimant's damages. In that process, some claimants may be overcompensated, and others may be undercompensated. Courts have recognized the possibility that a defendant may, in this process, overcompensate some plaintiffs. *See, e.g.*, *Segar v. Smith*, 738 F.2d 1249, 1291 (D.C. Cir. 1984); *U.S. v. Bethlehem Steel Corp.*, 446 F.2d 652, 660 (2d Cir. 1971). Any unfairness to a defendant that may result, however, is viewed as tolerable, in light of the principle that any uncertainties should be construed against the wrongdoer. *See EEOC v. Joint Apprenticeship Comm. of Joint Indus. Bd. of Elec. Indus.*, 186 F.3d 110, 122 (2d Cir. 1999) (citing *Cohen v. W. Haven Bd. of Police Comm'ns*, 638 F.2d 496, 502 (2d Cir. 1980); *Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 289 (2d Cir. 1981)).

Individual hearings can best ensure that the requirements of Title VII are met and that claimants are properly compensated. Under Title VII, the Supreme Court has mandated that "the court must, as nearly as possible, recreate the conditions and relationships that would have been

---

[9] Defendant once agreed with this position. *See* (Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Certification of a Remedy-Phase Class at 6, [ECF 341] ("the end date for any backpay is individualized")).

had there been no unlawful discrimination." *Int'l Broth. of Teamsters*, 431 U.S. at 372 (internal citations and quotations omitted). Here, Defendant admits that classwide determinations might undercompensate some claimants. *See* Def. Objs. at 10 ("global application of an attrition rate might result in a given alleged discrimination victim being undercompensated"); *see also* Hearing Transcript 46:17-47:21, May 7, 2015 (Defendant's expert, Dr. Christopher Erath, implicitly acknowledges that some claimants might be undercompensated). To the extent that individual hearings may also result in the overcompensation of some individuals, that overcompensation must be tolerated as an inevitable consequence of a process that is designed to tailor awards as closely as possible to the damage suffered by the claimant. This process is fair because uncertainties are properly resolved against the wrongdoer. *See Joint Apprenticeship Comm.*, 186 F.3d at 122. Each Plaintiff must have the opportunity to offer evidence that will establish, as closely as possible, her/his own damages. *See* Report at 20-25. At individual hearings, Defendant will be free to offer evidence concerning the correct award for each claimant.[10]  *Id.* at 20-21.

For substantially the same reasons stated in the Report and described herein, the Court agrees with the Special Master that disputes concerning hiring decisions and attrition should be resolved through individual hearings rather than classwide reductions.

### C. Claimants Who Did Not Achieve a Permanent Teaching Position After Passing the LAST-1

For claimants who ultimately passed the LAST-1 but failed to obtain permanent teaching positions, Defendant objects to backpay for the periods after claimants passed the test. *Id.* at 25-

---

[10] Defendant should not underestimate its ability to show or the Special Master's ability to fairly discern the validity of claims and the nuances of different cases during individual hearings.

14

26. Defendant argues that because passing the LAST-1 removes the discriminatory hurdle to obtaining a permanent teaching position, a claimant's inability to obtain a permanent position can no longer be ascribed to the LAST-1. *Id.*

The Court agrees with the Special Master that a claimant who passed the LAST-1 but did not ultimately secure a permanent teaching position is not categorically barred from receiving a backpay award. *Id.* at 26. The mere fact that a claimant eventually passed the LAST-1 does not necessarily warrant the conclusion that his or her inability to gain employment was unrelated to the discriminatory effects of the test. *Id.* at 28. Given the existence of a vast array of hypothetical scenarios, some of which are cited in the Special Master's Report, the reasons for a claimant's failure to be hired subsequent to passing the LAST-1 should be resolved on a case-by-case basis at individual hearings. *Id.* at 27-28. The Report recommends, and the Court agrees, that Defendant be required to identify the actual reason that a claimant was denied a permanent position and establish that this reason was unrelated to the claimant's initial failure to pass the LAST-1. *Id.*

For substantially the same reasons stated in the Report and described herein, the Court agrees with the Special Master that a claimant who passed the LAST-1 but did not ultimately secure a permanent teaching position is not categorically barred from a backpay award.

## IV. CONCLUSION

For the reasons set forth above, the Court adopts the Special Master's recommendations. The Court GRANTS Defendant's motion to dismiss with respect to claimants employed by Defendant only as paraprofessionals and DENIES with respect to all other categories of claimants. The Court DENIES Defendant's motion to adjust damages for attrition on a

classwide basis.  The Court DENIES Defendant's motion to cut off damages for claimants who failed to obtain permanent teaching positions after passing the LAST-1.

      SO ORDERED.

Dated: New York, New York
      September 21, 2015

/s/
KIMBA M. WOOD
United States District Judge
