```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
GULINO, ET AL.,
```

                Plaintiffs,                          96-CV-8414 (KMW)

                                                                   **OPINION & ORDER**

-against-

```
THE BOARD OF EDUCATION OF THE
CITY SCHOOL DISTRICT OF THE CITY
OF NEW YORK,
```

                Defendant.
--------------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

       On June 13, 2016, Special Master Siffert issued an Interim Report and Recommendation (the "Report"), which addressed (1) Defendant's motion to categorically dismiss certain *per diem* teachers who did not become Provisional Preparatory Teachers, and (2) the damages model to be used at individual hearings. First, the Report recommends denying Defendant's motion to dismiss those claimants who worked as *per diem* substitute teachers prior to 2003 without becoming Provisional Preparatory Teachers. Second, the Report recommends denying the parties' requests for default rulings applicable to all class members as a matter of law, because the damages issues raised are not susceptible to class-wide determination. On June 27, 2016, Defendant Board of Education of the New York City School District ("BOE") filed objections to the Report's recommendations regarding the damages model and individual hearings.

       After *de novo* review of all objections, the Court agrees with the Special Master. For the reasons stated below and the reasons stated in the Report, the Court ADOPTS the Special

1

Master's recommendations. What follows is a summary; even though the Court does not repeat here all of the Report's reasoning, the Court is in agreement with the Report in its entirety.

## I.   BACKGROUND

Because neither party objects to the Report's factual background statement, and the Court assumes familiarity with the Report, the Court adopts that portion of the Report in full. *See* (June 13, 2016 Interim Report and Recommendation (the "Report") at 2-4 [Doc. No. 777]).[1]

## II.   STANDARD OF REVIEW

As set forth in the Second Amended Order of Appointment and consistent with Federal Rule of Civil Procedure 53(f), the Court reviews *de novo* all objections to conclusions of law made or recommended by the Special Master. (November 12, 2014 Second Amended Order of Appointment at 3 [Doc. No. 524]); Fed. R. Civ. P. 53(f)(4). The Court also reviews *de novo* all objections to findings of fact made or recommended by the Special Master. (November 12, 2014 Second Amended Order of Appointment at 3); Fed. R. Civ. P. 53(f)(3).

Both the final Report and Defendant's filed objections are the products of an iterative process. The Special Master's Report follows extensive briefing by the parties and multiple conferences with the parties and their damages experts. The Special Master submitted one draft summary memorandum and one draft report to the parties and allowed for two rounds of draft objections by both parties before issuing his final Report. *See* Report at 3 & n.1. Although the

---

[1] The twenty-year history of this case was set forth in this Court's previous decisions. *See Gulino v. Bd. of Educ.*, 96-CV-8414, 2015 WL 3536694, at *3 (S.D.N.Y. June 5, 2015) (Wood, J.); *Gulino v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 2015 WL 3536694 (Wood, J.) (finding the LAST-2 to be discriminatory under Title VII); *Gulino v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 907 F. Supp. 2d 492 (S.D.N.Y. 2012) (Wood, J.) (finding the LAST-1 to be discriminatory under Title VII on remand); *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361 (2d Cir. 2006) (partially affirming and reversing Judge Motley's original liability decision); *Gulino v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, No. 96-CV-8414, 2003 WL 25764041 (S.D.N.Y. Sept. 4, 2003) (Motley, J.) (original liability opinion); *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, 201 F.R.D. 326 (S.D.N.Y. 2001) (Motley, J.).

2

final Report incorporates and responds to a few of Defendant's objections, Defendant's final submission raises some new arguments that are discussed below. Plaintiffs did not file objections to the final Report.

The Report proceeds in two parts. First, the Special Master addresses Defendant's motion to categorically dismiss those 232 claimants who were employed as *per diem* substitute teachers prior to 2003, but who did not become Provisional Preparatory Teachers. The Special Master recommends denying Defendant's motion, because individual hearings are necessary to determine whether claimants were denied permanent teaching positions as a result of their LAST scores.[2] *See* Report at 4-7. Since Defendant does not object to that portion of the Report, the Court adopts the Special Master's recommendation.[3]

Second, the Special Master addresses the damages model to be used at individual hearings. The Special Master recommends denying the parties' request for default rulings applicable to all class members as a matter of law, because issues of fact remain to be decided at individual hearings. The Court has conducted a careful *de novo* review of the Report, the submissions made to the Special Master, and all related material. As explained below, the Court agrees with the Special Master's recommendations and does not find Defendant's objections persuasive.[4]

---

[2] The Court agrees with the Special Master that Defendant is free to raise the Provisional Preparatory Teachers issue at individual hearings. *See* Report at 5-7.

[3] The Court also adopts the Special Master's conclusion regarding post-BOE employment, because there are no objections to his conclusion that Plaintiff's claim for loss of future earning capacity is a form of compensatory damages not available in this case. *See id.* at 26-28; *see also* 42 U.S.C. § 1981a(a)(l); *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952 (7th Cir. 1998).

[4] Where noted below, the Court does accept a few clarifications noted in Defendant's objections.

**III.   DISCUSSION**

A.  <u>The Special Master's Report</u>

Both parties have submitted proposed expert reports regarding the damage model to be used at individual hearings, and both seek default rulings applicable to all class members as a matter of law.  In the Report, the Special Master addresses the parties' agreements and disagreements regarding the damage model, including the appropriate standards and the burdens of proof for (1) lost BOE salary; (2) health care costs; (3) pension benefits; (4) tax adjustments; and (5) mitigation.  After examining each of these issues individually, the Report recommends denying Plaintiff's and Defendant's requests for rulings as a matter of law, because these issues must be resolved at individual hearings.[5]  The Court agrees.

*(1) Lost Salary*

The Special Master concluded that individual hearings at which both parties can offer relevant evidence are necessary to determine the salary a class member would have earned absent discrimination.  *See* Report at 10-26.  The damage model should predict how each class member would have advanced through salary steps over the course of her career and should calculate the wages that the class member would have earned had he or she not been forced to

---

[5] The fact-specific questions that need to be resolved at individual hearings include:
1) how long it would have taken a class member to achieve a permanent teaching position after passing the LAST;
2) how a class member would have advanced through the higher educational requirements for permanently appointed teachers;
3) how a class member would have advanced through the BOE's salary steps, including how long the class member would have worked at the BOE as a permanently appointed teacher;
4) the proper measure of damages for out-of-pocket health care expenses that would have been covered if the class member had been a permanently appointed teacher;
5) whether a tax adjustment should be awarded to compensate a class member for the tax consequences of receiving a lump sum backpay award in a single tax year; and
6) whether a class member satisfied the duty to mitigate and the amount of interim earnings that should be deducted from the class member's gross backpay award.

Report at 8.

take the discriminatory LAST.  *Id.* at 10-11.  After examining the salary table, [6] the Special Master addressed the three inputs necessary to determine a class member's counterfactual salary: counterfactual appointment dates, counterfactual educational advancement, and counterfactual step advancement.[7]  *See id.* at 11-26.  The Special Master properly concluded that "when a class member would have been appointed, the level of graduate education she would have obtained, how she would have advanced along the salary steps, and how long she would have remained with the BOE are all individualized questions of fact which Plaintiffs are entitled to litigate at individual hearings."  *Id.* at 26.

   *(2) Health Care Costs*

The Special Master correctly concluded that under Title VII, class members are entitled to recover for loss of health benefits.  *See id.* at 28-29; *see Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993).  Although there is a split of authority over whether plaintiffs can recover out-of-pocket costs or lost premiums, the Court agrees with the Report and "[m]ost district courts in the Second Circuit" in holding that class members are entitled to recover out-of-pocket expenses.  *See United States v. City of N.Y. (Vulcans)*, 847 F. Supp. 2d 395, 422 (E.D.N.Y. 2012) (citing *Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 582-83 (S.D.N.Y. 2010) (Gardephe, J.)).  Class members will bear the burden of establishing their out-of-pocket health care costs, and other fringe benefits, at individual hearings.

---

[6] The Court accepts Defendant's clarifications regarding longevity pay calculations and footnote eleven in the Report.  *See* (Defendant's June 27, 2016 Objections ("Def.'s Obj.") at 2 [Doc. No. 783]).

[7] The "counterfactual" salary calculations are estimates of what a class member would have earned absent Defendant's discriminatory conduct.

*(3) Pension Benefits*

The Special Master concluded that findings of fact are necessary to determine the pension each plaintiff would have received absent Defendant's discrimination. *See* Report at 29-30. Although the parties agree that class members are entitled to the lost pensions they would have received absent the discriminatory LAST, calculating the amount owed each individual is complicated and requires findings of fact.[8] *Id.* Thus, individual hearings are the proper procedure for determining each class member's entitlements pursuant to the Teacher Retirement System and other pensions. *See id.*

*(4) Tax Adjustments*

The Special Master concluded that class members are entitled to present evidence at individual hearings that a tax-component award (a "tax gross-up") is necessary to compensate claimants fully for the additional tax liability they will incur as a result of receiving years of backpay in one lump sum. *Id.* at 30-32. Plaintiffs argue that a lump sum backpay award may force class members to pay more in taxes than they would have absent the BOE's discriminatory conduct. *See* (Plaintiff's March 4, 2016 Letter at 27-29). The Court agrees with the Special Master, the Third Circuit, Seventh Circuit, and Tenth Circuit that a tax gross-up is appropriate when necessary to make a claimant whole. *See E.E.O.C. v. N. Star Hosp., Inc.*, 777 F.3d 898, 903-05 (7th Cir. 2015); *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 441-42 (3d Cir. 2009); *Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1456 (10th Cir. 1984). However, as the

---

[8] Claimants are not required to pay back interest on their pension contributions, because any delay in claimants' pension contributions was the result of Defendant's discriminatory conduct. Title VII demands that persons be made whole for the injuries suffered as a result of unlawful discrimination, which in this case includes the delay in claimants' pension contributions. *See United States v. City of N.Y. (Vulcans)*, No. 07-CV-2067, 2015 WL 1800245, at *2-*9 (E.D.N.Y. Apr. 16, 2015).

6

Report notes, there may be cases where a tax adjustment lowers, rather than increases, awards for class members. *See* Report at 32.

*(5) Mitigation*

The Special Master concluded that the amounts a claimant earned from other employment, or from any interim employment that was available to her or him through reasonable efforts, must be deducted from the backpay a claimant would have earned as an employee of the BOE. *See* Report at 32-33; *Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 96-CV-8414, 2013 WL 4647190, at *7 (S.D.N.Y. Aug. 29, 2013) (Wood, J.). Title VII provides that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(l). Accordingly, a Title VII plaintiff "must attempt to mitigate her damages by using 'reasonable diligence in finding other suitable employment.'" *Dailey v. Societe Generale*, 108 F.3d 451, 455 (2d Cir. 1997) (quoting *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982)). Defendant bears the burden of proving the amounts to be deducted from backpay and proving that a claimant failed to satisfy her/his duty to mitigate.[9] Report at 33.

B. <u>Defendant's Objections</u>

Defendant objects to the Report, arguing that by allowing individual hearings to decide many of the backpay issues, the Report ignores reality and replaces it with "counterfactual speculation." (Defendant's June 27, 2016 Objections ("Def.'s Obj.") at 2 [Doc. No. 783]). Defendant asserts that the parties have actual data on the factors that affect a claimant's backpay

---

[9] The Court agrees with the Special Master that, "Defendant is not entitled, however, to a ruling as a matter of law that any class member whose earnings dipped below a certain threshold voluntarily withdrew from the labor market, terminating their damages at that point in time." Report at 33. This issue must be decided at individual hearings.

amount, such as: whether claimants obtained an advanced degree, how claimants advanced to higher salary grades, and how long it took claimants to become permanently appointed teachers after passing the LAST.[10]  *See id.* 2-4.  Defendant wants the Special Master and the Court to assume, for example, that because a claimant did not receive a master's degree after failing to pass the discriminatory LAST exam, that claimant would have failed to obtain a master's degree even if she were not required to take the discriminatory LAST exam.  *Id.* at 3.  Defendant believes that by requiring individual hearings, rather than making categorical rulings, the Report entertains "claimant fantasies" about what would have happened to claimants absent Defendant's discriminatory conduct.[11]  *Id.* at 2.

C. Defendant's Objections are Unavailing

The Court finds that Title VII's goals can best be reached here by examining each claimant's circumstances at individual hearings.  *See Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 96-CV-8414, 2015 WL 5603020, at *7 (S.D.N.Y. Sept. 21, 2015) (Wood, J.).

The primary goals of Title VII are to remove discriminatory barriers and make persons whole for injuries suffered as a result of unlawful employment discrimination.  *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975).  "Once a violation of Title VII is established, the district court possesses broad power as a court of equity to remedy the vestiges of past discriminatory practices."  *Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 278 (2d Cir. 1981) (quoting *Rios v. Enter. Ass'n Steamfitters Local 638 of U. A.*, 501 F.2d 622, 629 (2d Cir. 1974)); *see Louisiana v. United States*, 380 U.S. 145,

---

[10] Similarly, Defendant argues that "fact rather than fantasy" should be used to decide issues regarding attrition, claimants who were probationary teachers and were fired, and claimants who eventually passed the LAST but did not become BOE teachers.  *See* Def.'s Obj. at 2-4.

[11] To address Defendant's concern that the Report does not address important issues, the parties may seek to discuss the efficacy of an additional round of briefing and another Report and Recommendation to resolve any lingering issues.

154 (1965) ("[T]he court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future."). Although this power is not unfettered, uncertainties should be construed against the wrongdoer. *See Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 156 (3d Cir. 1999) (citing *Wooldridge v. Marlene Indus. Corp.*, 875 F.2d 540, 549 (6th Cir. 1989)); *E.E.O.C. v. Joint Apprenticeship Comm. of Joint Indus. Bd. of Elec. Indus.*, 186 F.3d 110, 122 (2d Cir. 1999) (citing *Cohen v. W. Haven Bd. of Police Comm'ns*, 638 F.2d 496, 502 (2d Cir. 1980)); *Ass'n Against Discrimination in Employment*, 647 F.2d at 289.

Defendant asks the Court to ignore Title VII's primary goals and decide uncertainties against the injured party. Defendant argues that the Court should assume that simply because the post-discrimination reality produced certain outcomes, those outcomes necessarily would have occurred absent the discrimination. Although Defendant may be correct that, in some instances, claimants' real life outcomes were not influenced by Defendant's discrimination, Defendant is not entitled to a categorical ruling on the matter.

The Court has not only the power, but also the duty, to ensure that class members are made whole. This requires determining whether a claimant's educational advancement, salary level, appointment time, or any of the other issues identified by the Special Master were tainted by Defendant's discriminatory conduct. These fact-intensive issues cannot be determined without individual hearings. The individual hearings outlined in the Special Master's Report ensure that both Plaintiffs and Defendant are provided the proper opportunity to submit relevant evidence in order to, "as nearly as possible, recreate the conditions and relationships that would have been had there been no unlawful discrimination." *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 372 (1977) (internal citations and quotations omitted).

As noted in the Special Master's Report, courts will use evidence of what actually happened when the events that transpired are not tainted by the defendant's discriminatory action. Report at 16. In *Saulpaugh v. Monroe County Hospital*, the Second Circuit found that the plaintiff could not recover backpay after the date she became disabled, because her disability was not the result of the defendant's discriminatory conduct. 4 F.3d 134, 145 (2d Cir. 1993). In this case, however, Defendant BOE cannot claim that a certain claimant's appointment lag or educational advancement was categorically not the result of its discriminatory conduct. Accordingly, because Defendant's discriminatory conduct may have influenced a claimant's prospects, the Court agrees with the Special Master that individual hearings are necessary. *See Gulino*, 2015 WL 5603020, at *7 ("Individual hearings can best ensure that the requirements of Title VII are met and that claimants are properly compensated.")

## IV. CONCLUSION

For substantially the same reasons stated in the Report and described herein, the Court ADOPTS the June 13, 2016 Interim Report and Recommendation.


SO ORDERED.

Dated: New York, New York
      August 3, 2016

/s/
KIMBA M. WOOD
United States District Judge