UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
GULINO, ET AL.,

        Plaintiffs,

    -against-

THE BOARD OF EDUCATION OF THE
CITY SCHOOL DISTRICT OF THE CITY
OF NEW YORK,

        Defendant.
--------------------------------------------------------X

96-CV-8414 (KMW)

**ORDER**

KIMBA M. WOOD, District Judge:

The Court hereby adopts the Special the Master's September 7, 2018 Report and Recommendation (ECF No. 999), regarding the Classwide Conclusions of Law, the Stipulation of Classwide Facts and Procedures, and the Stipulation of the Admissibility of Exhibits.

The Court also adopts the Classwide Conclusions of Law appended to the Report and Recommendation and attached here.

SO ORDERED.

Dated: New York, New York
       December 14, 2018

                        THE HON. KIMBA M. WOOD
                        United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

ELSA GULINO, MAYLING RALPH, PETER WILDS,
and NIA GREENE, on behalf of themselves and all others
similarly situated,

                              Plaintiffs,

             - against -

THE BOARD OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF NEW YORK,

                              Defendant.

96 Civ. 8414 (KMW)

------------------------------------------------------------------------ x

## CLASSWIDE CONCLUSIONS OF LAW

### I. CONCLUSIONS OF LAW—JURISDICTION

    A.    This Court has subject matter jurisdiction over Plaintiffs' Title VII claims pursuant to 42 U.S.C. § 2000e-5(f)(3).[1] Plaintiffs have timely filed claims alleging discrimination by Defendant with the United States Equal Employment Opportunity Commission. In October 1996, the United States Attorney General issued Plaintiffs notices informing them of their right to sue the Board of Education of the City School District of the City of New York ("BOE" or "Defendant") in federal court based on the discrimination allegations.[2] Plaintiffs brought the action within 90 days of the Attorney General's notice.[3]

### II. CONCLUSIONS OF LAW—DAMAGES

    A.    <u>Damages, Generally, under Title VII</u>

            1.    Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[4]

---

[1] 42 U.S.C. § 2000e-5(f)(3).

[2] *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, 236 F. Supp. 2d 314, 322 (S.D.N.Y. 2002).

[3] Complaint, ECF No. 1.

[4] 42 U.S.C. § 2000e-2(a).

1

2. The remedial principle underlying Title VII is to "make persons whole for injuries suffered on account of unlawful employment discrimination."[5]

3. This Court is afforded broad equitable authority to remedy Title VII violations.[6]

4. To determine appropriate relief, the Court must "as nearly as possible, recreate the conditions and relationships that would have been had there been no unlawful discrimination" and remedy injured parties by placing them in the same position they would have been absent the defendant's discrimination.[7]

5. Backpay is a component of Title VII relief.[8]

6. Backpay is intended to "completely redress the economic injury the plaintiff has suffered as a result of discrimination."[9]

7. A plaintiff must establish the amount of backpay necessary to remedy the effects of past discrimination.[10]

8. Where, as here, the Court has found Defendant liable for discrimination, a class claimant may make a *prima facie* showing that he or she is entitled to backpay.[11] In this case, the burden then shifts to Defendant to rebut this *prima facie* showing by proving that the class member would not have been permanently appointed as a teacher absent discrimination.[12]

9. Uncertainties are resolved against the party responsible for the lack of certainty.[13]

10. The parties have agreed that the BOE will not need to raise certain factors that it considers in determining whether to offer an individual employment as a teacher, as enumerated in the Stipulation and Order dated March 23, 2015, before the Special Master in order to preserve the BOE's right to consider these factors when the BOE determines whether to make a claimant an offer of employment as a teacher in the normal course of business.

---

[5] *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975); *see also United States v. City of N.Y.*, 847 F. Supp. 2d 395, 408 (E.D.N.Y. 2012) (noting same).

[6] *See, e.g., United States v. City of N.Y.*, 731 F. Supp. 2d 291, 297 (E.D.N.Y. 2010).

[7] *Ingram v. Madison Square Garden Ctr. Inc.*, 709 F.2d 807, 811 (2d Cir. 1983) (internal quotation omitted); *see also Albemarle Paper Co.*, 422 U.S. at 418.

[8] *See EEOC v. Joint Apprenticeship Comm. of the Joint Indus. Bd. of Elec. Indus.*, 186 F.3d 110, 122-23 (2d Cir. 1998).

[9] *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993) (citation omitted).

[10] *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 298, 305, 308 (S.D.N.Y. 2008).

[11] *See Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 289 (2d Cir. 1981) ("*AADE*"); *Marks v. Prattco, Inc.*, 633 F.2d 1122, 1125 (5th Cir. 1981); *Garcia v. Sigmatron Int'l, Inc.*, No. 11C07604, 2015 WL 5462141, at *2 (N.D. Ill. Sept. 17, 2015).

[12] *See AADE*, 647 F.2d at 289.

[13] *See id.*; *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, Opinion & Order, 1:96-cv-08414 at 13-14, dated September 21, 2015, ECF No. 674.

The parties have agreed that the BOE will not raise any of these factors as a defense or offset to the claims for monetary relief by any claimants in this case, except to the extent that any of these factors were actually the basis of (a) a for-cause termination; or (b) the initiation of a termination proceeding, or a disciplinary or investigatory proceeding, that allegedly would have resulted in the claimant's inevitable termination. The BOE will not raise any of these factors as a basis to argue that a claimant has not fulfilled the necessary requirements to be deemed Certified by the Court pursuant to the Court's Order of November 24, 2014. Except as limited by the Court's Order of November 24, 2014, nothing in the March 23, 2015 Stipulation and Order limits the BOE's discretion in deciding whether to offer a claimant employment as teacher.[14]

B. Specific Damages Based on Individual Determinations

1. *Appointment Date/Beginning of Damages*

a) Teachers generally did not become permanently appointed teachers immediately after passing the Liberal Arts and Sciences Test ("LAST"). Normally, after passing the LAST, teachers experienced a lag of several months before they achieved a regularly appointed teacher position.[15] Based on the evidence provided by the parties, and absent any other evidence to the contrary, the Court assumes an 18-month lag period between a class member's first failure of the LAST and the class member's counterfactual appointment as a permanent, regularly appointed teacher.[16]

b) When a class member was employed by the BOE as a teacher and was demoted to a substitute teacher after failing the LAST, the Court does not impose a lag period between the first LAST failure and the date of permanent appointment, based on an assumption that the class member would not have been demoted and, instead, would have remained in the regular teaching position absent the BOE's discrimination.[17]

2. *Educational Advancement Dates*

a) The salary a class member would have earned is determined by the BOE's and the United Federation of Teachers' agreed-upon salary table.[18]

---

[14] *See Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, Stipulation and Order, 1:96-cv-08414, dated March 23, 2015, ECF No. 571.

[15] Special Master's June 13, 2016 Interim Report and Recommendation ("June 13 IRR"), at 14, ECF No. 777, *adopted by* Opinion & Order, dated August 3, 2016, ECF No. 800.

[16] *Id.* at 14-15.

[17] *See id.* at 14 & n. 13.

[18] *Id.* at 11.

b)  Certain class members attended Masters' programs that required a certificate from New York State in order to enroll in, or graduate from, the programs.[19]

c)  Because of certain class members' inability to pass the LAST, they could not enroll in, or graduate from, such programs and had their educational advancement delayed or hindered.[20]

d)  Based on the salary table, a class member's salary will be determined by reviewing the number of years the class member would have worked as a teacher for the BOE and the educational advancement the class member had or would have had absent the discrimination.[21]

3.  *Damages End Date*—Backpay will ordinarily run until the date of judgment provided that Plaintiffs have adduced evidence that, absent the discrimination, their employment would have continued until that date.[22]

4.  *Mitigation*

a)  Class members' mitigation of backpay and pension damages will be computed on a monthly basis.[23]

b)  The parties have also reached a compromise agreement regarding mitigation. The parties stipulated that instead of conducting a hearing on the issues of (1) whether Defendant has carried its burden of establishing the availability of suitable work for each class member; and (2) whether the class member conducted a reasonable job search, the parties may agree to use stipulated numbers for the class member's monthly mitigation earnings (the "Stipulated Mitigation Amounts"). The parties also stipulated that when either party requests an individual hearing regarding a class member's mitigation efforts, and the Special Master finds that a class member has not conducted a reasonable job search for certain months, the class member's mitigation amounts in those months will be the Stipulated Mitigation Amounts. In addition, Defendant agreed it would not object to or preserve for appeal any objections to mitigation-related rulings made before February 15,

---

[19] *Id.* at 17-18.

[20] *Id.*

[21] *Id.* at 11; *see, e.g.*, Stipulated Exhibit T, Agreement Between the Bd. of Educ. of the City Sch. Dist. of the City of N.Y. and the United Fed'n of Teachers Local 2, Am. Fed'n of Teachers, AFL-CIO Covering Teachers, Oct. 16, 1995-Nov. 15, 2000 at GULEX 1600.000194-196.

[22] June 13 IRR at 23 n.20, ECF No. 777; *see also Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir. 1992).

[23] *Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 96-cv-8414 (KMW), 2013 WL 4647190, at *9 (S.D.N.Y. Aug. 29, 2013) ("Using a periodic method [for calculating backpay damages] is appropriate in this case[.]").

4

2017, including the Court's finding that mitigation should be determined on a monthly basis rather than on an annual basis.[24]

5. *Out-of-Pocket Health Expenses*

a) Title VII backpay awards also include fringe benefits a class member would have received from the former employer absent discrimination.[25] Health care is a fringe benefit.[26]

b) To receive compensation for health care costs, individual class members must prove that "they suffered an out-of-pocket expense due to the denial of access to… [D]efendant's health insurance."[27]

6. *Front Pay*

a) Front pay is an element of Title VII's "make whole" relief award when a plaintiff's reinstatement with an employer is inappropriate or unavailable.[28]

b) In determining whether front pay damages are appropriate, three factors must be satisfied: (1) reinstatement must be impossible or impracticable; (2) the plaintiff must not have a reasonable prospect of obtaining comparable employment; and (3) the calculation of front pay must not involve "undue speculation."[29]

7. *LAST Fees*—Pursuant to Title VII, a plaintiff should be restored to "a position where they would have been were it not for the unlawful discrimination."[30] The Court finds that a class member should recoup his or her LAST fees.[31]

8. *Pension*—Pursuant to Title VII, a plaintiff should be restored to the fullest extent possible to "a position where they would have been were it not for the unlawful discrimination."[32] Both parties agree that class members are entitled to the lost New York City Teachers' Retirement System ("TRS")

---

[24] *See* February 15, 2017 Special Master Conference Summary, at GULCS 000132-40.

[25] *See Lewis v. District of Columbia*, 791 F. Supp. 2d 136, 142-43 (D.D.C. 2011); *EEOC v. Kallir, Philips, Ross, Inc.*, 420 F. Supp. 919, 924 (S.D.N.Y. 1976).

[26] June 13 IRR at 28-29, ECF No. 777.

[27] *Id.*; *see also United States v. City of N.Y.*, 847 F. Supp. 2d at 422.

[28] June 13 IRR at 23 n.20, ECF No. 777; *see also Broadnax v. City of New Haven*, 141 F. App'x 18 (2d Cir. 2005) (summary order) (citing *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001)).

[29] *Shannon v. Fireman's Fund Ins. Co.*, 136 F. Supp. 2d 225, 233 (S.D.N.Y. 2001); *Bergerson v. N.Y. State of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 287-88 (2d Cir. 2011); *see also Padilla v. Metro North Commuter R.R.*, 92 F.3d 117, 125-26 (2d Cir. 1996).

[30] *Albemarle Paper Co.*, 422 U.S. at 421.

[31] Defendant asserts that it has preserved its objection to this finding/conclusion of law.

[32] *Albemarle Paper Co.*, 422 U.S. at 421; *see, e.g., Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 252 (5th Cir. 1974).

pensions they would have earned absent the BOE's discrimination.[33] Accordingly, a class member who retired before the date of judgment should be entitled to any lost pension payments from the date of retirement until the date of judgment, which were the result of the BOE's discrimination. The scope and amounts of each class member's pension-related relief will be determined pursuant to the procedures set forth in the Pension Stipulation and Order.[34]

9. *Annuity Savings Accumulation Fund ("ASAF") Benefits*

   a) When a regularly appointed BOE teacher reaches salary level 8B, the BOE begins to contribute $33.33 every month into an ASAF account for that individual.[35]

   b) The BOE does not contest that class members are entitled to the contributions the BOE would have made to their ASAF accounts absent the BOE's discrimination.

10. *Post-Retirement Health Care Benefits*—Defendant agrees that class members who, after receiving credit for the counterfactual service ordered by their judgments in this case meet the requirement of Administrative Code section 12-126, and will be, or are, members of a New York City pension system are entitled to the same retirement health care benefits that they would have received absent discrimination.

11. *Tax-Component Award*

    a) Some courts in Title VII cases have found that it is appropriate for backpay and front pay awards to account for the extra tax liability class members would not have been responsible for absent the employer's discrimination.[36]

    b) Plaintiffs bear the burden of proving that a tax-component award is necessary to make the class member whole.[37] The Special Master has determined that following individual hearings, the Court will award the difference between the taxes that the class member will have to pay on the award and the taxes he or she would have had to pay absent discrimination if he or she received the award as income over a period of years.[38]

---

[33] June 13 IRR at 29, ECF No. 777.

[34] Pension Stipulation and Order, (ECF No. ___).

[35] *See* Stipulation of Classwide Facts and Procedures § I(4)(A).

[36] June 13 IRR at 30-32, ECF No. 777; *see also Clemens v. CenturyLink*, 874 F. 3d 1113, 2017 WL 5013661 (9th Cir. 2017); *EEOC v. N. Star Hospitality, Inc.*, 777 F.3d 898 (7th Cir. 2015); *Eschelman v. Agere Sys., Inc.*, 554 F.3d 426 (3d Cir. 2009); *Sears v. Atchinson, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1456 (10th Cir. 1984).

[37] June 13 IRR at 32, ECF No. 777.

[38] *Id.* at 31-32, ECF No. 777. Defendant asserts that it has preserved its objection to this finding.

12.  *Retroactive Seniority Adjustments*

   a) Courts in Title VII cases have found that granting retroactive seniority is a basic component of make whole relief because it restores aggrieved persons to the position they would have occupied but for the unlawful discrimination, and prevents the perpetuation of the effects of past discrimination against them.[39]

   b) As a result of the BOE's discrimination, certain class members lost or were denied regularly appointed teacher positions and, therefore, lost or were denied the seniority to which they would have been entitled as regularly appointed teachers. This Court has previously found that Defendant bears the burden to rebut individual class members' claims for seniority rights by presenting non-discriminatory reasons why a particular class member was not promoted.[40]

   c) Defendant does not contest, under the law of the case and established case law, and the Court finds, that class members are entitled to retroactive seniority based on their counterfactual service.[41] The parties agree that retroactive seniority cannot be used to determine a class member's: (1) eligibility for tenure; (2) in-school assignment seniority; (3) inter-school transfer seniority; and (4) compensatory time position assignment seniority.[42] Furthermore, class members are not entitled to retroactive seniority based on counterfactual service for the

---

[39] *See Acha v. Beame*, 531 F.2d 648, 656 (2d Cir. 1976) (finding an "[a]ward of seniority to those who had actually been discriminated against by these defendants is not a 'preference' because of sex. It is rather a remedial device well within the broad power conferred on the district court"); *Wrenn v. Sec'y, Dep't of Veterans Affairs*, 918 F.2d 1073, 1077 (2d Cir. 1990) (finding retroactive seniority one of the basic components of "make whole" relief in hiring discrimination cases); *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 779 n. 41 (1976) (noting that there is a presumption in favor of awarding retroactive seniority to remedy violations of Title VII and that such relief "may not be denied on the abstract basis of adverse impact upon interests of other employees" but may be denied only "on the basis of unusual adverse impact arising from facts and circumstances that would not be generally found in Title VII cases."); *United States v. City of N.Y.*, 905 F. Supp. 2d 438, 447-48 (E.D.N.Y. 2012) (granting retroactive seniority despite objections that the use of retroactive seniority in the promotions process would result in inexperienced or unqualified individuals being promoted to leadership positions and finding that fears regarding award of retroactive seniority were unfounded, because retroactive seniority could not "be used to satisfy time-in-grade requirements that a firefighter must satisfy before sitting for a promotional exam," meaning "that a candidate must work as a firefighter for a requisite number of years, depending on the position, and meet all other requirements in order to be eligible for the promotion he or she seeks").

[40] *See Gulino v. Board of Educ. of City School Dist. of City of N.Y.*, 907 F. Supp. 2d 492, 508 (S.D.N.Y. Dec. 5, 2012) ("Under Title VII, once an employee shows that a particular test has a disparate impact, the burden shifts to the employer to show that it had legitimate, job-related reasons for denying a particular individual the benefits claimed... Here, just as in *Wal-Mart*, the Board should have the opportunity to rebut individual plaintiff's claims for seniority rights and teaching licenses by presenting legitimate, job-related reasons why a particular individual was not promoted or did not receive a teaching license.") (internal citations omitted).

[41] *See* January 24, 2018 Special Master Conference Summary at GULCS 000382 ("The parties stated that they agree claimants will receive retroactive seniority with respect to salary-step advancement, longevity bonuses, accrual of years of service for pension, post-retirement health care benefits, accrual of CAR days, sabbatical leave rights, restoration of health leave rights, and hardship transfers.").

[42] *See id.*

purposes of layoff seniority,[43] which is used to determine teachers' excessing rights and layoff rights, unless that relief is specifically granted.

d)   On an individual basis, class members may seek adjustments to their BOE layoff seniority, based on each class member's counterfactual service.[44]

---

[43] "Layoff seniority" is being used here as it is used in Article Seventeen Section B (Excessing Rule – Appointed Teachers) of the Collective Bargaining Agreement between BOE and UFT covering 2009-2018, available at http://www.uft.org/files/attachments/teachers-contract-2009-2018.pdf.

[44] *See* January 24, 2018 Special Master Conference Summary, at GULCS 000380-87.