USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/12/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
ELSA GULINO, ET AL.,

                         Plaintiffs,

-against-

THE BOARD OF EDUCATION OF THE
CITY SCHOOL DISTRICT OF THE CITY
OF NEW YORK,

                         Defendant.
------------------------------------------------------X

96-CV-8414 (KMW)

**OPINION AND ORDER**

KIMBA M. WOOD, United States District Judge:

The Board of Education of the City School District of the City of New York ("the City") moves to stay enforcement of all judgments in this case pending appeal. For the reasons stated below, the City's motion is GRANTED in part and DENIED in part.

## BACKGROUND

The Court presumes the parties' familiarity with the facts and procedural history of this action, which are fully described in the previous opinions of this Court. *See, e.g., Gulino v. Bd. of Educ.*, 201 F.R.D. 326 (S.D.N.Y. 2001) (Motley, J.); *Gulino v. Bd. of Educ.*, 907 F. Supp. 2d 492 (S.D.N.Y. 2012) (Wood, J.). Rather than repeat those facts, the Court will recite only the facts related to the present motion.

On March 13, 2019, this Court began entering judgments in favor of the individual plaintiffs, and against the City, in this action. (*See, e.g.*, ECF No. 1106.) Each judgment has been certified as final and appealable pursuant to Federal Rule of Civil Procedure 54(b). (*See, e.g., id.*) On April 29, 2019, the City moved to stay enforcement of the previously-entered judgments, as well as any future judgments, under Federal Rule of Civil Procedure 62(b). (ECF

1

No. 1473.) On May 13, 2019, plaintiffs filed their response, which opposes the motion to stay to the extent that the City seeks to stay the *non-monetary* relief granted in the judgments. (ECF No. 1524). On May 20, 2019, the City filed its reply. (ECF No. 1542.)

## DISCUSSION

### I. Rule 62(b)

As an initial matter, the City maintains that it is entitled to a stay of *every* aspect of the judgments pursuant to Rule 62(b).[1] Rule 62(b) provides, in relevant part, that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). However, Rule 62(b) applies only to stays of money judgments. *See Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F. Supp. 2d 186, 188 (S.D.N.Y. 2007) (Sullivan, J.) ("[I]t is well-settled that subsection [(b)] applies *exclusively* to stays of money judgments . . . ." (emphasis added)). Where the relief provided by an order is injunctive, Rule 62(d) governs. *Id.* at 189.[2] Rule 62(d) provides, in relevant part, that "[w]hile an appeal is pending from a . . . final judgment that grants . . . an injunction, the court may suspend [or] modify [the] injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). In determining the correct subsection of Rule 62 to apply, courts consider whether the underlying judgment requires a party to do or perform an act, rather than simply pay a calculable amount of money. *See Donovan v. Fall River Foundry Co., Inc.*, 696 F.2d 524, 526 (7th Cir. 1982) (stating that the Rule 62(b) procedure "makes little sense as applied to an order to do, rather than an order to pay").

To qualify as a money judgment under Rule 62(b), the value of the monetary relief must be easily ascertainable, such that a bond or security would be sufficient to stand in for the relief.

---

[1] Rule 62(b) was formerly Rule 62(d).
[2] Rule 62(d) was formerly Rule 62(c).

2

*See J. Perez & CIA, Inc., v. United States*, 747 F.2d 813, 816 (1st Cir. 1984) (observing that Rule 62(b) "is likely aimed at money judgments, the value of which can be calculated and secured with relative ease"); *Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992) (granting a Rule 62(b) stay only where the declaratory judgment required payment of "a specific sum of money"). "[W]hen a judgment involves costs that cannot be calculated, it is inequitable to grant a stay and thus to deny the non-moving party assurance that it will not suffer additional harm." *Omnioffices, Inc. v. Kaidanow*, 201 F. Supp. 2d 41, 43 (D.D.C. 2002).

The judgments in this case provide for monetary and "non-monetary" relief. The monetary relief is in the form of: (1) backpay damages with a tax-component award; (2) LAST fees; (3) monetary payouts for unused sick days to class members no longer employed by the City; (4) Annuity Savings Accumulation Fund awards; and (5) retroactive pension relief. This relief plainly falls within the purview of Rule 62(b). The plaintiffs do not oppose the City's motion for a stay of enforcement of the monetary aspects of the judgments. Therefore, the Court GRANTS the City's motion for a stay with respect to the monetary relief granted in the judgments.

The judgments also provide for "non-monetary" relief, which falls within three categories: (1) eligibility for health benefits; (2) prospective pension relief; and (3) professional standing adjustments, including seniority and salary-step adjustments. The City contends that this "non-monetary" relief qualifies as a money judgment under Rule 62(b) because there are costs attendant to the relief. The Court disagrees. Although there are monetary costs associated with the provision of health care, prospective pension relief, and professional standing adjustments, this relief requires the City "to do," rather than "to pay." Courts have treated similar relief as injunctive, rather than monetary. *See, e.g., Gunn v. Reliance Standard Life Ins.*

*Co.*, No. 204–CV–01852 (FMC), 2009 WL 10671397, at *5 (C.D. Cal. May 20, 2009) (holding that the provision of disability benefits is injunctive relief because it requires payment of monthly benefits for as long as the plaintiff remains eligible for said benefits, rather than a payment of a lump sum of money, and thus analyzing a request for a stay under Rule 62(d)); *Cottillion v. United Ref. Co.*, No. 09-140E, 2014 WL 7344005, at *2 (W.D. Pa. Dec. 23, 2014) (holding that the provision of prospective pension benefits is injunctive relief and thus analyzing the motion for a stay under Rule 62(d)); *Malarkey v. Texaco, Inc.*, 794 F. Supp. 1248, 1249 (S.D.N.Y. 1992) (Mukasey, J.) (treating the requirement that defendant promote plaintiff to a salary grade level 14 position at a salary of 90% of the maximum salary for that grade as injunctive relief and thus analyzing the motion for a stay under Rule 62(d)).

Even if this relief were in some sense monetary, its value could not be readily ascertained. For example, the City does not provide, and the Court is not aware of, any way to quantify the value of health insurance coverage, given that the *future* health-related costs that individual plaintiffs may incur are unknown. That is, at the present time, it is not possible to calculate the amount of money that would adequately compensate the individual plaintiffs for continued denial of health insurance coverage, the value of which depends almost entirely on what medical problems may arise that require treatment and the ability of individual plaintiffs to afford treatment in the absence of the health benefits provided for in the judgments. *See In re Tower Automotive, Inc.*, No. 06–CV–2105 (RWS), 2007 WL 1975447, at *1 (S.D.N.Y. July 6, 2007) (recognizing that, because the judgment "awarded no fixed sum of money" and "the parties agree[d] that the amount due under the insurance policy [was at the time] unknown[,] Rule 62[(b) was] inapplicable"). Similarly, the value of *prospective* pension benefits depends on

4

a number of factors that are not presently known, including, for example, how long an individual plaintiff (and his or her beneficiary) will live.

Bearing these considerations in mind, the City's motion for a stay of "non-monetary" relief is more properly viewed as a motion pursuant to Rule 62(d).

## II.    Rule 62(d)

To decide a discretionary motion to stay under Rule 62(d), the Court must consider "(1) whether there is a substantial possibility, although less than a likelihood, of success on appeal; (2) whether there is a risk of irreparable injury to the movant absent a stay; (3) whether there is substantial harm to the non-movant stemming from the grant of a stay; and (4) any public policy interest that may be affected by the stay." *Optimum Shipping & Trading, S.A. v. Prestige Marine Servs. Pte. Ltd.*, 613 F. Supp. 2d 502, 503 (S.D.N.Y. 2009) (Rakoff, J.) (citing *Thapa v. Gonzalez*, 460 F.3d 323, 334–35 (2d Cir. 2006). These criteria are treated "somewhat like a sliding scale." *Thapa*, 460 F.3d at 334. "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the movant] will suffer absent the stay. Simply stated, more of one excuses less of the other." *Mohammad v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

### 1.    Substantial possibility of success

The City has not demonstrated a substantial possibility of success on appeal. In fact, the City fails to make *any showing* that its appeal to the Second Circuit will be successful. Instead, the City offers a vague list of issues it plans to raise on appeal and merely states the following:

> These issues were the focus of intense argument and briefing before the Special Master and briefing before this Court. The Circuit will review these issues de novo. The complexity of these issues would in most cases generate the possibility of modification, if not reversal, on appeal. Here, given the unusual circumstances under which these

5

> complex issues arose, there is a stronger suggestion of "a substantial[,] although less than a likelihood, of success on appeal" resulting in modification or reversal.

(ECF No. 1542, at 5.) Apart from referring to the issues as "complex" and the subject of "intense argument," the City has not offered any argument that shows a possibility of success, much less a *substantial* possibility. It is not clear what arguments the City will advance on appeal and, in turn, it is not possible for this Court to evaluate the possibility that the City will be successful. Therefore, this factor weighs heavily against granting the stay.

### 2. Irreparable injury (to the City)

The City has not demonstrated that it would suffer irreparable injury absent a stay. At most, the City alleges that it would suffer monetary loss if a stay is not granted, but "[a]s a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm." *Centauri Shipping*, 528 F. Supp. 2d at 194, *aff'd*, 323 F. App'x. 36 (2d Cir. 2009); *see also E.E.O.C. v. Local 638*, No. 71–CV–2877 (RLC), 1995 WL 355589, at *2 (S.D.N.Y. June 7, 1995) (Carter, J.) ("Irreparable injury means 'the kind of injury for which money cannot compensate,' *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 670 F.2d 8, 12 (2d Cir. 1982), and therefore '[a] monetary loss will not suffice unless the movant provides evidence of damage[] that cannot be rectified by financial compensation[,]' *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)."). As an exception to this general rule, "monetary injury *may* suffice to establish irreparable harm in situations 'where the party that might ultimately be ordered to pay the monetary damages is insolvent or facing imminent bankruptcy, or is in a perilous financial state.'" *Centauri Shipping*, 528 F. Supp. 2d at 194 (quoting *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, No. 3:03–CV–599 (CFD), 2004 WL 840140, at *3 (D. Conn. April 15, 2004)). This

exception does not apply here because the City has represented that it possesses considerable financial resources: "Not only could the Court take judicial notice of the City's financial resources, but the Deputy Comptroller's declaration states that the City's upcoming budget is in excess of $90 billion . . . . Thus, the City has ample resources to pay any judgments, making the cost of a bond a waste of public money." (ECF No. 1474, at 3.)

The City suggests, in passing, that the monetary loss it will incur as a result of the enforcement of the judgments would be irreparable because "substantial amounts of public money would likely go unrecovered in the event of a successful or even partly successful appeal." (ECF No. 1474, at 5.) In support of this assertion, the City relies on *Chevron Corp. v. Donziger*, 833 F.3d 74, 142–43 (2d Cir. 2016), which held, citing *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010), that where expenditures cannot be recouped, the resulting loss may be irreparable. The facts of *Donziger*, however, are plainly distinguishable from the facts of this case. In *Donziger*, it was undisputed that plaintiffs, "indigenous people living in the Ecuadorian rainforest," were not only insolvent but had taken steps to ensure funds paid to them would be held offshore, such that recovery of the funds would be impossible even were defendants successful on appeal. *Donziger*, 833 F.3d at 142–43. In this case, the City has *not* argued—or proffered evidence—that the plaintiffs are insolvent. The City's conclusory assertion that public money will go unrecovered absent a stay falls far short of demonstrating irreparable injury. Therefore, this factor weighs against granting the stay.

### 3. Substantial harm (to the plaintiffs)

Granting a stay would cause the plaintiffs to suffer substantial harm by continuing to deny them the pension benefits, health insurance, and seniority-related benefits to which they are entitled. As the plaintiffs point out, "retired class members who lack health insurance benefits

remain in a precarious position," in which they "may not be able to receive medical treatment and prescription medication." (ECF No. 1524, at 21.) Moreover, without the pension-related relief to which they are entitled, class members close to retirement—and those who have already reached retirement age—will likely be forced to remain in the workforce, rather than retiring. (*Id.*) The substantial harm plaintiffs will suffer if a stay is granted further tips the balance of the factors against granting the stay.

### 4. Public interest

The public interest cuts both ways in this case. On the one hand, absent a stay, the public interest would be negatively impacted, as the City explains, because public money that "would otherwise be available for enhancing public services, including public education, or other public purposes" would have to be expended. (ECF No. 1474, at 5.) On the other hand, the public interest would surely be served by permitting victims of discrimination to receive the non-monetary benefits to which they are entitled, particularly in a case that has spanned more than two decades. Therefore, this factor does not weigh strongly in favor of or against the grant of a stay.

\*\*\*

Upon consideration of the foregoing factors, the City's motion for a stay pending appeal under Rule 63 is DENIED to the extent it pertains to the injunctive relief described above.

## CONCLUSION

For the reasons stated above, the City's motion for a stay is GRANTED in part and DENIED in part. Because Rule 63 encompasses only judgments that have already been entered, this decision does not apply to future judgments that will be entered in this action. The parties

8

are ordered to submit a joint letter to the Court explaining how this decision should be applied to future judgments.

The Clerk is directed to terminate the motion at ECF No. 1473.

SO ORDERED.

Dated: New York, New York
June 12, 2019

*[signature: Kimba M. Wood]*

KIMBA M. WOOD
United States District Judge