The following is a summary of the Special Master's rulings at the August 25, 2022 conference.  The parties have had the opportunity to review a draft of the rulings and assert any objections or propose edits.  The parties agree that this summary accurately reflects the Special Master's rulings at the hearing.

1. **Mediation Status** – **Update on Class Members with Proposed Settlements of Individual Judgments** – Plaintiffs indicated that the number of judgment holders to whom settlement offers containing a payment plan were sent but that have not yet responded continues to shrink as more judgment holders respond.  Plaintiffs stated that they would provide the Special Master with updated information on this group by September 8, 2022.

   Plaintiffs stated that they were in the process of reviewing a report from Epiq on the payments from the Qualified Settlement Fund ("QSF") for the fiscal year ending June 30, 2022.  Plaintiffs stated that once they have confirmed that the report contains the necessary information, they would submit it to the Special Master.

   The Special Master asked for a status update on class members who have experienced a disruption of their social security benefits due to the settlement payments.  Plaintiffs stated that they continue to work through these issues with class members.  The parties stated that they are working with Epiq to ensure that payments made in calendar year 2022 will be reported to the SSA no later than March 2023.

2. **Court's Partial Denial of the Motion for a Stay** – The Special Master asked Defendant for an update on the transmission of data from the BOE to NYCERS and BERS.  Defendant stated that it had just received a report from NYCERS and would provide that information shortly, and that it had spoken with BERS and was awaiting its report.  Defendant further stated that it expected the three significant technical errors in the TRS system to be resolved by the end of September, but that other errors would likely take longer to resolve.  The Special Master asked Defendant to create a schedule listing each of error by code, when Defendant expected each error to be resolved, and identifying what more needs to be done to correct each error.

   Plaintiffs stated that class members who are Tier I, Tier II or Tier III members of TRS – who have been enrolled in TRS the longest and who are among the oldest of class members – have yet to receive invoices reflecting their counterfactual service and, according to Defendant, are not scheduled to receive invoices until the first quarter of 2023 at the earliest.  Plaintiffs stated that these class members should not have to wait until this time for their invoices.  Defendant explained its understanding was this group consisted of only approximately 30 class members, and TRS had not focused on developing a program to process their information.  Plaintiffs and Defendant discussed whether these class members could be processed manually in the system.  The Special Master told Defendant that TRS's timeframe for processing these class members was unacceptable and that someone from TRS would have to appear before the Special Master

to explain why this cannot be done in 30 days.  Defendant stated that it will speak again with TRS and provide an update as soon as possible.

In addition, Defendant stated it continued to follow up with TRS on the 15-30 class members who sent checks to TRS in 2021 but whose checks had yet to be processed.  Defendant indicated that TRS had processed a few of those claimants' checks shortly before the conference.

The Special Master asked the parties for an update on the implementation of salary and seniority adjustments.  Defendant indicated that it was on track to complete a review of all judgment holders that might be eligible for relief by the end of August but added that there may be a slight delay with respect to updating 90 class members' CAR days.  The Defendant agreed to provide before the next conference a chart showing the claimants whose eligibility Defendant has checked, the claimants Defendant determined are eligible for adjustments, the claimants for whom Defendant has made an adjustment, and how many claimants whose eligibility or adjustment remain to be determined.

Defendant provided an update on the OA's work.  Defendant stated that it had spoken to the OA and that the OA now believed that it could complete the approximately 70 currently pending calculations by October.  The Special Master stated that this work needed to be completed much sooner and that the OA would have to appear before the Special Master to explain why that work cannot be completed by the end of September.  Defendant stated that it would follow up with the OA.

3.  **Interim Requests for Fees** – The Special Master noted that he had received Plaintiffs' letter regarding Plaintiffs' thirtieth Interim Request for Fees.  Defendant indicated that it had responded to Plaintiffs regarding their thirty-first Interim Request for Fees, and that it was reviewing Plaintiffs' thirty-second and thirty-third Interim Requests for Fees through and would respond to Plaintiffs shortly.

4.  **Conference Summaries** –  The parties confirmed that they had no edits to the draft Summary of the July 14, 2022 conference, and the Special Master declared the summary final.

The Special Master indicated that he would circulate to the parties his edits to Plaintiffs' proposed edits to the Summary of the July 6, 2022 Conference and the Summary of the August 4, 2022 Conference.

5.  **Award Tracking Chart** – Prior to the conference, the Special Master circulated a version of the below chart which had been updated as of August 24, 2022 and tracks the progress of awards that have been awarded or entered to date, as well as the number of claims and judgments left to be resolved/entered.

August 25, 2022 Conference Summary                                    **GULCS001752**

| AWARDS | |
|---|---:|
| Total estimated # of claims in the class: | 4889 |
| Total awards confirmed to date: | 3021 |
| Total claims withdrawn/resolved without the need for <u>award</u> to date: | 266 |
| Estimated additional claims that will be withdrawn/resolved without the need for award: | 164 |
| | |
| Estimated individual claims remaining: | **1438** |
| Weeks remaining until June 2023: | 40.1 |
| Individual claims to be resolved per week to meet June 2023 deadline: | **35.8** |

| JUDGMENTS | |
|---|---:|
| Proposed judgments filed by Special Master to date: | 2547 |
| Confirmed awards not yet reduced to proposed judgments: | 474 |
| Estimated remaining judgments to be filed by Special Master: | **1912** |

Plaintiffs stated that they would let the Special Master know shortly after the conference whether they had any edits to the chart.

6. **TRS Disability Claims** – Plaintiffs stated that they had withdrawn one TRS disability claim, and Defendant indicated that it was reviewing three disability claims.

7. **Proposed Individual Hearing Schedule** – The Special Master urged the parties to try to expedite the schedule. The Special Master requested that the parties review the current schedule and provide an update on their estimate for completion of hearings through entry of judgments. The parties indicated that they were working on ways to streamline the hearing schedule and judgment process, and that they would provide an update to the Special Master at an upcoming conference in September.

8. **LAST-2 Claimants –** The Special Master asked Plaintiffs for an update on the status of LAST-2 claimants. Plaintiffs indicated that LAST-2 claimants had been included in the last four batches submitted to Defendant, and that Plaintiffs continue to look for ways to expedite the process for LAST-2 claimants as they meet with claimants members and review their materials.

9. **Individual Hearings**

   a. The Special Master ruled that the following class members satisfied their burden of proving the listed amounts are the appropriate total damages amounts based on the evidence presented as of their presumed date of judgment. The parties agree that the amounts are accurately calculated using the experts' models, which incorporate the rulings recommended by the Special Master and adopted by the Court. These damages

amounts are not final and are subject to change based on these class members' actual date of judgment.  The parties will update and finalize the damages calculations prior to the entry of her final judgment subject to approval by the Special Master and the Court.

**1. Anthonia Wosu (Batch 118)**
- Backpay: $20,072
- Backpay with Interest: $23,186
- LAST Fees: $130
- LAST Fees with Interest: $253
- ASAF: $888
- Tax Adjustment: $2,359
- CAR Days: $2,379

**Total Damages: $29,065**

**2.Emiliano de la Rosa (Batch 115)**
- Backpay: $692,308
- Backpay with Interest: $888,746
- LAST Fees: $200
- LAST Fees with Interest: $352
- ASAF: $5,033
- Tax Adjustment: $81,346
- CAR Days: $9,425

**Total Damages: $984,902**

**3.Izetta Sterling (Batch 115)**
- Backpay: $808,952
- Backpay with Interest: $878,648
- LAST Fees: $246
- LAST Fees with Interest: $307
- ASAF: $2,743
- Tax Adjustment: $95,052
- CAR Days: $9,555

**Total Damages: $986,305**

**4.Lennie Brice [Estate of] (Batch 111)**
- Backpay: $606,541
- Backpay with Interest: $762,565
- LAST Fees: $70
- LAST Fees with Interest: $124
- ASAF: $1,833
- Tax Adjustment: $71,269
- CAR Days: $9,433
- **Total Damages: $845,224**

August 25, 2022 Conference Summary

GULCS001754

**5.Jean De Wees (Batch 108)**
- Backpay: $544,029
- Backpay with Interest: $654,630
- LAST Fees: $780
- LAST Fees with Interest: $1,199
- ASAF: $3,500
- Tax Adjustment: $63,923
- CAR Days: $11,206
- Employer Funded Retirement Acct:

**Total Damages: $734,458**

**6.Ana Leiva (Batch 115)**
- Backpay: $347,421
- Backpay with Interest: $382,708
- LAST Fees: $318
- LAST Fees with Interest: $424
- ASAF: $1,567
- Tax Adjustment: $40,822
- CAR Days: $8,156

**Total Damages: $433,677**

**7.Jennifer Irurueta-Chavez (Batch 110)**
- Backpay: $12,617
- Backpay with Interest: $16,992
- LAST Fees: $280
- LAST Fees with Interest: $471

**Total Damages: $17,463**

**8.Claire Casseus (Batch 121)**
- Backpay: $10,735
- Backpay with Interest: $13,108
- LAST Fees: $440
- LAST Fees with Interest: $564
- ASAF: $0
- CAR Days: $51

**Total Damages: $13,723**

**9.Dolores Mateo (Batch 121)**
- LAST Fees: $264
- LAST Fees with Interest: $314

**Total Damages: $314**

**10.Jill Nolan (Batch 121)**
- Backpay: $559,546

August 25, 2022 Conference Summary

GULCS001755

- Backpay with Interest: $598,626
- LAST Fees: $264
- LAST Fees with Interest: $317
- ASAF: $3,133
- Tax Adjustment: $65,747
- CAR Days: $13,023
- Employer Funded Retirement Acct: ($830)

**Total Damages: $680,016**

**11.Lekesha Fowler (Batch 121)**
- Backpay: $1,258,953
- Backpay with Interest: $1,402,646
- LAST Fees: $960
- LAST Fees with Interest: $1,572
- ASAF: $8,133
- Tax Adjustment: $147,927
- CAR Days: $22,061
- Employer Funded Retirement Acct: ($5,620)

**Total Damages: $1,576,719**

**12.Monsia Allen (Batch 121)**
- LAST Fees: $176
- LAST Fees with Interest: $218

**Total Damages: $218**

**13.Nancy Lantigua (Batch 121)**
- Backpay: $492,640
- Backpay with Interest: $521,498
- LAST Fees: $396
- LAST Fees with Interest: $441
- ASAF: $3,333
- Tax Adjustment: $57,885

**Total Damages: $583,157**

**14.Shawn Scott (Batch 121)**
- Backpay: $7,251
- Backpay with Interest: $9,449
- LAST Fees: $160
- LAST Fees with Interest: $220

**Total Damages: $9,669**

**15.Tiambay Cuthbertson (Batch 121)**
- Backpay: $43,488
- Backpay with Interest: $50,561
- LAST Fees: $300

August 25, 2022 Conference Summary

GULCS001756

- LAST Fees with Interest: $400
- ASAF: $400
- Tax Adjustment: $5,110

**Total Damages: $56,471**

**16. Yanira Burgos (Batch 121)**
- Backpay: $10,294
- Backpay with Interest: $14,362
- LAST Fees: $560
- LAST Fees with Interest: $904

**Total Damages: $15,264**

**17. Yvette Gist (Batch 121)**
- Backpay: $1,029,581
- Backpay with Interest: $1,130,261
- LAST Fees: $972
- LAST Fees with Interest: $1,303
- ASAF: $7,733
- Tax Adjustment: $120,976

**Total Damages: $1,260,273**

**18. Zenaida Diaz (Batch 121)**
- Backpay: $459,634
- Backpay with Interest: $486,838
- LAST Fees: $356
- LAST Fees with Interest: $396
- ASAF: $2,933
- Tax Adjustment: $54,007

**Total Damages: $544,174**

August 25, 2022 Conference Summary

**GULCS001757**

The following is a summary of the Special Master's rulings at the September 8, 2022 conference. The parties have had the opportunity to review a draft of the rulings and assert any objections or propose edits. The parties agree that this summary accurately reflects the Special Master's rulings at the hearing.

1.  **Mediation Status** – **Update on Class Members with Proposed Settlements of Individual Judgments** – The Special Master noted that he had received Plaintiffs' email and a report from Epiq on the payments from the Qualified Settlement Fund ("QSF") for the fiscal year ending June 30, 2022. The Special Master asked the parties to confirm with Epiq certain calculations he had performed based on the information in Epiq's report. Defendant agreed to reach out to Epiq and get further clarification on its report and the calculation of the total amount paid out of the QSF to date.

    The Special Master asked for a status update on class members who have experienced a disruption of their social security benefits due to the settlement payments. Plaintiffs stated that they continue to work through these issues with class members. The parties stated that they are working with Epiq to ensure that payments made in calendar year 2022 will be reported to the SSA no later than March 2023. Defendant agreed to confirm with Epiq that it is on track with its reporting to the SSA.

2.  **Court's Partial Denial of the Motion for a Stay** – The Special Master asked the parties for an update on the pension relief. Defendant stated that it would provide an executive summary to the Special Master on the status of all class members eligible for pension relief by September 15, 2022. Defendant confirmed that there had been a transmission of data from the BOE to NYCERS and BERS and would provide further information in the summary. The Special Master next requested Defendant provide an update on the resolution of technical errors in the TRS system. Plaintiffs sought clarification on the status of resolving each error, and Defendant explained that it expected the three significant technical errors in the TRS system to be resolved by the end of September. The Special Master reminded Defendant to create a schedule listing each technical error by code, a definition of each code, which class members are impacted by each code, when Defendant expected each error to be resolved, and identifying what more needs to be done to correct each error.

    The parties also discussed class members who had been enrolled in the pension system the longest – and who are among the oldest of class members – who had yet to receive invoices reflecting their counterfactual service. Plaintiffs clarified that they understood that these are class members who are in tiers prior to Tier IV and are not scheduled to receive invoices until the first quarter of 2023 at the earliest. The Special Master asked Defendant whether TRS would be able to make manual adjustments for these class members by the end of the month. Defendant explained its understanding was this group consisted of only approximately 30 class members, but TRS could not process them manually and was instead working on a systems fix. The Special Master stated that he expected an update at the next conference and wanted these class members processed quickly. In addition, Defendant stated it continued to follow up with

1

**GULCS001758**

TRS on the approximately 40 class members who sent checks to TRS in 2021 but whose pension relief had yet to be processed.

The Special Master asked the parties for an update on the implementation of salary and seniority adjustments.  The Special Master noted that prior to the conference, Defendant notified him that it did not complete its review of all judgment holders that might be eligible for relief by the end of August as it had previously promised, and that there was also a delay with respect to updating class members' CAR adjustments.  The Special Master also referenced Plaintiffs' email of September 6, 2022, and Plaintiffs' statement that class members continued to be harmed by Defendant's lack of compliance with a Court order.  The Special Master stressed that Defendant's response was unacceptable.  The Special Master directed that Defendant should answer Plaintiffs' specific questions that were contained in Plaintiffs' September 6, 2022 email, including who at the BOE was responsible for each task, and why certain tasks could not be completed sooner.  The Special Master told Defendant that despite accepting responsibility for not meeting deadlines, it had not provided clear accountability for the tasks and Defendant had not shown that it had prioritized getting these adjustments reviewed and completed, despite the Court's June 2019 Order.  The Special Master reiterated that Defendant's counsel should communicate at the highest appropriate level of the organization the seriousness of this issue and lack of compliance with the Court's Order.  The Special Master also directed Defendant to connect those representatives responsible for reviewing and implementing the adjustments with Plaintiffs' counsel so that Plaintiffs could raise any questions that they have about Defendant's ongoing efforts to comply with the Court Order.  The Special Master also requested that Defendant work with Plaintiffs prior to the next conference to answer their specific questions.  The Special Master reminded Defendant that it had agreed to provide a chart showing the class members whose eligibility Defendant has checked, the class members Defendant determined are eligible for adjustments, the class members for whom Defendant has made an adjustment, and how many class members whose eligibility or adjustment remain to be determined.  The Special Master told Defendant that it should work with Plaintiffs and provide an update to the Special Master on its discussions.

Defendant also provided an update on the OA's work.  Defendant stated that it had spoken to the OA and that the OA explained that each calculation was taking much longer than it originally expected.  The OA expected to complete approximately 25 of the 70 outstanding calculations shortly.  Defendant stated that it was working on a schedule to complete the remaining calculations and it understood the Special Master wanted them completed by the end of September.  Defendant stated that it would follow up with the OA.

3.  **Interim Requests for Fees** – The Special Master noted that he had received Plaintiffs' letter regarding Plaintiffs' thirtieth Interim Request for Fees.  Defendant indicated that it had responded to Plaintiffs regarding their thirty-first Interim Request for Fees, and that it was

reviewing Plaintiffs' thirty-second through thirty-fourth Interim Requests for Fees through and would respond to Plaintiffs shortly.

**4. Conference Summaries**

    a. <u>Summaries of the July 6, 2022 and August 4, 2022 Conferences</u> – The Special Master confirmed that he accepts Plaintiffs' proposed edits to the summaries of the July 6, and August 4, 2022 conferences with the Special Master's additional edits, to which Defendant did not object.  The parties confirmed that was acceptable and they had no further edits.  The Special Master declared the July 6, 2022 and August 4, 2022 summaries final.

    b. <u>Summary of the August 11, 2022 Conference</u> – The parties confirmed they had no edits to the summary of the August 11, 2022 conference and the Special Master declared the summary final.

    c. <u>Summary of the August 25, 2022 Conference</u> – The parties agreed to provide any edits or comments to the summary of the August 25, 2022 conference by the following week.

**5. Award Tracking Chart** – Prior to the conference, the Special Master circulated a version of the below chart which had been updated as of September 7, 2022 and tracks the progress of awards that have been awarded or entered to date, as well as the number of claims and judgments left to be resolved/entered.

| AWARDS | |
|---|---:|
| Total estimated # of claims in the class: | 4889 |
| Total awards confirmed to date: | 3039 |
| Total claims withdrawn/resolved without the need for <u>award</u> to date: | 266 |
| Estimated additional claims that will be withdrawn/resolved without the need for award: | 162 |
| | |
| Estimated individual claims remaining: | **1422** |
| Weeks remaining until June 2023: | 38.1 |
| Individual claims to be resolved per week to meet June 2023 deadline: | **37.3** |

| JUDGMENTS | |
|---|---:|
| Proposed judgments filed by Special Master to date: | 2547 |
| Confirmed awards not yet reduced to proposed judgments: | 492 |
| Estimated remaining judgments to be filed by Special Master: | **1914** |

Plaintiffs stated that they would let the Special Master know shortly after the conference whether they had any edits to the chart.  The Special Master noted that we would likely have to change the June 2023 deadline once the parties presented a new proposed schedule for completion of all hearings.

6. **TRS Disability Claims** – Plaintiffs stated that they had submitted further information for one claimant's disability claim, and Defendant indicated that it had completed its review of one claimant and determined she was disabled and continued to get medical information and review two other disability claims.

7. **Proposed Individual Hearing Schedule**

   a. The Special Master reminded the parties that he had requested that the parties review the current schedule and provide an update on their estimate for completion of hearings through entry of judgments. The parties indicated that they were working on ways to streamline the hearing schedule and judgment process, and that they would provide an update to the Special Master at the next conference.

   b. The Special Master noted that he had received a post-hearing declaration from <u>Migdalia Surita</u>, and asked the parties whether they wanted further argument. Defendant stated that it would review the declaration and advise the Special Master of its position by the next conference.

   c. The Special Master discussed with parties the status of his review of Batch 105 ATS-W objections. The Special Master invited Defendant to submit further briefing on issues he raised at the conference. Defendant stated it would provide further briefing by September 30. Plaintiffs indicated that it would review Defendant's submission before requesting any further briefing.

8. **LAST-2 Claimants** – The Special Master asked Plaintiffs for an update on the status of LAST-2 claimants. Plaintiffs indicated that LAST-2 claimants' demands continue to be submitted in recent batches, and that Plaintiffs continue to look for ways to expedite the process for LAST-2 claimants as they meet with claimants and review their materials.

9. **Individual Hearings**

   a. The Special Master ruled that the following class member satisfied her burden of proving the listed amounts are the appropriate total damages amounts based on the evidence presented as of her presumed date of judgment. The parties agree that the amounts are accurately calculated using the experts' models, which incorporate the rulings recommended by the Special Master and adopted by the Court. These damages amounts are not final and are subject to change based on the class member's actual date of judgment. The parties will update and finalize the damages calculations prior to the entry of her final judgment subject to approval by the Special Master and the Court.

**GULCS001761**

**1. Teresa Rosa (Batch 120)**
- Backpay: $450,133
- Backpay with Interest: $477,563
- LAST Fees: $475
- LAST Fees with Interest: $528
- ASAF: $1,067
- Tax Adjustment: $52,891
- CAR: $6,780

**<u>Total Damages</u>: $538,829**

The following is a summary of the Special Master's rulings at the September 29, 2022 conference. The parties have had the opportunity to review a draft of the rulings and assert any objections or propose edits. The parties agree that this summary accurately reflects the Special Master's rulings at the hearing.

1. **Mediation Status** – **Update on Class Members with Proposed Settlements of Individual Judgments** – The Special Master noted that he had received Plaintiffs' email and a report from Epiq on the payments from the Qualified Settlement Fund ("QSF") for the fiscal year ending June 30, 2022. The Special Master asked the parties to confirm with Epiq certain calculations he had performed based on the information in Epiq's report. Defendant indicated that it had reached out to Epiq but had not received a response. The Special Master directed the Defendant to reach out to Epiq again and provide an update at the next conference.

2. **Court's Partial Denial of the Motion for a Stay** – The Special Master noted that the Defendant had stated on September 16, 2022 that it was unable to provide an accurate schedule for completion of 184 claimants awaiting revision by TRS. The Special Master asked Defendant for an explanation. Defendant stated that TRS discovered an integrity issue in the data that TRS has been receiving from the BOE. Defendant indicated that because the data TRS has been receiving was adjusted – rather than unadjusted – TRS's benefit calculations had to be reviewed. Defendant was unsure of the scope of the problem but stated that TRS was focusing all its energy on this issue. The Special Master stated that this was the first time he had been told about this issue, and Plaintiffs stated that they had not heard of it before either. The Special Master stated that this was not acceptable, and demanded to know what exactly happened, why it happened, who was responsible, how it will be corrected, who will be responsible for correcting it, and a schedule for when it will be corrected. He directed the Defendant to schedule a call with Plaintiffs that included TRS and the BOE within ten days and report back to the Special Master.

The Special Master asked Defendant for an update on (1) Tier I, Tier II, or Tier III class members who had been enrolled in the pension system the longest who had yet to receive invoices reflecting their counterfactual service and (2) the approximately 40 class members who sent checks to TRS in 2021 but whose pension relief had not been processed. Defendant stated that TRS's focus was on the data integrity issue, and for these other issues they would need to review each claimant individually, which would pull a TRS staffer away from performing other tasks. The Special Master stated that this answer was unacceptable given that the Court had ordered the Defendant to hire as many people as necessary to appropriately staff this case and class members have been waiting for pension relief for years. The Special Master reiterated that Defendant is obligated to provide the relief contained in the Court order and urged Defendant to hire more people and become more creative in finding a solution to these issues.

The Special Master noted that the parties had exchanged emails regarding salary, seniority, and other adjustments, and asked how parties interpreted the phrase "update service history."

1

Plaintiffs noted that each final judgment directs the BOE to update that class member's service history as part of the non-monetary relief the Court has ordered, and that it was Defendant who had proposed that language.  Plaintiffs stated that, had the service history been updated as required by the Court, they believed that most of the current issues would have been resolved.  Plaintiffs stated that the BOE claims that updating service histories is not feasible but has not explained why.  Defendant confirmed that changing the service histories to reflect counterfactual dates was not possible but noted that the BOE was working around that limitation to get the required results.  Defendant stated that the CAR and payroll components of the relief have been completed, and that the BOE and Defendant were scheduled to speak with Plaintiffs again on Monday, October 3. The Special Master asked the parties to report on their meeting at the next conference, and repeated that if needed to comply with the Court order, the BOE should add staff as soon as possible to make these adjustments.

The Special Master asked Defendant about an issue that Plaintiffs had raised concerning the OA's inability to enter their calculations into TRS's system.  Defendant stated that TRS indicated that it had been able to process claimants from the OA, and Defendant stated that it would follow up with the OA.  Plaintiffs stated that they were scheduled to speak with the OA on Monday, and that Defendant was welcome to join that call.  The Special Master asked that the parties provide an update at the next conference.

3.  **Interim Requests for Fees** – The Special Master noted that he had received Plaintiffs' letter regarding Plaintiffs' thirty-first Interim Request for Fees.  Defendant indicated that it was reviewing Plaintiffs' thirty-second through thirty-fourth Interim Requests for Fees and would respond to Plaintiffs shortly.

4.  **Conference Summaries**

   a.  Summary of the August 25, 2022 Conference – The parties agreed to provide any edits or comments to the summary of the August 25, 2022 conference by the following week.

   b.  Summary of the September 8, 2022 Conference – The parties agreed to provide any edits or comments to the summary of the September 8, 2022 conference by the following week.

5.  **Award Tracking Chart** – Prior to the conference, the Special Master circulated a version of the below chart which had been updated as of September 27, 2022 and tracks the progress of awards that have been awarded or entered to date, as well as the number of claims and judgments left to be resolved/entered.

| AWARDS | |
| --- | --- |
| Total estimated # of claims in the class: | 4889 |

| | |
|---|---|
| Total awards confirmed to date: | 3040 |
| Total claims withdrawn/resolved without the need for <u>award</u> to date: | 266 |
| Estimated additional claims that will be withdrawn/resolved without the need for award: | 162 |
| | |
| Estimated individual claims remaining: | **1421** |
| Weeks remaining until June 2023: | 35.3 |
| Individual claims to be resolved per week to meet June 2023 deadline: | **40.3** |

| JUDGMENTS | |
|---|---|
| Proposed judgments filed by Special Master to date: | 2547 |
| Confirmed awards not yet reduced to proposed judgments: | 493 |
| Estimated remaining judgments to be filed by Special Master: | **1914** |

Plaintiffs indicated that they had no edits to the chart.

6. **TRS Disability Claims** – Defendant indicated that it had to resend a request for information to a provider and that it would follow up as soon as possible.

7. **Proposed Individual Hearing Schedule** – The Special Master reminded the parties that he had requested that the parties review the current schedule and provide an update on their estimate for completion of hearings through entry of judgments. The parties indicated that they are working on ways to streamline the hearing schedule and judgment process, and that they would provide an update to the Special Master at the next conference.

8. **Individual Hearings**

   a. The Special Master noted that he had received a post-hearing declaration from <u>Migdalia Surita (Batch 104)</u>, and Defendant indicated that it did not wish to have additional argument. The Special Master stated that he would issue a written ruling in due course.

   b. The Special Master held a hearing for <u>Jennifer Wilkerson</u> (Batch 119). The Special Master stated that he will issue a written ruling in due course.

   c. The Special Master ruled that the following class members satisfied their burden of proving the listed amounts are the appropriate total damages amounts based on the evidence presented as of their presumed date of judgment. The parties agree that the amounts are accurately calculated using the experts' models, which incorporate the rulings recommended by the Special Master and adopted by the Court. These damages amounts are not final and are subject to change based on these class members' actual

3

**GULCS001765**

date of judgment.  The parties will update and finalize the damages calculations prior to the entry of the final judgments subject to approval by the Special Master and the Court.

**1. Jacqueline Cobbler (Batch 111)**
- Backpay: $864,889
- Backpay with Interest: $927,517
- LAST Fees: $616
- LAST Fees with Interest: $781
- ASAF: $5,367
- Tax Adjustment: $101,624
- CAR: $18,111

**Total Damages: $1,053,400**

**2.Maria Paradis (Batch 116)**
- Backpay: $378,257
- Backpay with Interest: $458,838
- LAST Fees: $298
- LAST Fees with Interest: $446
- ASAF: $2,228
- Tax Adjustment: $44,445

**Total Damages: $505,957**

**3.Edith Outlaw-Bey (Batch 117)**
- Backpay: $77,998
- Backpay with Interest: $95,223
- LAST Fees: $830
- LAST Fees with Interest: $1,241
- ASAF: $0
- Tax Adjustment: $9,164

**Total Damages: $105,628**

**4.Odetta Morrison (Batch 117)**
- Backpay: $968,743
- Backpay with Interest: $1,062,043
- LAST Fees: $990
- LAST Fees with Interest: $1,401
- ASAF: $4,433
- Tax Adjustment: $113,827
- CAR: $16,690

**Total Damages: $1,198,394**

**5. Cynthia Furrs-Gilmore (Batch 114)**
- Backpay: $24,825
- Backpay with Interest: $36,647
- LAST Fees: $210

- LAST Fees with Interest: $348
- ASAF: $0
- Tax Adjustment: $2,917
- CAR: $427

**Total Damages: $40,339**

**6. Jocelyn Taveras (Batch 119)**
- Backpay: $201,290
- Backpay with Interest: $234,015
- LAST Fees: $710
- LAST Fees with Interest: $1,034
- ASAF: $467
- Tax Adjustment: $23,652

**Total Damages: $259,168**

**7. Evelyn Sarmiento (Batch 122)**
- LAST Fees: $230
- LAST Fees with Interest: $340

**Total Damages: $340**

**8. Michelle Vinson (Batch 122)**
- Backpay: $576,777
- Backpay with Interest: $617,607
- LAST Fees: $431
- LAST Fees with Interest: $494
- ASAF: $2,933
- Tax Adjustment: $67,771

**Total Damages: $688,805**

September 29, 2022 Conference Summary

GULCS001767

The following is a summary of the Special Master's rulings at the October 4, 2022 conference.  The parties have had the opportunity to review a draft of the rulings and assert any objections or propose edits.  The parties agree that this summary accurately reflects the Special Master's rulings at the hearing.

1. **Mediation Status** – **Update on Class Members with Proposed Settlements of Individual Judgments** – The Special Master noted that he had received Defendant's email regarding the report from Epiq on the payments from the Qualified Settlement Fund ("QSF") for the fiscal year ending June 30, 2022, but that the information Defendant provided did not explain the discrepancy between certain calculations he had performed and the totals previously provided by the parties.  The parties indicated that they would follow up with Epiq before the next conference.  The Special Master stated that he might request Epiq's presence at a future conference if necessary to get clarity on its reports and the status of Epiq's work.

2. **Court's Partial Denial of the Motion for a Stay** – The Special Master asked Defendant for an update on the data integrity issue surrounding TRS pension relief that Defendant raised for the first time in the previous conference.  By way of explanation, Defendant indicated that there was a discrepancy between wages as reported on an annual and payment period basis, and that the unadjusted annual wages of individual claimants did not correlate with the recorded payments.  This discrepancy resulted in individual claimants receiving an award less than they should be entitled to in judgment.  Defendant stated that he did not believe this error affected all class members.   The Defendant stated that for those class members whose benefit was incorrectly calculated, those class members should have received an invoice for a larger contribution and, had that invoice been paid, received a larger pension benefit.  Plaintiffs indicated that they needed further clarification from TRS.  Plaintiffs referenced that there is an exhibit to the Judgments/FOFCOLs, that provides the counterfactual salary that should have been used by TRS for its inputs into the system.  Plaintiffs and the Special Master sought clarity on what data TRS was using from the Judgments, FOFCOLs, and exhibits for its inputs.  The Special Master directed that Defendant set a date for a call between Defendant, Plaintiffs and TRS within the next ten days.  Once that call has taken place, the Special Master indicated the parties and TRS appear the following week before the Special Master, at which time TRS and the Defendant will explain what exactly happened, why it happened, who was responsible, how it will be corrected, who will be responsible for correcting it, and a schedule for when it will be corrected.  Defendant confirmed that there will be no payment interruption for class members presently receiving pension benefits.

The Special Master asked the parties for an update regarding on the implementation of salary, seniority and other adjustments.  Plaintiffs stated that they had a conference call with Defendant and representatives from the DOE, including Vicki Bernstein.  Defendant stated it will complete its review of judgment-holders to determine eligibility for adjustments shortly, and that it will provide Plaintiffs with a chart on October 17 listing all judgment-holders that were reviewed

and identifying those class members who it believes are entitled to an adjustment.  The Special Master stated that he wanted those adjustments made as soon as possible, and ordered Defendant to provide Plaintiffs with a schedule reflecting when the changes will be implemented.  The Special Master reiterated that a person from the BOE has to personally certify that each of the class members on the foregoing list have received the adjustments to which they are entitled.

3.  **Conference Summaries**

   a.  <u>Summary of the August 25, 2022 Conference</u> – Defendant stated that it had no objection or additional edits to the proposed edits that Plaintiffs had previously circulated to the summary of the August 25, 2022 conference.  The Special Master accepted Plaintiffs' edits and declared the summary final.

   b.  <u>Summary of the September 8, 2022 Conference</u> – Defendant stated that it had no objection or additional edits to the proposed edits that Plaintiffs had previously circulated to the summary of the September 8, 2022 conference.  The Special Master accepted Plaintiffs' edits and declared the summary final.

4.  **Award Tracking Chart** – Prior to the conference, the Special Master circulated a version of the below chart which had been updated as of October 3, 2022 and tracks the progress of awards that have been awarded or entered to date, as well as the number of claims and judgments left to be resolved/entered.

| AWARDS | |
|---|---|
| Total estimated # of claims in the class: | 4889 |
| Total awards confirmed to date: | 3048 |
| Total claims withdrawn/resolved without the need for <u>award</u> to date: | 266 |
| Estimated additional claims that will be withdrawn/resolved without the need for award: | 161 |
| | |
| Estimated individual claims remaining: | **1414** |
| Weeks remaining until June 2023: | 34.6 |
| Individual claims to be resolved per week to meet June 2023 deadline: | **40.9** |

| JUDGMENTS | |
|---|---|
| Proposed judgments filed by Special Master to date: | 2607 |
| Confirmed awards not yet reduced to proposed judgments: | 441 |
| Estimated remaining judgments to be filed by Special Master: | **1855** |

Plaintiffs stated that they would provide any edits to the chart before the next conference.

2

October 4, 2022 Conference Summary                                                    **GULCS001769**

5. **Proposed Individual Hearing Schedule** – The Special Master reminded the parties that he had requested that the parties review the current schedule and provide an update on their estimate for completion of hearings through entry of judgments. The parties indicated that they are working on ways to streamline the hearing schedule and judgment process, and that they would provide an update to the Special Master at the next conference.

6. **Individual Hearings**

   a. The Special Master previously held a hearing for Migdalia Surita and his ruling appears at the end of this summary.

   b. The Special Master ruled that the following class members satisfied their burden of proving the listed amounts are the appropriate total damages amounts based on the evidence presented as of their presumed date of judgment. The parties agree that the amounts are accurately calculated using the experts' models, which incorporate the rulings recommended by the Special Master and adopted by the Court. These damages amounts are not final and are subject to change based on these class members' actual date of judgment. The parties will update and finalize the damages calculations prior to the entry of the final judgments subject to approval by the Special Master and the Court.

**1.Marie Sejour (Batch 111)**
- Backpay: $124,961
- Backpay with Interest: $156,720
- LAST Fees: $2,556
- LAST Fees with Interest: $3,627
- ASAF: $67
- Tax Adjustment: $14,683
- CAR: $1,256

**Total Damages: $176,353**

**2.Peggy Santiago (Batch 112)**
- Backpay: $272,271
- Backpay with Interest: $349,087
- LAST Fees: $2,046
- LAST Fees with Interest: $2,969
- ASAF: $500
- Tax Adjustment: $31,992
- CAR: $4,340

**Total Damages: $388,888**

**3.Roland Pierce Judge (Batch 115)**
- Backpay: $608,236
- Backpay with Interest: $689,765

October 4, 2022 Conference Summary                                              **GULCS001770**

- LAST Fees: $268
- LAST Fees with Interest: $325
- ASAF: $2,733
- Tax Adjustment: $71,468

**Total Damages: $764,291**

**4. Janiza Vargas (Batch 122)**
- LAST Fees: $176
- LAST Fees with Interest: $203

**Total Damages: $203**

**5. Brenda Greene (Batch 120)**
- Backpay: $829,008
- Backpay with Interest: $909,713
- LAST Fees: $616
- LAST Fees with Interest: $806
- ASAF: $1,900
- Tax Adjustment: $97,408
- CAR: $15,726

**Total Damages: $1,025,553**

**6. Elizabeth Nieves (Batch 121)**
- Backpay: $319,347
- Backpay with Interest: $439,961
- LAST Fees: $690
- LAST Fees with Interest: $1,092
- ASAF: $733
- Tax Adjustment: $37,523
- CAR: $5,422

**Total Damages: $484,731**

**7. Jason Blissett (Batch 121)**
- Backpay: $429,678
- Backpay with Interest: $467,473
- LAST Fees: $440
- LAST Fees with Interest: $511
- ASAF: $1,867
- Tax Adjustment: $50,487
- CAR: $9,533

**Total Damages: $529,871**

**8. Ahamed Abubakar (Batch 123)**
- Backpay: $790
- Backpay with Interest: $883
- LAST Fees: $422
- LAST Fees with Interest: $544

GULCS001771

**Total Damages: $1,427**

**9.Anna Ladino (Batch 123)**
- LAST Fees: $670
- LAST Fees with Interest: $953

**Total Damages: $953**

**10.Adetola Ogunbiyi (Batch 123)**
- LAST Fees: $70
- LAST Fees with Interest: $98

**Total Damages: $98**

**11.Aurora Roman (Batch 123)**
- Backpay: $125,822
- Backpay with Interest: $179,510
- LAST Fees: $210
- LAST Fees with Interest: $366
- ASAF: $433
- Tax Adjustment: $14,784
- CAR: $2,452

**Total Damages: $197,545**

**12.Blanca Gerena (Batch 123)**
- Backpay: $413,669
- Backpay with Interest: $450,661
- LAST Fees: $598
- LAST Fees with Interest: $807
- ASAF: $1,433
- Tax Adjustment: $48,606
- CAR: $6,349

**Total Damages: $507,856**

**13.Damaris Suarez (Batch 123)**
- LAST Fees: $530
- LAST Fees with Interest: $705

**Total Damages: $705**

**14.Idanesa Then-Maldonado (Batch 123)**
- LAST Fees: $176
- LAST Fees with Interest: $213

**Total Damages: $213**

**15.Jeanette Christian (Batch 123)**
- Backpay: $55,915
- Backpay with Interest: $65,417
- LAST Fees: $300
- LAST Fees with Interest: $401

- ASAF: $200
- Tax Adjustment: $6,570

**Total Damages: $72,588**

**16. Lil Nicasio (Batch 123)**
- Backpay: $796,538
- Backpay with Interest: $875,046
- LAST Fees: $794
- LAST Fees with Interest: $1,045
- ASAF: $3,820
- Tax Adjustment: $93,593
- CAR: $17,414

**Total Damages: $990,918**

**17. Lillie Sellars (Batch 123)**
- Backpay: $100,594
- Backpay with Interest: $140,517
- LAST Fees: $1,810
- LAST Fees with Interest: $2,900
- ASAF: $1,000
- Tax Adjustment: $11,820
- CAR: $1,744

**Total Damages: $157,981**

**18. Paul Anthony Stanley (Batch 123)**
- LAST Fees: $176
- LAST Fees with Interest: $224

**Total Damages: $224**

**19. Rafael Gerardo (Batch 123)**
- Backpay: $592
- Backpay with Interest: $854
- LAST Fees: $370
- LAST Fees with Interest: $626

**Total Damages: $1,480**

**20. Roxan Clarke Williams (Batch 123)**
- LAST Fees: $140
- LAST Fees with Interest: $186

**Total Damages: $186**

**21. Teddy Mallory (Batch 123)**
- LAST Fees: $370
- LAST Fees with Interest: $534

**Total Damages: $534**

**22. Toye Richardson-Brown (Batch 123)**

GULCS001773

- LAST Fees: $176
- LAST Fees with Interest: $226

**Total Damages: $226**

**23. Trenisse Sutton (Batch 123)**
- Backpay: $506,475
- Backpay with Interest: $542,181
- LAST Fees: $88
- LAST Fees with Interest: $101
- ASAF: $1,719
- Tax Adjustment: $59,511
- CAR: $9,069

**Total Damages: $612,581**

**24. Ydania Rodriguez (Batch 123)**
- Backpay: $934,563
- Backpay with Interest: $1,034,136
- LAST Fees: $300
- LAST Fees with Interest: $453
- ASAF: $6,133
- Tax Adjustment: $109,811

**Total Damages: $1,150,533**

**25. Zairy Saez (Batch 123)**
- Backpay: $1,396,015
- Backpay with Interest: $1,540,933
- LAST Fees: $300
- LAST Fees with Interest: $462
- ASAF: $7,733
- Tax Adjustment: $164,032
- CAR: $21,653

**Total Damages: $1,734,813**

October 4, 2022 Conference Summary

GULCS001774

**Migdalia Surita**

Demand: $394,359

Response: $284,266

Objection: Attrition.

The Special Master reviewed Defendant's objection to the removal of attrition probabilities beginning in September 2003. Defendant quantifies this objection as reducing claimant's backpay damages by $98,367 and ASAF by $949. Defendant asserted that claimant's employment after September 2003 outside the teaching field, including as a BOE Parent Coordinator, a non-teaching position, did not support the removal of attrition probabilities.

I.    Factual Background

The Special Master reviewed declarations dated January 6, 2022, May 13, 2022, and August 25, 2022 submitted by Ms. Surita. The following facts are taken from Ms. Surita's declarations.

In October 1998, Ms. Surita started working for the BOE as a paraprofessional, while she was in college, with the goal of eventually becoming a regularly appointed BOE teacher. In December 2000, she received her bachelor's degree in Human Services from Boricua College. In April 2002, she began working for the BOE as a Preparatory Provisional Teacher ("PPT"), still with the goal of becoming a regularly appointed teacher. She enjoyed being a classroom teacher and remains in touch with some of her former students to this day. She took the LAST on March 1, 2003 and failed. She avers that failing the LAST was devastating, she knew other teachers who could not pass the LAST despite multiple attempts, and she was discouraged from attempting to pass the LAST. She continued to work as a PPT until September 2003, when she was terminated for due to her inability to pass the LAST. She avers that her principal did not want to lose her, and the principal immediately offered Ms. Surita a Parent Coordinator position in the school. Ms. Surita accepted the position. While working as a Parent Coordinator, Ms. Surita filled in as a substitute teacher when a school was short-staffed or a teacher had called in sick. Ms. Surita worked as a BOE Parent Coordinator until she was injured at work in November 2017. In connection with her claim, Ms. Surita indicated that she would like to be "considered for a permanent teaching position" on the 2014 claim form, however she was unsure what that entailed. In July 2021, when she first met with Plaintiffs' counsel, she learned for the first time about the ability to become certified through this case without having to pass the LAST. She was very excited about the possibility of a path to return to the BOE as a teacher, and immediately asked to be evaluated for certification. Ms. Surita was evaluated by the Court-approved neutral consultant for a provisional certificate in Pre-K – Grade 6. On July 27, 2021, based on the consultant's evaluation, Ms. Surita was informed that she needed a total of thirty additional semester hours of Professional Education coursework from an accredited institution of higher education for

**GULCS001775**

certification.  In Fall 2021, Ms. Surita reached out to representatives of Boruica College and Queensborough Community College about enrolling.  Given the high financial costs of obtaining the credits, she realized she could not afford to enroll right away with a private institution and sought instead to become a New York City Teaching Fellow.  She learned, however, that she was not eligible to be a fellow.  Ms. Surita then began applying for non-BOE teaching positions in order to earn money to return to school to complete her Professional Education Coursework.  Ms. Surita generally applied to positions through Indeed.com, and from her review of records kept for the six months prior to her August 2022 declaration, she applied to eighteen non-BOE teaching positions in that time.  She also applied in August 2022 to be enrolled in the Fall 2022 Master's of Education program at Boruica College.  Ms. Surita avers that her desire to teach again and return to the BOE is sincere.

Defendant did not question Ms. Surita's credibility and did not call her as a witness.  The Special Master, therefore, credits the statements in Ms. Surita's declarations.

I.   <u>Analysis</u>

Defendant asserts that the model's attrition curve should apply because Plaintiffs have failed to provide objective evidence that Ms. Surita would have remained a teacher longer than non-class comparators.  Defendant argues that Ms. Surita's employment history is insufficient to overcome the presumption that the model should apply.  Specifically, Defendant argues that Ms. Surita's continued employment at the BOE as a Parent Coordinator until 2017, should not be considered evidence of a desire to remain in the teaching field as it was a non-teaching position.  In addition, Defendant points to her testing history which undercuts her claim that she wanted to be a BOE teacher and would have stayed one longer than non-class comparators.  Defendant also argues that recent attempts by Ms. Surita to become certified do not support the removal of attrition probabilities.  Defendant contends that Plaintiffs have failed to meet their burden of showing Ms. Surita would have remained a *teacher*, not just a BOE employee.

Plaintiffs initially countered Defendant's objection by pointing to the statement in the Special Master's Interim Report & Recommendation dated July 2015 ("July 2015 IRR") that "No uncertainty will exist for claimants who are still working at the BOE as of the date of judgment or who worked at the BOE until their retirement" as *a fortiori* evidence that the attrition probabilities should be removed and Ms. Surita should receive full back pay damages until November 2017 when she was injured and left her BOE employment as a Parent Coordinator.  In addition, Plaintiffs asserted that the Special Master had already awarded full backpay damages (without applying attrition) to numerous class members who continued or continue to work at the BOE in non-teaching capacities.  Following argument at the first hearing for Ms. Surita, Plaintiffs requested an opportunity to marshal the evidence to show that, even if Plaintiffs could not rely on the language in the July 2015 IRR, analyzing all evidence of Ms. Surita's teaching acts satisfied their burden that she would have remained a teacher longer than non-class comparators and attrition probabilities

should be removed.  Defendant consented and Plaintiffs submitted additional briefing on this issue. The parties again argued their positions at a second hearing for Ms. Surita, and an issue was raised concerning the sincerity of her effort to become certified through the injunction in this case and her continuing desire to become a BOE teacher.  Ms. Surita was given leave, with Defendant's consent, to submit another supplemental declaration attesting to those efforts.  After consideration of all the evidence presented, the Special Master overrules Defendant's objection.

The IRR filed on July 17, 2015 and adopted by the Court on September 21, 2015, provides that it is Plaintiffs' burden to adduce evidence of the appropriate backpay for each Claimant, including each Claimant's end date.  (See 7/17/15 IRR at 20-21) ("Plaintiffs will adduce evidence of the appropriate award of backpay for each claimant, including each claimant's end date. Defendant will have the opportunity to introduce its own evidence and challenge Plaintiffs' calculations."); Sir Speedy, Inc. v. L & P Graphics, Inc., 957 F.2d 1033, 1038 (2d Cir. 1992) ("In order to recover damages, a claimant must present evidence that provides the finder of fact with a reasonable basis upon which to calculate the amount of damages. . . . [The finder of fact] is not allowed to base its award on speculation or guesswork."); Tse v. UBS Fin. Servs., Inc., 568 F. Supp. 2d 274, 305 (S.D.N.Y. 2008) (Lynch, J.) (noting that if a Title VII plaintiff "wants damages, she must prove them" (alteration and citation omitted)). Plaintiffs claim that they are entitled to an evidentiary presumption that backpay would continue through the date of judgment.  Those courts that have addressed this issue, however, have found that the initial burden lies with the Plaintiff to prove damages, and not with the Defendant, who bears the burden of proving any off-set to damages.  See, e.g., Finch v. Hercules Inc., 941 F. Supp. 1395, 1420 (D. Del. 1996).).

The Special Master rejected that claimant's say-so, albeit in the form of a declaration, alone satisfies Plaintiffs' burden of establishing that she would have worked longer than the counterfactual model predicts.  The Special Master referenced the Court's prior Order that adopted his recommendation on September 21, 2015 that:

> [s]tatistical evidence that non-class comparators would have been hired or would have attrited or retired early may be admissible to show what a claimant would have done, but such evidence is not dispositive. Plaintiffs are entitled to adduce evidence of how long each claimant would have worked, and resolution of these factual issues will require individual hearings . . . . Absent a stipulation on the 'duration period,' which I invite parties to agree upon, statistical evidence on how similarly situated non-class comparators attrited will be considered in the first instance . . . for the length of time that claimant would have remained a teacher in a counterfactual (as if there had been no discrimination) world. . . . [E]ither side will be free to offer other evidence . . . to establish that claimant would have departed from the statistical norm . . . . [S]ubject to admissibility concerns, the parties will be free to offer evidence to establish why the statistical baseline should not be the 'duration period' in the case of any individual claimant. For example, either side will be free to offer other evidence, such as

GULCS001777

testimony of intent, proof of continued employment to date, evidence of familial employment patterns, actual cessation of employment, disability, personal needs and other probative evidence . . . to establish that a claimant would have departed from the statistical norm. . . . Finally, in all likelihood, the number of contested hearings on the "duration period" will be limited and capable of management. ***No uncertainty will exist for claimants who are still working at the BOE as of the date of judgment or who worked at the BOE until their retirement***. . . . Even for those claimants where the end date remains an open question, Defendant will have the opportunity to submit evidence to rebut a claimant's proposed end date. In addition to statistical evidence of non-class comparator attrition rates, Defendant will have the opportunity to adduce proof specific to the individual claimant, including that he or she was convicted of a crime, ceased working altogether, or moved out of state to aid an ailing relative. (7/17/15 IRR at 15, 22-24)(emphasis added).

At the first hearing on Ms. Surita's demand, the Special Master heard argument about the significance of his statement in the July 2015 IRR that "no uncertainty will exist for claimants who are still working at the BOE as of the date of judgment," and declined to adopt a bright-line rule that employment in any position at the BOE satisfies the burden for removal of attrition probabilities. Instead, the Special Master explained that his statement must be taken in the context of determining what evidence may be adduced at individual hearings in support of the removal of attrition probabilities where the class member would have remained a BOE *teacher* longer than non-class comparators. The Special Master noted that his statement supported the evaluation of all evidence that a class member would have worked longer as a BOE teacher than non-class comparators in order to depart from the statistical norm.

Applying that standard, the Special Master noted that Defendant does not question Ms. Surita's credibility. Even if he credits Claimant's statement that she honestly believes that had she not failed the LAST she would continue to work full time as a BOE teacher, without more it is not enough to sustain Plaintiffs' burden to establish a right to a departure from the attrition model. At most, such testimony constitutes Claimant's current speculation about what she now thinks she would have done.

Defendant's objection to the removal of attrition probabilities is targeted to the period following Ms. Surita's termination as a PPT in 2003 to her counterfactual end date of November 2017. Plaintiffs assert that Ms. Surita's testimony is corroborated by ample contemporaneous objective evidence, including her five years of classroom service for the BOE as a paraprofessional and PPT; her service as an occasional substitute teacher over the years she worked as a Parent Coordinator; her more than fourteen years of continued service for the BOE after she was terminated from her teaching position by the BOE; her nearly two decades in total working for the BOE; and her continued efforts to become certified through this case so she can one day return to the BOE as a teacher.

The Special Master has considered the totality of this evidence, including Ms. Surita's substantial recent efforts to become certified through the injunction in this case. While this presents a close case, the Special Master finds that the Plaintiffs have met their burden to support removal of attrition probabilities. While Ms. Surita only took the LAST once, Ms. Surita's over 19 years of employment at the BOE, including the five years as a paraprofessional and PPT and the years between September 2003 and November 2017 as a BOE parent coordinator and occasional substitute, reflected her intent to stay a teacher. Moreover, her continued efforts to become a BOE teacher, albeit after her counterfactual end date, is further evidence of her intent to have remained a teacher longer than the model predicts. The Special Master finds that Plaintiffs have sustained their burden of proving that the attrition probabilities should be removed.

Accordingly, the Special Master overrules Defendant's objection. The Special Master directs the parties to calculate an award consistent with this ruling.

GULCS001779

The following is a summary of the Special Master's rulings at the October 13, 2022 conference. The parties have had the opportunity to review a draft of the rulings and assert any objections or propose edits.  The parties agree that this summary accurately reflects the Special Master's rulings at the hearing.

1.  **Mediation Status** – **Update on Class Members with Proposed Settlements of Individual Judgments** – The parties indicated that they were scheduled to speak with Epiq next week to determine the reason for the discrepancy between the amounts that Epiq reported to have paid to class members and the total amounts that Epiq previously had provided to the parties.  The Special Master told the parties to inform Epiq that he would request Epiq's presence at a future conference if necessary.

2.  **Court's Partial Denial of the Motion for a Stay** – The Special Master noted that he had directed that a call take place between Defendant, Plaintiffs and TRS, and he asked the parties for a report of the call.  Plaintiffs stated that they learned for the first time that when the BOE receives unredacted Judgments, FOFCOLs, and Exhibits from the Special Master, the BOE does not just forward that information to TRS.  Instead, the BOE and its outside vendor create five separate data files and sends those files to TRS.  One of the files contains each class member's annual counterfactual salary.  Another is a wage file that follows the two-week wage period of the BOE and contains the wage that would have been paid to each class member per period.  Plaintiffs stated that TRS told them that it discovered about a month ago that the annual counterfactual salary file was not reconciling with the wage file for certain class members. Plaintiffs stated that TRS's preliminary understanding is that this error affects approximately half of the class members who have received invoices to date (650-700 class members) and that the error caused the amount each class member was required to contribute to be understated by less than $10 on average.

    The Special Master noted that if TRS is correct, the underpayment totaled less than $7,000.  He asked Defendant when it considers a solution to keep in mind the much larger cost the parties would incur if each of the 650-700 claimants were asked to contribute $10.  Defendant said that it was sensitive to the costs implicated and was looking at ways to resolve the issue.  The Special Master directed Defendant to continue to include the Plaintiffs in each step of the process so that TRS does not move forward with a possible solution without Plaintiffs' input. The Special Master also suggested that Defendant conduct its own investigation into what happened, why it happened, and who was responsible because the Special Master may ask for that information at a later date.

    Plaintiffs stated that TRS told them that it would provide them with a list containing the names of the class members affected by this error by the end of next week.  The Special Master asked Defendant to tell TRS that that list should also include the amount of the invoice understatement

for each class member.  Plaintiffs stated that TRS had said that it had all hands on deck trying to resolve this issue, and that TRS was developing a program that will look only at the annual counterfactual salary file to determine wages.  TRS told Plaintiffs that it expected that to be done by mid-November.  Plaintiffs stated this TRS systems work was separate and apart from the work for those class members who already received invoices.

Plaintiffs stated that they had asked Defendant for copies of the data files that the BOE transmitted to TRS.  The Special Master directed Defendant to provide that information to Plaintiffs within 30 days.

The Special Master asked the parties for an update regarding the implementation of salary, seniority and other adjustments, noting that he had seen emails regarding a chart that Defendant said it would provide Plaintiffs on October 17, and that Plaintiffs had asked for answers to certain questions this week.  Defendant stated that it was trying to provide the answers to Plaintiffs, and that it was on track to provide the chart on October 17.  The Special Master asked the parties what the chart contained.  Plaintiffs stated that the chart was a list of all class members with judgments who could be entitled to a salary adjustment.  In consultation with Plaintiffs, Defendant added several columns, including whether the class member currently worked for the BOE, their title, their last date of service if no longer employed by the BOE, the date of judgment, which BOE batch-check they are in, when the BOE last performed their review, their salary adjustment, their salary step, their years of service, and their additional CAR days.  Plaintiffs stated that this exercise was to make sure that all class members were checked by the BOE, because some eligible class members had fallen through the cracks and not received the adjustments to which they were entitled.  Defendant confirmed that it would provide the chart on Monday and that the Defendant would discuss any remaining questions Plaintiffs may have about it then.

The Special Master asked Defendant whether it would update the service history, which would provide a procedure to implement these adjustments going forward.  Defendant stated that its system was not capable of making one wholesale change to service history.  Defendant stated that it was making changes in the way that it could and was that it was complying with the order in a way that its systems allow.  Defendant suggested that once it has implemented the adjustments for all current judgment-holders, it will be a lot easier to put a procedure in place to make adjustments going forward.  The Special Master stated that he would feel more comfortable if the procedure included updating the service history.  He noted that the Defendant had requested the Special Master to include that requirement in his recommended judgments, and the Court had so ordered that service history be included.  The Special Master also noted that Plaintiffs predicted that inclusion of the service history would be the simplest way to ensure that all future salary adjustments were captured.  The Special Master directed Defendant to discuss with Plaintiffs the procedure that Defendant contemplated implementing before any steps were taken by Defendant, and that those discussions should take place promptly upon the implementation of the adjustments for the current judgment holders.  The Special Master asked

2

**GULCS001781**

Defendant whether someone will certify that the review has been completed and that all the required adjustments have been implemented.  Defendant stated that it was working on getting someone from the BOE to provide that certification.

The Special Master asked the parties for an update on the calculation of outside pension offsets. Plaintiffs stated that RRC was continuing its work and had provided additional calculations. The parties also discussed the work the OA was performing.  Plaintiffs explained that once OA completes its calculation and determines an offset amount, it enters that information into TRS's system.  Plaintiffs stated that some class members do not appear to be in TRS's system, so the OA cannot enter the offset for those class members.  Defendant indicated that it understood the issue and was working with TRS and OA to resolve it.

**3.** **Interim Requests for Fees** – The Special Master noted that he would circulate a draft Interim Report & Recommendation regarding Plaintiffs' Thirty-first Interim Request for Fees shortly.

**4.** **Conference Summaries**

    a. <u>Summary of the September 29, 2022 Conference</u> – The parties agreed to provide any edits or comments to the draft summary of the September 29, 2022 conference before the next conference.

    b. <u>Summary of the October 4, 2022 Conference</u> – The parties agreed to provide any edits or comments to the draft summary of the October 4, 2022 conference before the next conference.

**5.** **Award Tracking Chart** – Prior to the conference, the Special Master circulated a version of the below chart which had been updated as of October 11, 2022 and tracks the progress of awards that have been awarded or entered to date, as well as the number of claims and judgments left to be resolved/entered.

| AWARDS | |
|---|---:|
| Total estimated # of claims in the class: | 4889 |
| Total awards confirmed to date: | 3073 |
| Total claims withdrawn/resolved without the need for <u>award</u> to date: | 266 |
| Estimated additional claims that will be withdrawn/resolved without the need for award: | 157 |
| | |
| Estimated individual claims remaining: | **1393** |
| Weeks remaining until June 2023: | 33.3 |
| Individual claims to be resolved per week to meet June 2023 deadline: | **41.8** |

| JUDGMENTS |
|---|

October 13, 2022 Conference Summary

GULCS001782

| | |
|---|---|
| Proposed judgments filed by Special Master to date: | 2607 |
| Confirmed awards not yet reduced to proposed judgments: | 466 |
| Estimated remaining judgments to be filed by Special Master: | **1859** |

Plaintiffs stated that they would provide any edits to the chart before the next conference.

6. **Proposed Individual Hearing Schedule** – The parties indicated that they are working on ways to streamline the hearing schedule and judgment process, and that they would provide an update to the Special Master at the next conference.

7. **Individual Hearings**

   a. The Special Master previously held a hearing for <u>Jennifer Wilkerson</u> and his ruling appears at the end of this summary.

   b. The Special Master ruled that the following class members satisfied their burden of proving the listed amounts are the appropriate total damages amounts based on the evidence presented as of their presumed date of judgment. The parties agree that the amounts are accurately calculated using the experts' models, which incorporate the rulings recommended by the Special Master and adopted by the Court. These damages amounts are not final and are subject to change based on these class members' actual date of judgment. The parties will update and finalize the damages calculations prior to the entry of the final judgments subject to approval by the Special Master and the Court.

**1. Cynthia Asiedu-Boateng (Batch 124)**
- LAST Fees: $158
- LAST Fees with Interest: $208

**Total Damages: $208**

**2. Daniel Mejia (Batch 124)**
- Backpay: $36,016
- Backpay with Interest: $40,023
- LAST Fees: $352
- LAST Fees with Interest: $404
- ASAF: $367
- Tax Adjustment: $4,232

**Total Damages: $45,026**

**3. Marta Espinal (Batch 124)**
- Backpay: $506,944
- Backpay with Interest: $539,735
- LAST Fees: $176
- LAST Fees with Interest: $203
- ASAF: $2,933

October 13, 2022 Conference Summary

**GULCS001783**

- Tax Adjustment: $59,566
**Total Damages: $602,437**

**4. Roy Millington-Lee (Batch 124)**
- Backpay: $18,160
- Backpay with Interest: $24,276
- LAST Fees: $160
- LAST Fees with Interest: $221
- Tax Adjustment: $2,134
- CAR: $134
**Total Damages: $26,765**

**5. Lenny Melo-Lozada, Estate Of (Batch 124)**
- Backpay: $541,135
- Backpay with Interest: $621,942
- LAST Fees: $2,660
- LAST Fees with Interest: $3,674
- ASAF: $4,133
- Tax Adjustment: $63,583
- CAR: $11,233
**Total Damages: $704,565**

**6. Valerie Stephens-Salmon (Batch 124)**
- Backpay: $108,795
- Backpay with Interest: $118,374
- LAST Fees: $1,088
- LAST Fees with Interest: $1,436
- ASAF: $800
- Tax Adjustment: $12,783
**Total Damages: $133,393**

October 13, 2022 Conference Summary                    **GULCS001784**

**Jennifer Wilkerson** (Batch 119)

Demand: $8,007

Response:  $229 (fees only)

Objection:  Plaintiffs have not met their burden of proving that claimant was terminated or otherwise subject to an adverse action as a result of failing the LAST.

The Special Master reviewed Defendant's objection.  Defendant quantifies this objection as reducing claimant's backpay damages by $7,778.

Factual Background

The Special Master reviewed payroll data, service data and testing histories supplied by the parties.  The following facts are taken from the parties' submissions, the demand chart, the NYSED, and NYCAPs records.  Defendant did not call Ms. Wilkerson as a witness.

In October 1996, Ms. Wilkerson started working at the BOE as a Preparatory Provisional Teacher ("PPT").  On May 10, 1997, she failed the LAST.  On January 17, 1998 she passed the LAST on her second attempt.  That same day she also passed the ATS-W.  In September 1999 she obtained a special education provisional certificate, and in February 2000 she was hired as a regularly appointed special education teacher.  Starting in September 2001, she worked as an assistant principal until her retirement in 2013.

Procedural Background:

In its initial submission, Defendant mistakenly argued that Ms. Wilkerson was appointed as a teacher within nine months of her initial LAST failure.  Claimant in fact was appointed more than two years after her initial LAST failure.  After Plaintiffs pointed out the error in Defendant's submission, Defendant corrected the error but maintained that its underlying Title VII analysis was correct.  Plaintiffs then sought and received permission to submit a sur-reply.

Analysis

Plaintiffs seek a backpay award for Ms. Wilkerson, as calculated by the court-ordered model, for the delay it took Ms. Wilkerson to be appointed as a teacher as a result of her LAST failure.  Plaintiffs argue that had she passed the LAST on her first attempt, her counterfactual appointment date would have been November 1998, fifteen months earlier than when she was actually hired as a teacher.

Defendant argues that because Ms. Wilkerson was not "terminated, denied a position, or otherwise affected by her LAST failure" during the eight-month period between her failure and passage of the LAST, Plaintiffs have not met their burden of showing that Ms. Wilkerson suffered an adverse hiring action as a result of her failing the LAST.  According to Defendant, that eight-month delay was nothing more than an inconvenience akin to an undesirable assignment.

GULCS001785

The "delay" that Defendant relies on – the eight-month period between Ms. Wilkerson's failure of the LAST and her passage of the LAST – has no bearing on this backpay determination.  A claimant who takes and fails the LAST is presumptively entitled to backpay 18 months after first failing the LAST, and Defendant has offered no evidence to rebut this presumption.  Here, there is no dispute that Ms. Wilkerson failed the LAST and was not hired within 18 months of her failure, her counterfactual appointment date.  There is also no dispute that she was not hired until fifteen months after her counterfactual appointment date.  Absent any evidence to the contrary, that 15-month delay in claimant's appointment is an adverse employment action caused by the LAST, and Ms. Wilkerson is entitled to damages calculated by the court-ordered model.

The parties are directed to calculate an award on the basis of this decision.

The following is a summary of the Special Master's rulings at the October 19, 2022 conference. The parties have had the opportunity to review a draft of the rulings and assert any objections or propose edits. The parties agree that this summary accurately reflects the Special Master's rulings at the hearing.

1. **Mediation Status** – **Update on Class Members with Proposed Settlements of Individual Judgments** – The parties stated that they had spoken with Epiq and that Epiq had sent them a spreadsheet containing payment information. The parties informed the Special Master that they were scheduled to speak again with Epiq next week. The Special Master told the parties to notify Epiq that he requested Epiq's presence at a future conference if Epiq cannot clarify the total amount of payments Epiq made as of June 30, 2022 and how much was left in the Qualified Settlement Fund as of June 30, 2022.

2. **Court's Partial Denial of the Motion for a Stay** – The Special Master asked Defendant for an update on the data integrity issue. Defendant stated that TRS was focusing on a programming solution to fix the issue going forward and hoped to have one in place by mid-November. The Special Master stated that Defendant should also be focusing on remediating those claimants who have been receiving less than the full amount of their pension benefit as a result of this error. The Special Master asked that Defendant propose a solution to that issue as well, so all data integrity-related issues may be resolved by mid-November, and directed that Defendant include the Plaintiffs in each step of the process. The Special Master also reiterated his suggestion that Defendant conduct its own investigation into what happened, why it happened, and who was responsible. The Special Master stated that he may require that information at a later date.

The Special Master asked the parties for an update regarding the implementation of salary, seniority and other adjustments, noting that he had reviewed the parties' emails regarding the chart that Defendant provided on October 18. Defendant stated that the chart contained all judgment-holders who may be entitled to a salary adjustment, but that the chart did not reflect its "fall review" of teachers it has hired since August 31, 2022. Defendant indicated that it would schedule another call with Plaintiffs and the BOE shortly, and that at that time it would provide a schedule by which it will complete its fall review. The Special Master asked Defendant why it was unable to update the service history, which would provide a procedure to implement these adjustments going forward. Defendant stated that its system was not capable of making one wholesale change to service history without creating insurmountable errors and conflicts within the system. The Special Master directed Defendant to discuss with Plaintiffs and the BOE a procedure to make adjustments going forward.

The Special Master asked the parties for an update on the calculation of outside pension offsets. Defendant indicated that it was working with TRS to provide a schedule to resolve the OA's

1

issue with inputting its offsets into the TRS system for certain judgment-holders. Defendant stated that it would also coordinate with BERS and NYCERS to determine if there were any similar issues with their systems.

3. **Interim Requests for Fees** – The Special Master stated that he expected to file the Interim Report & Recommendation regarding Plaintiffs' Thirty-first Interim Request for Fees early next week. The parties confirmed that they continue to review, confer, and work to resolve objections regarding the outstanding requests for fees.

4. **Conference Summaries**

   a. <u>Summary of the September 29, 2022 Conference</u> – The Special Master confirmed that he accepts Plaintiffs' proposed edits to the summary of the September 29, 2022 conference, to which Defendant stated it had no objection. The Special Master declared the September 29, 2022 summary final.

   b. <u>Summary of the October 4, 2022 Conference</u> – The parties agreed to provide any edits or comments to the draft summary of the October 4, 2022 conference before the next conference.

   c. <u>Summary of the October 13, 2022 Conference</u> – The parties agreed to provide any edits or comments to the draft summary of the October 13, 2022 conference before the next conference.

5. **Award Tracking Chart** – Prior to the conference, the Special Master circulated a version of the below chart which had been updated as of October 18, 2022 and tracks the progress of awards that have been awarded or entered to date, as well as the number of claims and judgments left to be resolved/entered.

| AWARDS | |
|---|---:|
| Total estimated # of claims in the class: | 4889 |
| Total awards confirmed to date: | 3079 |
| Total claims withdrawn/resolved without the need for <u>award</u> to date: | 266 |
| Estimated additional claims that will be withdrawn/resolved without the need for award: | 156 |
| | |
| Estimated individual claims remaining: | **1388** |
| Weeks remaining until June 2023: | 32.3 |
| Individual claims to be resolved per week to meet June 2023 deadline: | **43.0** |

| JUDGMENTS | |
|---|---:|
| Proposed judgments filed by Special Master to date: | 2607 |

2

GULCS001788

| Confirmed awards not yet reduced to proposed judgments: | 472 |
|---|---|
| Estimated remaining judgments to be filed by Special Master: | **1860** |

Plaintiffs stated that they would provide any edits to the chart before the next conference.

6. **TRS Disability Claims** – Plaintiffs stated that there were three outstanding disability claims and they were awaiting responses from Defendant.  Defendant indicated that it was awaiting information for two of the claimants and would follow up on the status of the third.

7. **Proposed Individual Hearing Schedule** – The parties indicated that they are working on ways to streamline the hearing schedule and judgment process, and that they would provide an update to the Special Master at the next conference.

8. **Individual Hearings**

   a. The Special Master discussed claimant <u>Mabel White</u> (Batch 120) in mediation mode. The parties agreed to inform the Special Master of their views regarding testimony at any upcoming hearing after considering the issues raised.

   b. The Special Master ruled that the following class members satisfied their burden of proving the listed amounts are the appropriate total damages amounts based on the evidence presented as of their presumed date of judgment.  The parties agree that the amounts are accurately calculated using the experts' models, which incorporate the rulings recommended by the Special Master and adopted by the Court.  These damages amounts are not final and are subject to change based on these class members' actual date of judgment.  The parties will update and finalize the damages calculations prior to the entry of the final judgments subject to approval by the Special Master and the Court.

**1. Migdalia Surita (Batch 104)**
- Backpay: $326,589
- Backpay with Interest: $352,795
- LAST Fees: $70
- LAST Fees with Interest: $90
- ASAF: $3,100
- Tax Adjustment: $38,374

<u>**Total Damages: $394,359**</u>

**2. Peaches Diamond (Batch 122)**
- LAST Fees: $176
- LAST Fees with Interest: $206

<u>**Total Damages: $206**</u>

**3. Orvetta Johnson (Batch 122)**

3

- Backpay: $28,256
- Backpay with Interest: $31,313
- LAST Fees: $853
- LAST Fees with Interest: $957
- Tax Adjustment: $3,320
- CAR: $466

**Total Damages: $36,056**

**4. Marvin Lobbins (Batch 122)**
- LAST Fees: $79
- LAST Fees with Interest: $88

**Total Damages: $88**

**5. Jacqueline Munoz (Batch 123)**
- Backpay: $840,524
- Backpay with Interest: $925,711
- LAST Fees: $2,224
- LAST Fees with Interest: $2,695
- ASAF: $1,567
- Tax Adjustment: $98,762
- CAR: $15,958

**Total Damages: $1,044,693**

**6. Molly Misodi (Batch 102)**
- Backpay: $48,825
- Backpay with Interest: $86,055
- LAST Fees: $750
- LAST Fees with Interest: $1,418
- ASAF: $200
- Tax Adjustment: $5,737
- CAR: $905

**Total Damages: $94,315**

**7. Sheyla Torres (Batch 104)**
- Backpay: $23,217
- Backpay with Interest: $31,229
- LAST Fees: $160
- LAST Fees with Interest: $223
- ASAF: $0
- Tax Adjustment: $2,728
- CAR: $566

**Total Damages: $34,746**

4

GULCS001790

**8. Luz Echevarria (Batch 111)**
- Backpay: $294,470
- Backpay with Interest: $329,758
- LAST Fees: $1,099
- LAST Fees with Interest: $1,316
- Tax Adjustment: $34,600
- CAR: $4,273

**Total Damages: $369,947**


**9.  Regina Ratti (Batch 118)**
- Backpay: $397,391
- Backpay with Interest: $448,720
- LAST Fees: $228
- LAST Fees with Interest: $287
- ASAF: $4,300
- Tax Adjustment: $46,693

**Total Damages: $500,000**


**10. Andrea Alvarado (fka Mora) (Batch 122)**
- Backpay: $0
- Backpay with Interest: $0
- LAST Fees: $316
- LAST Fees with Interest: $353

**Total Damages: $353**


**11. Ceanea Cooper (Batch 122)**
- Backpay: $209,508
- Backpay with Interest: $245,034
- LAST Fees: $70
- LAST Fees with Interest: $94
- ASAF: $0
- Tax Adjustment: $24,617
- CAR: $4,046

**Total Damages: $273,791**


**12. Fanya Cantave (Batch 122)**
- Backpay: $0
- Backpay with Interest: $0
- LAST Fees: $140

October 19, 2022 Conference Summary                                    **GULCS001791**

- LAST Fees with Interest: $187

**Total Damages: $187**

**13. Christina Colosi (Batch 122)**
- Backpay: $0
- Backpay with Interest: $0
- LAST Fees: $176
- LAST Fees with Interest: $230

**Total Damages: $230**

**14. Betsy Garcia (Batch 122)**
- Backpay: $0
- Backpay with Interest: $0
- LAST Fees: $422
- LAST Fees with Interest: $481

**Total Damages: $481**

**15. Rosemary Milczewski (Batch 122)**
- Backpay: $0
- Backpay with Interest: $0
- LAST Fees: $176
- LAST Fees with Interest: $201

**Total Damages: $201**

**16. Natividad Seda (Batch 122)**
- Backpay: $8,036
- Backpay with Interest: $12,720
- LAST Fees: $670
- LAST Fees with Interest: $1,112

**Total Damages: $13,832**

**17. Mabel Thomas (Batch 122)**
- Backpay: $0
- Backpay with Interest: $0
- LAST Fees: $246
- LAST Fees with Interest: $316

**Total Damages: $316**

GULCS001792

**18. Harry Vilien (Batch 122)**
- Backpay: $96,979
- Backpay with Interest: $109,714
- LAST Fees: $210
- LAST Fees with Interest: $330
- ASAF: $1,167
- Tax Adjustment: $11,395

**Total Damages: $122,606**

**19. Hilda Young (Batch 122)**
- Backpay: $11,157
- Backpay with Interest: $15,453
- LAST Fees: $370
- LAST Fees with Interest: $553

**Total Damages: $16,006**

**GULCS001793**

The following is a summary of the Special Master's rulings at the October 27, 2022 conference. The parties have had the opportunity to review a draft of the rulings and assert any objections or propose edits.  The parties agree that this summary accurately reflects the Special Master's rulings at the hearing.

1.  **Mediation Status** – **Update on Class Members with Proposed Settlements of Individual Judgments** – The Special Master noted he had received an Epiq spreadsheet from the parties just prior to the conference.  Plaintiffs explained that the last tab on the spreadsheet contained the amount of cash in and cash out of the Qualified Settlement Fund.  The Special Master stated that he would review the spreadsheet and let the parties know if he had any further questions.

2.  **Court's Partial Denial of the Motion for a Stay** – The Special Master asked Defendant for an update on the data integrity issue discovered by TRS.  Defendant stated that it had provided Plaintiffs with a spreadsheet with the names of the claimants affected by the issue.  Defendant further stated that TRS was continuing its analysis to determine how this issue will affect those claimants' pension benefits.  Defendant also indicated that it was investigating what caused the issue in the first place.  The Special Master stated that he expected Defendant to propose a method of addressing those claimants who have been affected and propose a programming solution to fix the issue going forward by mid-November.  The Special Master further stated that Plaintiffs had to be consulted on any steps Defendant intends to take.  Defendant stated that it was working to set up a meeting with Plaintiffs, the BOE and TRS in the near future. Plaintiffs stated that they were analyzing the materials they had received from Defendant and were eager to speak with the BOE and TRS.

    The Special Master asked the parties for an update regarding the implementation of salary, seniority and other adjustments, noting that he had reviewed the parties' emails regarding a recent conference call and follow-up questions from Plaintiffs.  Plaintiffs stated that they had not heard from Defendant since their email on October 21, 2022.   Defendant stated that it would respond to Plaintiffs' email by the end of the week with an update.  The Special Master directed Defendant to provide an update before the next conference, including a schedule for completing its "fall review."

    The Special Master asked the parties for an update on the input of offsets by the OA into the TRS system.  Defendant stated that OA would be able to enter offsets in November for five of the judgment-holders for whom OA is presently unable to enter offsets, but that seven other judgment-holders will still have error codes once the offsets are entered and that TRS will be able to follow up on those once the data integrity issue has been resolved.  Plaintiffs indicated that there were several other judgement-holders for whom OA could not input its offsets, and the parties agreed to discuss those further.

1

GULCS001794

3. **Interim Requests for Fees** – The Special Master noted that he had filed the Interim Report & Recommendation regarding Plaintiffs' Thirty-first Interim Request for Fees, and that he had received Plaintiffs' Thirty-second Interim Request for Fees. The parties stated that they had reached an agreement with respect to Plaintiffs' Thirty-third Interim Request for Fees and would send the Special Master a letter shortly. Defendant indicated that it was reviewing Plaintiffs' Thirty-fourth, Thirty-fifth and Thirty-sixth Interim Requests for fees and would respond shortly.

4. **Conference Summaries**

   a. Summary of the October 4, 2022 Conference – The Special Master confirmed that he accepts Plaintiffs' and Defendants' proposed edits to the draft summary of the October 4, 2022 conference. The Special Master declared the October 4, 2022 summary final.

   b. Summary of the October 13, 2022 Conference – The Special Master stated that he had received Plaintiffs' proposed edits to the draft summary of the October 13, 2022 conference. Defendant stated that it had no objection to Plaintiffs' proposed edits nor any additional edits. The Special Master accepted Plaintiffs' proposed edits and declared the October 13, 2022 summary final.

   c. Summary of the October 19, 2022 Conference – The parties agreed to provide any edits or comments to the draft summary of the October 19, 2022 conference before the next conference.

5. **Award Tracking Chart** – Prior to the conference, the Special Master circulated a version of the below chart which had been updated as of October 26, 2022 and tracks the progress of awards that have been awarded or entered to date, as well as the number of claims and judgments left to be resolved/entered.

| AWARDS | |
| --- | --- |
| Total estimated # of claims in the class: | 4889 |
| Total awards confirmed to date: | 3102 |
| Total claims withdrawn/resolved without the need for award to date: | 266 |
| Estimated additional claims that will be withdrawn/resolved without the need for award: | 153 |
| | |
| **Estimated individual claims remaining:** | **1368** |
| Weeks remaining until June 2023: | 31.1 |
| Individual claims to be resolved per week to meet June 2023 deadline: | **43.9** |

| JUDGMENTS |
| --- |

October 27, 2022 Conference Summary

**GULCS001795**

| | |
|---|---|
| Proposed judgments filed by Special Master to date: | 2622 |
| Confirmed awards not yet reduced to proposed judgments: | 480 |
| Estimated remaining judgments to be filed by Special Master: | **1848** |

Plaintiffs stated that they would provide any edits to the chart before the next conference.

6.   **Submission of Judgments** – Plaintiffs indicated that they were awaiting a response from Defendants as to 30 draft judgments.  Defendant indicated that it was reviewing those draft judgments and working on ways to review the drafts more promptly in the future.  The Special Master asked Defendant to provide a schedule at the next conference setting forth when Defendant would respond to Plaintiffs' draft judgments going forward.

7.   **Mediation of Request for Incentive Awards** – The parties discussed with the Special Master a schedule for mediation of Plaintiffs' request for incentive awards to class representatives.

8.   **Individual Hearings**

    a.   The Special Master discussed claimant <u>Ruthie Margarin</u> (Batch 120) in mediation mode.

    b.   The Special Master ruled that the following class members satisfied their burden of proving the listed amounts are the appropriate total damages amounts based on the evidence presented as of their presumed date of judgment.  The parties agree that the amounts are accurately calculated using the experts' models, which incorporate the rulings recommended by the Special Master and adopted by the Court.  These damages amounts are not final and are subject to change based on these class members' actual date of judgment.  The parties will update and finalize the damages calculations prior to the entry of the final judgments subject to approval by the Special Master and the Court.

**1. Paula Marie Thomas (Batch 107)**
- Backpay: $339,906
- Backpay with Interest: $403,922
- LAST Fees: $320
- LAST Fees with Interest: $451
- ASAF: $2,537
- Tax Adjustment: $39,939
- CAR: $6,775

**Total Damages: $453,624**

**2.Farrah E. Danier (Batch 113)**
- Backpay: $344,446
- Backpay with Interest: $403,634
- LAST Fees: $210
- LAST Fees with Interest: $282
- ASAF: $600

- Tax Adjustment: $40,472
- CAR: $5,679

**Total Damages: $450,667**

**3.Suze Cantave-Labissiere (Batch 116)**
- Backpay: $1,084,026
- Backpay with Interest: $1,263,552
- LAST Fees: $2,526
- LAST Fees with Interest: $3,936
- ASAF: $5,667
- Tax Adjustment: $127,373
- CAR: $15,297

**Total Damages: $1,415,825**

**4.Sonya Evariste (Batch 116)**
- Backpay: $227,632
- Backpay with Interest: $264,929
- LAST Fees: $474
- LAST Fees with Interest: $587
- ASAF: $4,965
- Tax Adjustment: $26,747
- CAR: $17,064
- Employer Fund. Retire. Acct: (TBD)

**Total Damages: $314,292**

**5.Jennifer Wilkerson (Batch 117)**
- Backpay: $5,638
- Backpay with Interest: $7,778
- LAST Fees: $140
- LAST Fees with Interest: $229

**Total Damages: $8,007**

**6.Karen Ramos (Batch 117)**
- Backpay: $231,458
- Backpay with Interest: $253,801
- LAST Fees: $878
- LAST Fees with Interest: $1,160
- ASAF: $2,800
- Tax Adjustment: $27,196

**Total Damages: $284,957**

**7.Maria Aviles (Batch 119)**
- Backpay: $138,324
- Backpay with Interest: $195,628
- LAST Fees: $230

4

GULCS001797

- LAST Fees with Interest: $361
- Tax Adjustment: $16,253
- CAR: $2,323

**Total Damages: $214,565**

**8.Sharleen Williams (Batch 119)**
- Backpay: $497,153
- Backpay with Interest: $548,336
- LAST Fees: $280
- LAST Fees with Interest: $373
- ASAF: $1,886
- Tax Adjustment: $58,415
- CAR: $9,768

**Total Damages: $618,778**

**9.Miguel Diaz (Batch 120)**
- Backpay: $759,896
- Backpay with Interest: $830,437
- LAST Fees: $1,337
- LAST Fees with Interest: $1,566
- ASAF: $1,300
- Tax Adjustment: $89,288
- CAR: $14,386

**Total Damages: $936,977**

**10.Margaret Middlebrooks (Batch 120)**
- Backpay: $13,872
- Backpay with Interest: $15,689
- LAST Fees: $1,408
- LAST Fees with Interest: $1,822
- ASAF: $0
- Tax Adjustment: $0
- CAR: $0

**Total Damages: $17,511**

**11.Joyce Dean White (Batch 120)**
- Backpay: $473,506
- Backpay with Interest: $631,855
- LAST Fees: $200
- LAST Fees with Interest: $361
- ASAF: $4,533
- Tax Adjustment: $55,637
- CAR: $9,810

**Total Damages: $702,196**

**12. Maritza Sabourin (Batch 121)**
- Backpay: $501,955
- Backpay with Interest: $539,819
- LAST Fees: $370
- LAST Fees with Interest: $560
- ASAF: $8,200
- Tax Adjustment: $58,980
- CAR: $23,817

**Total Damages: $631,376**

**13. Ariel Valdez (Batch 121)**
- Backpay: $1,145,330
- Backpay with Interest: $1,292,815
- LAST Fees: $237
- LAST Fees with Interest: $265
- ASAF: $1,967
- Tax Adjustment: $134,576
- CAR: $23,706

**Total Damages: $1,453,329**

**14. Bernadette Boyd (Batch 122)**
- Backpay: $378,950
- Backpay with Interest: $402,355
- LAST Fees: $167
- LAST Fees with Interest: $197
- ASAF: $533
- Tax Adjustment: $44,527
- CAR: $6,804
- Employer-funded Retirement Acct: $0

**Total Damages: $454,416**

**15. Thomas Sayee (Batch 123)**
- Backpay: $524,221
- Backpay with Interest: $605,780
- LAST Fees: $158
- LAST Fees with Interest: $211
- ASAF: $2,566
- Tax Adjustment: $61,596
- CAR: $15,190
- Employer Funded Retirement Acct: ($13,770)

**Total Damages: $671,573**

October 27, 2022 Conference Summary

GULCS001799

The following is a summary of the Special Master's rulings at the November 2, 2022 conference. The parties have had the opportunity to review a draft of the rulings and assert any objections or propose edits.  The parties agree that this summary accurately reflects the Special Master's rulings at the hearing.

1.  **Mediation Status** – **Update on Class Members with Proposed Settlements of Individual Judgments** – The Special Master asked Plaintiffs for an update on judgment holders to whom settlement offers containing a payment plan were sent but who have neither accepted nor rejected the settlement offer.  Plaintiffs stated that 58 judgment holders had not responded. Plaintiffs indicated that 12 of those 58 judgment holders are deceased, and that Plaintiffs have been in touch with the estates or families of nine of the deceased. Plaintiffs further indicated that they had recently re-sent copies of the settlement offers return receipt requested to twelve class members for whom new contact information was obtained and that Plaintiffs continue to receive calls from other class members to whom settlement offers were made.

2.  **Court's Partial Denial of the Motion for a Stay** – The Special Master asked the parties for an update on the data discrepancy issue.  Defendants stated that TRS was on schedule to implement a programming solution by mid-November, at which point TRS would be able to start processing claimant pensions again.  Defendant also indicated that, based on TRS's further review, it appeared that this issue ultimately affected invoices and pension benefit calculations for a small number of judgment holders who already were processed by TRS, and that the parties were working together to determine the exact degree to which those judgment holders were affected.  The parties agreed to provide a report on their progress at the next conference. The Special Master asked Defendant whether other technology issues needed to be addressed. Defendant stated that TRS is implementing fixes for other error codes.  The Special Master asked Defendant, with Plaintiffs' input, to propose a schedule at the next conference identifying each error code and when it would be resolved.

The Special Master asked the parties for an update regarding the implementation of salary, seniority, and other adjustments.  Plaintiffs stated that they had spoken with Defendant earlier this week.  Plaintiffs asked Defendant to confirm the schedule for implementing the remaining adjustments, to respond to the questions Plaintiffs had included in their September 6, 2022 comments to the schedule that was proposed by Defendant on August 31, 2022, and to provide a date by which Plaintiffs will receive an updated chart containing the fall 2022 adjustments. Plaintiffs also asked Defendant to prepare and circulate a draft a document that provides the parties, Special Master, and BOE with a roadmap for how these adjustments will get done going forward, including identification of the BOE office and individual who will be responsible for each step.  The Special Master ordered Defendant to provide Plaintiffs with the requested information by the end of November.

1

**GULCS001800**

The Special Master asked the parties for an update on the input of offsets by the OA into the TRS system.  Defendant stated that 12 judgment holders were affected by this issue, and that 5 would be resolved by mid-November when the data discrepancy solution is implemented.  Defendant said that the other seven judgment holders will still have error codes once the offsets are entered in mid-November and that TRS will follow up on those once the data discrepancy issue has been resolved.

3. **Conference Summaries**

   a. <u>Summary of the October 19, 2022 Conference</u> – The Defendant stated that it had no objection to Plaintiffs' proposed edits to the summary of the October 19 2022 conference and had no additional edits.  The Special Master stated that he accepted Plaintiffs' proposed edits and declared the October 19, 2022 summary final.

4. **Award Tracking Chart** – Prior to the conference, the Special Master circulated a version of the below chart which had been updated as of November 1, 2022 and tracks the progress of awards that have been awarded or entered to date, as well as the number of claims and judgments left to be resolved/entered.

| AWARDS | |
|---|---:|
| Total estimated # of claims in the class: | 4889 |
| Total awards confirmed to date: | 3113 |
| Total claims withdrawn/resolved without the need for <u>award</u> to date: | 266 |
| Estimated additional claims that will be withdrawn/resolved without the need for award: | 152 |
| | |
| Estimated individual claims remaining: | **1358** |
| Weeks remaining until June 2023: | 30.3 |
| Individual claims to be resolved per week to meet June 2023 deadline: | **44.8** |

| JUDGMENTS | |
|---|---:|
| Proposed judgments filed by Special Master to date: | 2622 |
| Confirmed awards not yet reduced to proposed judgments: | 491 |
| Estimated remaining judgments to be filed by Special Master: | **1849** |

Plaintiffs confirmed that the chart was accurate.

5. **TRS Disability Claims** – Plaintiffs stated that there were three claimants with pending disability claims.  Plaintiffs indicated that they intended to withdraw one of those claims, and that they were awaiting a response from the Defendant on the other two.  Defendant stated that those claims were under review and that it would respond to Plaintiffs shortly.

2

**GULCS001801**

6. **Individual Hearings Schedule, Projected Completion of Hearings, and Submission of Judgments** – Plaintiffs indicated that excluding "fees only" class members, there were approximately 350 awards that have not yet been reduced to judgments. Plaintiffs stated that they were awaiting comments on the draft judgments it previously sent to Defendant. The Special Master noted that pre-judgment interest continues to accumulate for those awards not yet reduced to judgments, so it was in Defendant's interest to allocate more resources to get the judgments done. Defendant indicated that it was working on ways to review the drafts more promptly in the future. The Special Master asked Defendant to provide a schedule at the next conference setting forth when Defendant would respond to Plaintiffs' draft judgments going forward.

Plaintiffs stated that they continue to work with the Defendant towards streamlining the demand process. Plaintiffs agreed to analyze the data for previous class members to try to estimate how long it might take for the remaining class members to proceed from the submission of a demand to the confirming of an award.

7. **Mediation of Request for Incentive Awards** – The parties discussed Plaintiffs' request for incentive awards to class representatives in mediation mode.

8. **Individual Hearings**

   a. The Special Master ruled that the following class members satisfied their burden of proving the listed amounts are the appropriate total damages amounts based on the evidence presented as of their presumed date of judgment. The parties agree that the amounts are accurately calculated using the experts' models, which incorporate the rulings recommended by the Special Master and adopted by the Court. These damages amounts are not final and are subject to change based on these class members' actual date of judgment. The parties will update and finalize the damages calculations prior to the entry of the final judgments subject to approval by the Special Master and the Court.

**1. Karen Vega-Luna (Batch 106)**
- Backpay: $604,445
- Backpay with Interest: $662,663
- LAST Fees: $140
- LAST Fees with Interest: $194
- ASAF: $3,619
- Tax Adjustment: $71,022
- CAR: $13,412
**Total Damages: $750,910**

**2.Neima Colon Fernandez (Batch 119)**
- Backpay: $251,063
- Backpay with Interest: $310,336
- LAST Fees: $230
- LAST Fees with Interest: $316

November 2, 2022 Conference Summary                                   **GULCS001802**

- ASAF: $1,333
- Tax Adjustment: $29,500
- CAR: $3,210

**Total Damages: $344,695**

**3.Monica Adderley-Scott (Batch 121)**
- Backpay: $515,885
- Backpay with Interest: $550,763
- LAST Fees: $758
- LAST Fees with Interest: $1,013
- ASAF: $3,900
- Tax Adjustment: $60,616
- CAR: $9,893

**Total Damages: $626,185**

**4.Griselda Garcia (Batch 121)**
- Backpay: $1,069,735
- Backpay with Interest: $1,202,309
- LAST Fees: $653
- LAST Fees with Interest: $770
- ASAF: $1,633
- Tax Adjustment: $125,694
- CAR: $22,582

**Total Damages: $1,352,988**

**5.Cynthia Harley (Batch 121)**
- Backpay: $661,521
- Backpay with Interest: $721,784
- LAST Fees: $334
- LAST Fees with Interest: $419
- ASAF: $500
- Tax Adjustment: $77,729
- CAR: $11,884

**Total Damages: $812,316**

**6.Fatimata Sakanoko (Batch 121)**
- Backpay: $271,104
- Backpay with Interest: $310,566
- LAST Fees: $1,557
- LAST Fees with Interest: $1,822
- ASAF: $282
- Tax Adjustment: $31,855
- CAR: $4,764
- Agreed Reduction ($180,000)

4

GULCS001803

**Total Damages: $169,289**

**7.Millicent Williams (Batch 123)**
- Backpay: $17,796
- Backpay with Interest: $19,940
- LAST Fees: $198
- LAST Fees with Interest: $221
- Tax Adjustment: $2,091
- CAR: $301

**Total Damages: $22,553**

**8.Geraldine Holt (Batch 124)**
- Backpay: $75,241
- Backpay with Interest: $85,340
- LAST Fees: $158
- LAST Fees with Interest: $194
- ASAF: $0
- Tax Adjustment: $8,841
- CAR: $2,947

**Total Damages: $97,322**

November 2, 2022 Conference Summary                    **GULCS001804**

The following is a summary of the Special Master's rulings at the November 10, 2022 conference. The parties have had the opportunity to review a draft of the rulings and assert any objections or propose edits.  The parties agree that this summary accurately reflects the Special Master's rulings at the hearing.

1. **Court's Partial Denial of the Motion for a Stay** – The Special Master asked the parties for an update on the data discrepancy issue.  Defendant confirmed that TRS is completing its final testing and remained on track to implement a programming solution and will resume processing claimant pensions by the end of next week.  Plaintiffs stated that Defendant confirmed that of the 1,000 class members affected by the data discrepancy issue, the wage data discrepancy was limited to only a few pay periods in all but approximately 50 of the class members. The parties agreed that nothing need be done to correct their invoices or pension benefit calculations.  Plaintiffs indicated that the parties and TRS continue to work through the 50 remaining affected class members.  The parties agreed to report on their progress at the next conference.  The parties also agreed to provide the Special Master a checklist identifying each outstanding technology issue, the proposed solution, and the timeline for resolving the issue.

   The Special Master asked the parties for an update regarding the implementation of salary, seniority, and other adjustments.  Plaintiffs stated that Defendant had confirmed that it will provide Plaintiffs by December 2 an updated chart reflecting all adjustments.  Defendant stated that it was following up on the open questions that Plaintiffs had posed and would provide responses by the end of the following week.  Defendant agreed to give the Special Master an interim progress report on Plaintiffs' open questions by November 29.  The parties agreed to provide the Special Master a report on their discussions regarding a possible resolution of the CAR payout issue by November 21.

   The Special Master noted that Defendant previously had indicated that it was unable to update the class members' service histories because it would be too disruptive to its systems.  The Special Master further noted that updating service histories was what the judgments require and that it was Defendant who requested that that language be used.  As a result, Defendant will have to satisfy Plaintiffs that the roadmap it develops for how these adjustments will get done going forward is an adequate proxy for what the Court has ordered.  Defendant stated that it understood, and that it was looking at its systems to ensure the adjustments will be made going forward without issue.

   The Special Master asked the parties for an update on the OA's schedule for completing all outstanding calculations.  Plaintiffs stated that OA expects to finalize a significant number of class members next week.  Plaintiffs agreed to ask OA for its expectation of how long it will take to finalize each batch it receives from RRC over the next two months.

2. **Conference Summaries**

   a. <u>Summary of the October 27, 2022 Conference</u> – Defendant stated that it had no objection to Plaintiffs' proposed edits to the summary of the October 27, 2022 conference and had no additional edits.  The Special Master stated that he accepted Plaintiffs' proposed edits and declared the October 27, 2022 summary final.

   b. <u>Summary of the November 2, 2022 Conference</u> – Defendant stated that it had no objection to Plaintiffs' proposed edits to the summary of the November 2, 2022 conference and had no additional edits.  The Special Master stated that he accepted Plaintiffs' proposed edits and declared the November 2, 2022 summary final.

3. **Award Tracking Chart** – Prior to the conference, the Special Master circulated a version of the below chart which had been updated as of November 9, 2022 and tracks the progress of awards that have been awarded or entered to date, as well as the number of claims and judgments left to be resolved/entered.

| AWARDS | |
|---|---|
| Total estimated # of claims in the class: | 4889 |
| Total awards confirmed to date: | 3121 |
| Total claims withdrawn/resolved without the need for <u>award</u> to date: | 266 |
| Estimated additional claims that will be withdrawn/resolved without the need for award: | 151 |
| | |
| **Estimated individual claims remaining:** | **1351** |
| Weeks remaining until June 2023: | 29.1 |
| Individual claims to be resolved per week to meet June 2023 deadline: | **46.4** |

| JUDGMENTS | |
|---|---|
| Proposed judgments filed by Special Master to date: | 2622 |
| Confirmed awards not yet reduced to proposed judgments: | 499 |
| Estimated remaining judgments to be filed by Special Master: | **1850** |

Plaintiffs confirmed that the chart was accurate.

4. **TRS Disability Claims** – Plaintiffs stated that there were two claimants with pending disability claims.  Defendant stated that it was awaiting documents from providers for both, and that he would follow up with Plaintiffs.

2

5.  **Individual Hearings Schedule, Projected Completion of Hearings, and Submission of Judgments** – The parties indicated that they are working on ways to streamline the hearing schedule and judgment process, and that they would provide an update to the Special Master at the next conference.  The Special Master noted that at the current rate, the parties would not complete the demand process until June 2024 and urged the parties to continue to be creative in looking for ways to expedite the process.  The Special Master asked the parties to continue conferring and to present him with ways to increase the pace of the process.

Plaintiffs indicated that they would be submitting additional judgments for the November cohort.  The Special Master urged Plaintiffs to push to get judgments done as soon as possible so that the judgment-holders may be paid out in this fiscal year.  The Special Master asked Plaintiffs if it has been tracking the total dollar amount of judgments they expect to be paid out this fiscal year.  Plaintiff stated they were tracking that amount and would provide an update at the next conference.

6.  **Individual Hearings**

    a.  The Special Master ruled that the following class members satisfied their burden of proving the listed amounts are the appropriate total damages amounts based on the evidence presented as of their presumed date of judgment.  The parties agree that the amounts are accurately calculated using the experts' models, which incorporate the rulings recommended by the Special Master and adopted by the Court.  These damages amounts are not final and are subject to change based on these class members' actual date of judgment.  The parties will update and finalize the damages calculations prior to the entry of the final judgments subject to approval by the Special Master and the Court.

**1. Georgianna White (Batch 104)**
- Backpay: $649,288
- Backpay with Interest: $686,634
- LAST Fees: $753
- LAST Fees with Interest: $879
- ASAF: $3,533
- Tax Adjustment: $76,291

**Total Damages: $767,337**

**2. Alicia Bermudez (Batch 125)**
- Backpay: $413,964
- Backpay with Interest: $454,516
- LAST Fees: $1,004
- LAST Fees with Interest: $1,276
- ASAF: $2,267

GULCS001807

- Tax Adjustment: $48,641

**Total Damages: $506,700**

### 3. Diana Gutierrez (Batch 125)
- Backpay: $3,028
- Backpay with Interest: $3,124
- LAST Fees: $888
- LAST Fees with Interest: $999

**Total Damages: $4,123**

### 4. Francheska Cepeda (Batch 125)
- LAST Fees: $176
- LAST Fees with Interest: $203

**Total Damages: $203**

### 5. Jose Zayas (Batch 125)
- Backpay: $11,577
- Backpay with Interest: $15,749
- LAST Fees: $970
- LAST Fees with Interest: $1,412
- CAR: $139

**Total Damages: $17,300**

### 6. Karen Johnson (Batch 125)
- Backpay: $143,540
- Backpay with Interest: $170,541
- LAST Fees: $1,590
- LAST Fees with Interest: $2,270
- ASAF: $3,067
- Tax Adjustment: $16,866

**Total Damages: $192,744**

### 7. Nichol Crooks (Batch 125)
- LAST Fees: $176
- LAST Fees with Interest: $225

**Total Damages: $225**

### 8. Ngozi Hodder (Batch 125)
- LAST Fees: $198
- LAST Fees with Interest: $222

**Total Damages: $222**

### 9. Nicio Pichardo (Batch 125)
- LAST Fees: $140
- LAST Fees with Interest: $210

4

GULCS001808

**Total Damages: $210**

**10. Olinda Ramirez (Batch 125)**
- Backpay: $16,881
- Backpay with Interest: $18,601
- LAST Fees: $2,475
- LAST Fees with Interest: $2,815
- Tax Adjustment: $1,984

**Total Damages: $23,400**

**11. Suzanne Deshong (Batch 125)**
- LAST Fees: $880
- LAST Fees with Interest: $1,057

**Total Damages: $1,057**

**12. Samuel Miller (Batch 125)**
- LAST Fees: $264
- LAST Fees with Interest: $339

**Total Damages: $339**

**13. Shelly Reed (Batch 125)**
- LAST Fees: $176
- LAST Fees with Interest: $202

**Total Damages: $202**

**14. Vanessa Acevedo (Batch 125)**
- Backpay: $307,251
- Backpay with Interest: $348,021
- LAST Fees: $920
- LAST Fees with Interest: $1,366
- ASAF: $1,133
- Tax Adjustment: $36,102

**Total Damages: $386,622**

November 10, 2022 Conference Summary                    **GULCS001809**

The following is a summary of the Special Master's rulings at the December 1, 2022 conference. The parties have had the opportunity to review a draft of the rulings and assert any objections or propose edits. The parties agree that this summary accurately reflects the Special Master's rulings at the hearing.

1. **Court's Partial Denial of the Motion for a Stay** – The Special Master asked the parties for an update on the data discrepancy issue effecting pension relief. Defendant confirmed that TRS implemented a programming solution and resumed processing claimant pensions. Defendant stated that it expected TRS to send approximately 130 invoices in the next two weeks. The Special Master asked whether other technical issues still affected TRS's ability to process pension relief. Defendant indicated that certain error codes had been fixed, but that others remained. Defendant agreed to provide a list of each outstanding technology issue/error code and a schedule for their resolution by TRS. The Special Master asked for an update on those approximately fifty class members who were enrolled in the pension system and were impacted by the wage data discrepancy in several pay periods. Plaintiffs stated that they had been conferring with Defendant and that they were able to categorize these class members by issue. Plaintiffs explained that they were able to resolve 30 class members through the TRS fix. Plaintiffs stated that approximately 20 class members remain and the parties and TRS continue to work through potential resolutions for these 20 class members. The parties agreed to report on their progress at the next conference.

   The Special Master noted that he had reviewed the parties' recent email correspondence and asked the parties for an update regarding the implementation of salary, seniority, and other adjustments. Plaintiffs stated that they had reviewed Defendant's responses to the questions they had previously posed and sent Defendant a separate email with follow-up questions. Plaintiffs stated that overall, while they appreciated receiving Defendant's response, it was not granular enough and did not give them the particulars they were seeking. The Special Master stated that his view was that the generic response that the Human Resources Department would handle the adjustments was insufficient, and Defendant should provide greater details on areas of responsibility. Plaintiffs also noted that, to the extent Defendant is working on a protocol document, the responses provided would not be sufficient for purposes of creating the protocol. Defendant agreed to review the responses and confer with Plaintiffs. Defendant explained that it expected to work on the protocol document after completing the Fall adjustments. Defendant also stated that it would provide an updated chart reflecting the adjustments the next day. The parties also agreed to provide the Special Master with a report on their discussions regarding a resolution of the CAR payout issue at the next conference. Finally, Defendant confirmed that the Fall 2022 adjustments would be reflected in the affected class members' upcoming paychecks.

   The Special Master reiterated that the judgments require Defendant to update service histories and, as a result, Defendant will have to satisfy Plaintiffs that the protocol or roadmap it develops

1

**GULCS001810**

for how these adjustments will get done going forward is an adequate proxy for what the Court has ordered.  Defendant stated that it understood.

The Special Master asked the parties for an update on RRC's work and on the OA's schedule for completing all outstanding calculations.  Plaintiffs stated that RRC and the OA continue to make progress.  Plaintiffs stated that the OA confirmed offset amounts for a large number of class members it had under review.  Plaintiffs stated that they understood the OA was still working to determine how to transmit that data to TRS.  The parties agreed to provide an update at the next conference.

2.  **Conference Summaries**

    a.  <u>Summary of the November 10, 2022 Conference</u> – Defendant stated that it had no objection to Plaintiffs' proposed edits to the summary of the November 10, 2022 conference and had no additional edits.  The Special Master stated that he accepted Plaintiffs' proposed edits and declared the November 10, 2022 summary final.

3.  **Award Tracking Chart** – Prior to the conference, the Special Master circulated a version of the below chart which had been updated as of November 29, 2022 and tracks the progress of awards that have been awarded or entered to date, as well as the number of claims and judgments left to be resolved/entered.

| AWARDS | |
|---|---:|
| Total estimated # of claims in the class: | 4889 |
| Total awards confirmed to date: | 3135 |
| Total claims withdrawn/resolved without the need for <u>award</u> to date: | 266 |
| Estimated additional claims that will be withdrawn/resolved without the need for award: | 149 |
| | |
| Estimated individual claims remaining: | **1339** |
| Weeks remaining until June 2023: | 26.3 |
| Individual claims to be resolved per week to meet June 2023 deadline: | **50.9** |

| JUDGMENTS | |
|---|---:|
| Proposed judgments filed by Special Master to date: | 2678 |
| Confirmed awards not yet reduced to proposed judgments: | 457 |
| Estimated remaining judgments to be filed by Special Master: | **1796** |

Plaintiffs confirmed that the chart was accurate.

GULCS001811

4.  **TRS Disability Claims** – Plaintiffs stated that they were discussing with Defendant one class member's disability claim and that there were two other class members with pending disability claims that Defendant was reviewing.  Defendant stated that it was awaiting documents from providers for both, and that it would follow up with Plaintiffs.

5.  **Individual Hearings Schedule, Projected Completion of Hearings, and Submission of Judgments** – The parties indicated that they are working on ways to streamline the hearing schedule and judgment process, and that they would provide an updated schedule to the Special Master at the next conference.  The Special Master noted that at the current rate, the parties would not complete the demand process until June 2024 and urged the parties to continue to be creative in looking for ways to expedite the process.

    The Special Master asked the parties if they were continuing to track the total dollar amounts of judgments they expect to be paid in the current fiscal year.  Plaintiffs stated they were tracking these amounts and would provide an update on the amounts at the next conference.  The Special Master reminded Plaintiffs that they should push to get judgments done as soon as possible so that the judgment-holders may be paid out in this fiscal year.

6.  **Individual Hearings**

    a.  The Special Master ruled that the following class members satisfied their burden of proving the listed amounts are the appropriate total damages amounts based on the evidence presented as of their presumed date of judgment.  The parties agree that the amounts are accurately calculated using the experts' models, which incorporate the rulings recommended by the Special Master and adopted by the Court.  These damages amounts are not final and are subject to change based on these class members' actual date of judgment.  The parties will update and finalize the damages calculations prior to the entry of the final judgments subject to approval by the Special Master and the Court.

**1. Jackie Knowles (Batch 109)**
- Backpay: $815,615
- Backpay with Interest: $896,264
- LAST Fees: $320
- LAST Fees with Interest: $468
- ASAF: $5,533
- Tax Adjustment: $95,835
- CAR: $17,593

**Total Damages: $1,015,693**

**2. Noblida Moncado (Batch 117)**
- Backpay: $27,477
- Backpay with Interest: $41,367

December 1, 2022 Conference Summary

**GULCS001812**

- LAST Fees: $210
- LAST Fees with Interest: $388
- ASAF: $800
- Tax Adjustment: $3,229
- Agreed Reduction: ($20,000)

**Total Damages: $25,784**

**3. Armando Piedrahita (Batch 118)**
- Backpay: $325,781
- Backpay with Interest: $359,901
- LAST Fees: $370
- LAST Fees with Interest: $481
- ASAF: $3,967
- Tax Adjustment: $38,279
- CAR: $12,152

**Total Damages: $414,780**

**4. Esmeralda Colon (Batch 120)**
- Backpay: $255,551
- Backpay with Interest: $282,374
- LAST Fees: $840
- LAST Fees with Interest: $944
- ASAF: $1,200
- Tax Adjustment: $30,027

**Total Damages: $314,545**

**5. Elsie Ortiz (Batch 120)**
- Backpay: $251,749
- Backpay with Interest: $303,395
- LAST Fees: $160
- LAST Fees with Interest: $236
- ASAF: $1,878
- Tax Adjustment: $29,580
- CAR: $8,409

**Total Damages: $343,498**

**6. Roslyn Pinder (Batch 119)**
- Backpay: $301,631
- Backpay with Interest: $335,815
- LAST Fees: $2,308
- LAST Fees with Interest: $3,194
- ASAF: $467
- Tax Adjustment: $35,442
- CAR: $5,416

**Total Damages: $380,334**

4

GULCS001813

**7**. **Mercia Crowther (Batch 121)**
- Backpay: $762,518
- Backpay with Interest: $833,743
- LAST Fees: $316
- LAST Fees with Interest: $420
- ASAF: $5,833
- Tax Adjustment: $89,596
- CAR: $21,253

**Total Damages: $950,845**


**8. Elizabeth Rodriguez (Carela) (Batch 122)**
- Backpay: $923,768
- Backpay with Interest: $1,015,043
- LAST Fees: $1,142
- LAST Fees with Interest: $1,428
- ASAF: $5,733
- Tax Adjustment: $108,543
- CAR: $19,478

**Total Damages: $1,150,225**

**9. Kijafa Crumble (Batch 122)**
- Backpay: $749,092
- Backpay with Interest: $824,324
- LAST Fees: $70
- LAST Fees with Interest: $94
- ASAF: $3,300
- Tax Adjustment: $11,567

**Total Damages: $839,285**

**10**. **Julia Manning (Batch 122)**
- Backpay: $600,172
- Backpay with Interest: $665,527
- LAST Fees: $90
- LAST Fees with Interest: $121
- ASAF: $2,305
- Tax Adjustment: $70,520
- CAR: $11,220

**Total Damages: $749,693**

**11. Camelia Flye (Batch 123)**
- Backpay: $35,268
- Backpay with Interest: $46,749
- LAST Fees: $140
- LAST Fees with Interest: $196
- Tax Adjustment: $4,144

December 1, 2022 Conference Summary

GULCS001814

- CAR: $1,012
- Agreed Reduction ($6,000)

**Total Damages: $46,101**

**12. Amauris Flores (Batch 124)**
- Backpay: $21,732
- Backpay with Interest: $28,896
- LAST Fees: $280
- LAST Fees with Interest: $411
- Tax Adjustment: $2,554

**Total Damages: $31,861**

**13. Sharon Perez (Batch 124)**
- Backpay: $515,916
- Backpay with Interest: $566,570
- LAST Fees: $350
- LAST Fees with Interest: $478
- ASAF: $5,733
- Tax Adjustment: $60,620
- CAR: $19,478

**Total Damages: $652,879**

**14. Winnifred Simpson (Batch 124)**
- Backpay: $335,518
- Backpay with Interest: $362,988
- LAST Fees: $88
- LAST Fees with Interest: $112
- ASAF: $1,920
- Tax Adjustment: $39,423
- CAR: $10,068

**Total Damages: $414,511**

**15. Karen Anderson (Batch 125)**
- LAST Fees: $88
- LAST Fees with Interest: $116

**Total Damages: $116**

**16. Gary Clemons (Batch 125)**
- Backpay: $213,389
- Backpay with Interest: $236,089
- LAST Fees: $160
- LAST Fees with Interest: $216
- ASAF: $3,997
- Tax Adjustment: $25,073
- CAR: $13,178

**Total Damages: $278,553**

GULCS001815

**17**. **Gloria Reese (Batch 125)**
•     Backpay: $305
•     Backpay with Interest: $399
•     LAST Fees: $230
•     LAST Fees with Interest: $309
**Total Damages: $708**

**18**. **Margarina James (Batch 125)**
•     Backpay: $191,878
•     Backpay with Interest: $250,293
•     LAST Fees: $370
•     LAST Fees with Interest: $576
•     ASAF: $100
•     Tax Adjustment: $22,546
•     CAR: $4,359
**Total Damages: $277,874**

**19**. **Erlene Anthony (Batch 126)**
•     LAST Fees: $176
•     LAST Fees with Interest: $205
**Total Damages: $205**

**20**. **Maria Lorenzo (Batch 126)**
•     Backpay: $2,402
•     Backpay with Interest: $3,290
•     LAST Fees: $530
•     LAST Fees with Interest: $847
**Total Damages: $4,137**

**21**. **Iris Pagan (Batch 126)**
•     Backpay: $10,960
•     Backpay with Interest: $17,931
•     LAST Fees: $340
•     LAST Fees with Interest: $660
•     ASAF: $400
**Total Damages: $18,991**

**22**. **Lucille Pinckney (Batch 126)**
•     Backpay: $1,446
•     Backpay with Interest: $2,395
•     LAST Fees: $420
•     LAST Fees with Interest: $788
**Total Damages: $3,183**

**23**. **Ingrid Rogers (Batch 126)**

- Backpay: $926,497
- Backpay with Interest: $1,015,844
- LAST Fees: $410
- LAST Fees with Interest: $561
- ASAF: $5,333
- Tax Adjustment: $108,863
- CAR: $19,681

**Total Damages: $1,150,282**

**24. Yery Rosario (Batch 126)**
- LAST Fees: $1,022
- LAST Fees with Interest: $1,327

**Total Damages: $1,327**

**25. Cleofis Sarete (Batch 126)**
- Backpay: $5,753
- Backpay with Interest: $7,682
- LAST Fees: $370
- LAST Fees with Interest: $619
- ASAF: $200

**Total Damages: $8,501**

**26. Irina Soto (Batch 126)**
- Backpay: $653
- Backpay with Interest: $895
- LAST Fees: $140
- LAST Fees with Interest: $199

**Total Damages: $1,094**

**27. Jassee Torrington (Batch 126)**
- LAST Fees: $158
- LAST Fees with Interest: $195

**Total Damages: $195**

**28. Arlettis Rosa (Batch 118)**
- Backpay: $640,547
- Backpay with Interest: $720,794
- LAST Fees: $458
- LAST Fees with Interest: $658
- ASAF: $6,289
- Tax Adjustment: $75,264
- CAR: $19,514

**Total Damages: $822,519**

December 1, 2022 Conference Summary

GULCS001817

The following is a summary of the Special Master's rulings at the December 15, 2022 conference. The parties have had the opportunity to review a draft of the rulings and assert any objections or propose edits.  The parties agree that this summary accurately reflects the Special Master's rulings at the hearing.

1.  **Court's Partial Denial of the Motion for a Stay** – The Special Master noted that he had reviewed Defendant's email dated December 14, 2022 updating various outstanding technology issues affecting TRS's ability to process pension relief.  Plaintiffs stated that they had spoken with Defendant about those issues and that Defendant would provide further details by the end of the week.  The Special Master asked Defendant to provide a schedule for the resolution of all outstanding technology issues by the next conference.

    The Special Master asked for an update on those approximately twenty class members who were enrolled in the pension system and were impacted by the wage data discrepancy in several pay periods.  Defendant stated that it was following up with TRS regarding those class members.  Defendant agreed to ask TRS for a timeline by the next conference for resolution of that issue.

    The Special Master asked the parties for an update regarding the implementation of salary, seniority, and other adjustments.  Plaintiffs stated that they were awaiting responses to several questions regarding Defendant's review process and requested a call with the BOE representative, and that instead Defendant had indicated that it expected to provide an update shortly via email.  The Special Master stated that unless all open issues are resolved to Plaintiffs' satisfaction by Monday, Defendant is directed to convene a conference call with Plaintiffs and Vicki Bernstein of the BOE to discuss all the open issues.  Defendant stated that the parties had agreed to make payments to certain class members in lieu of an adjustment for CAR days.  The Special Master directed Defendant to provide Plaintiffs with a list of those class members with the amounts each will receive.

    The Special Master asked the parties for an update on RRC's work and on the OA's schedule for completing all outstanding calculations.  Plaintiffs stated that RRC and the OA continue to make progress.  Defendant stated that it was working with the OA, the BOE and TRS regarding the status of the transmission of class member data.  Defendant agreed to have the OA provide monthly updates on the status of their work.  Plaintiffs agreed to provide Defendant with a form listing the categories of information it would like in the monthly updates.

2.  **Conference Summaries**

    a.  <u>Summary of the December 1, 2022 Conference</u> – The parties stated that they had no edits to the draft summary of the December 1, 2022 conference that the Special Master had previously circulated.  The Special Master declared the December 1, 2022 conference summary final.

3. **Award Tracking Chart** – Prior to the conference, the Special Master circulated a version of the below chart which had been updated as of December 13, 2022 and tracks the progress of awards that have been awarded or entered to date, as well as the number of claims and judgments left to be resolved/entered.

| AWARDS | |
|---|---:|
| Total estimated # of claims in the class: | 4889 |
| Total awards confirmed to date: | 3163 |
| Total claims withdrawn/resolved without the need for <u>award</u> to date: | 266 |
| Estimated additional claims that will be withdrawn/resolved without the need for award: | 145 |
| | |
| Estimated individual claims remaining: | **1315** |
| Weeks remaining until June 2023: | 24.3 |
| Individual claims to be resolved per week to meet June 2023 deadline: | **54.1** |

| JUDGMENTS | |
|---|---:|
| Proposed judgments filed by Special Master to date: | 2717 |
| Confirmed awards not yet reduced to proposed judgments: | 446 |
| Estimated remaining judgments to be filed by Special Master: | **1761** |

Plaintiffs confirmed that the chart was accurate.

4. **TRS Disability Claims** – Plaintiffs stated that there were four class members with outstanding TRS disability issues.  Plaintiffs stated that they had provided information to Defendant for three class members, and that they were awaiting a determination from Defendant for one class member.  Defendant stated that it was searching for medical records for the three class members, and that Defendant would respond shortly regarding the last class member.

5. **Individual Hearings Schedule, Projected Completion of Hearings, and Submission of Judgments** – The parties indicated that they are working on ways to streamline the hearing schedule, and that they would provide an update on their progress at the next conference.  The parties agreed to provide in early January a schedule for the submission of judgments for those class members with confirmed awards.

The Special Master asked the parties for an estimate of the total dollar amounts of judgments they expect to be paid in the current fiscal year.  Plaintiffs stated that they currently projected payments in the current fiscal year of approximately $370 million, not including employer taxes.

The Special Master noted that he had circulated a draft ruling regarding Batch 105 class members. The Special Master and the parties discussed whether the parties had, or would have, any objections or proposed corrections to the draft. The parties agreed to provide comments and edits. The Special Master inquired whether Defendant intended to appeal and raised the need to agree upon a procedure that would accommodate both Defendant's right to appeal and the need for judicial economy. The Special Master noted that while Defendant may be able to object to the District Court, a final judgment for class members would need to be entered before the ATS-W issue would be appealable to the Circuit. The Special Master invited the parties to let him know how they wished to proceed at or before the next conference.

**6.   Individual Hearings**

a.   The Special Master ruled that the following class members satisfied their burden of proving the listed amounts are the appropriate total damages amounts based on the evidence presented as of their presumed date of judgment. The parties agree that the amounts are accurately calculated using the experts' models, which incorporate the rulings recommended by the Special Master and adopted by the Court. These damages amounts are not final and are subject to change based on these class members' actual date of judgment. The parties will update and finalize the damages calculations prior to the entry of the final judgments subject to approval by the Special Master and the Court.

**1. Asael Ramos (Batch 127)**
- Backpay: $90,538
- Backpay with Interest: $147,317
- LAST Fees: $270
- LAST Fees with Interest: $493
- ASAF: $1,600
- Tax Adjustment: $10,638

**Total Damages: $160,048**

**2. Deborah Palermo (Batch 127)**
- Backpay: $695
- Backpay with Interest: $1,148
- LAST Fees: $160
- LAST Fees with Interest: $275

**Total Damages: $1,423**

**3. Jenny Merello (Batch 127)**
- Backpay: $59,355
- Backpay with Interest: $66,991
- LAST Fees: $356
- LAST Fees with Interest: $402
- ASAF: $67

**GULCS001820**

- Tax Adjustment: $6,974
- CAR: $909

**Total Damages: $75,343**

**4. Juana Ramos (Batch 127)**
- Backpay: $6,294
- Backpay with Interest: $8,600
- LAST Fees: $810
- LAST Fees with Interest: $1,118

**Total Damages: $9,718**

**5. Migdalia Diaz (Batch 127)**
- Backpay: $1,042,817
- Backpay with Interest: $1,156,608
- LAST Fees: $2,459
- LAST Fees with Interest: $3,250
- ASAF: $7,400
- Tax Adjustment: $122,531
- CAR: $21,235

**Total Damages: $1,311,024**

**6. Marc-Eddy Lajoie (Batch 127)**
- LAST Fees: $88
- LAST Fees with Interest: $116

**Total Damages: $116**

**7. Charise King (Batch 122)**
- LAST Fees: $300
- LAST Fees with Interest: $505

**Total Damages: $505**

**8. Carela (Rodriguez), Elizabeth (Batch 122)**
- Backpay: $923,768
- Backpay with Interest: $1,015,043
- LAST Fees: $1,142
- LAST Fees with Interest: $1,428
- ASAF: $5,733
- Tax Adjustment: $108,543
- CAR: $19,478

**Total Damages: $1,150,225**

**9. Sophia Fossett (Batch 117)**
- Backpay: $17,555
- Backpay with Interest: $25,281
- LAST Fees: $490
- LAST Fees with Interest: $837

GULCS001821

- ASAF: $367
- Tax Adjustment: $2,063
- CAR: $186

**Total Damages: $28,734**

**10. Isla Fajardo (Batch 109)**
- Backpay: $32,846
- Backpay with Interest: $44,543
- LAST Fees: $900
- LAST Fees with Interest: $1,301
- ASAF: $33
- Tax Adjustment: $3,859

**Total Damages: $49,736**

**11. Evelyn Roldan (Batch 109)**
- Backpay: $290,616
- Backpay with Interest: $347,299
- LAST Fees: $160
- LAST Fees with Interest: $227
- ASAF: $1,544
- Tax Adjustment: $34,147
- CAR: $5,890

**Total Damages: $389,107**

**12. Tilcia Davis (Batch 104)**
- Backpay: $622,438
- Backpay with Interest: $737,606
- LAST Fees: $149
- LAST Fees with Interest: $230
- ASAF: $3,345
- Tax Adjustment: $73,136
- CAR: $14,544

**Total Damages: $828,861**

**13. William Collazo (Batch 119)**
- Backpay: $662,591
- Backpay with Interest: $777,351
- LAST Fees: $300
- LAST Fees with Interest: $502
- ASAF: $5,797
- Tax Adjustment: $77,854
- CAR: $16,421

**Total Damages: $877,925**

**14. Carmen Ramirez (Batch 113)**
- Backpay: $346,082

December 15, 2022 Conference Summary

GULCS001822

- Backpay with Interest: $377,051
- LAST Fees: $510
- LAST Fees with Interest: $729
- ASAF: $3,624
- Tax Adjustment: $40,665
- CAR: $11,367
- **<u>Total Damages</u>: $433,436**

December 15, 2022 Conference Summary                                              **GULCS001823**

The following is a summary of the Special Master's rulings at the December 22, 2022 conference. The parties have had the opportunity to review a draft of the rulings and assert any objections or propose edits. The parties agree that this summary accurately reflects the Special Master's rulings at the hearing.

1. **Court's Partial Denial of the Motion for a Stay** – The Special Master asked the parties for an update on the status of pension relief and the schedule for resolving the technology issues impacting pension relief. Defendant stated that TRS had reviewed the 20 class members who were enrolled in the pension system and were potentially impacted by the wage data discrepancy in several pay periods. Defendant further stated that after further analysis, TRS had determined that perhaps only ten of those class members may need adjustments. Defendant stated that it would discuss these ten class members and how to move forward with Plaintiffs shortly after the conference.

The Special Master asked Defendant whether it had a timeline for the resolution of outstanding technology issues affecting TRS's ability to process pension relief. Defendant stated that there was one error code that was affecting many class members, and that Defendant and TRS were scheduled to meet in early January to discuss possible solutions. Defendant indicated that after that meeting, it would provide Plaintiffs with a list of the active error codes, the names of the class members affected by each error code, and a timeline for resolution of each error code. Defendant also agreed to provide by the next conference a schedule for when each class member who had already paid their invoices would have his or her TRS accounts updated.

The Special Master asked the parties for an update regarding the implementation of salary, seniority, and other adjustments. Plaintiffs stated that they had received an updated chart prior to the conference that answered some of their questions. Plaintiffs indicated that they wanted to schedule a call with Plaintiffs and Vicki Bernstein of the BOE to discuss all the open issues in late January, and that it made sense before the call for Defendant to provide them with a draft of its roadmap for how BOE will handle these adjustments going forward. Defendant stated that it should be able to provide the draft next week. The Special Master reminded Defendant that the draft should include which individuals at the BOE would be responsible for each step in the process.

Plaintiffs stated that there were still 23 class members who were part of the BOE's fall batch but require further review by the BOE. Defendant stated that it would follow up with Plaintiffs shortly after the conference about those class members. Defendant further stated that it would provide Plaintiffs before the next conference with a list of those class members that would receive an adjustment for CAR days, and a list of those class members who would receive payments in lieu of an adjustment for CAR days.

The Special Master asked the parties for an update on RRC's work and on the OA's schedule for completing all outstanding calculations. Plaintiffs stated that RRC and the OA continue to make progress. Defendant agreed to have the OA provide monthly updates on the status of their

work containing the information that Plaintiffs had requested.  Plaintiffs stated that they expected to receive the next monthly report by the end of December.

2.  **Request for Time Extensions of Provisional Certifications** – The Special Master noted that the Plaintiffs had requested additional extensions of certain class members' provisional certification.  The Special Master asked Defendant for its position.  Defendant stated that the BOE had no objection to these extensions, and suggested that a broader extension may be appropriate for additional, similarly situated class members.  The parties agreed to confer regarding the extension request and provide an update at the next conference.

3.  **Conference Summaries**

   a.  <u>Summary of the December 15, 2022 Conference</u> – Plaintiffs had one proposed edit to the draft summary of the December 15, 2022 conference that the Special Master had previously circulated.  Defendant stated that it did not object to the edit and that it had no further edits.  The Special Master stated that he would accept Plaintiffs' proposed edit and declared the December 15, 2022 conference summary final.

   b.  <u>Draft Batch 105 Ruling</u> – Plaintiffs stated that they would provide proposed edits to the draft ruling shortly after the conference.  The Defendant stated that the ATS-W ruling should be adopted into individual awards, so that final judgments for class members could be entered from which Defendant could appeal to the Circuit.  The Special Master urged the parties to expedite the award and judgment process for the Batch 105 class members so that any appeal could be decided as soon as possible.

4.  **Award Tracking Chart** – Prior to the conference, the Special Master circulated a version of the below chart which had been updated as of December 20, 2022 and tracks the progress of awards that have been awarded or entered to date, as well as the number of claims and judgments left to be resolved/entered.

| AWARDS | |
|---|---:|
| Total estimated # of claims in the class: | 4889 |
| Total awards confirmed to date: | 3177 |
| Total claims withdrawn/resolved without the need for <u>award</u> to date: | 266 |
| Estimated additional claims that will be withdrawn/resolved without the need for award: | 143 |
| | |
| Estimated individual claims remaining: | **1303** |
| Weeks remaining until June 2023: | 23.3 |
| Individual claims to be resolved per week to meet June 2023 deadline: | **55.9** |

| JUDGMENTS | |
|---|---:|
| Proposed judgments filed by Special Master to date: | 2717 |
| Confirmed awards not yet reduced to proposed judgments: | 460 |
| Estimated remaining judgments to be filed by Special Master: | **1763** |

December 22, 2022 Conference Summary                    **GULCS001825**

Plaintiffs confirmed that the chart was accurate.

5. **TRS Disability Claims** – Plaintiffs stated that there were four class members with outstanding TRS disability issues, and that they were awaiting a response from Defendant for each. Defendant stated that it was searching for medical records for the three class members, and that it would respond shortly regarding the remaining class member. Defendant agreed to provide a timeline for its response for each class member at the next conference.

6. **Individual Hearings Schedule, Projected Completion of Hearings, and Submission of Judgments** – The parties indicated that they are working on ways to streamline the hearing schedule, and that they would provide an update on their progress at the next conference. The parties agreed to provide in January a schedule for the submission of judgments for those class members with confirmed awards.

7. **Loan Forgiveness Issues –** The Special Master noted that Plaintiffs had asked the BOE to respond to their request that the BOE fill out employer information on loan forgiveness applications. The Special Master and the parties discussed the issue in mediation mode. The Special Master urged the parties to find a creative solution, and the parties agreed to confer further and provide an update at the next conference.

December 22, 2022 Conference Summary                    **GULCS001826**